UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No. 1:25-cv-10810-DJC

STATE OF CALIFORNIA; STATE OF NEVADA; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN,

        Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, in her official capacity as Attorney General of the United States; UNITED STATES ELECTION ASSISTANCE COMMISSION; DONALD L. PALMER, in his official capacity as Chairman of the U.S. Election Assistance Commission; THOMAS HICKS, in his official capacity as Vice Chair of the U.S. Election Assistance Commission; CHRISTY McCORMICK and BENJAMIN W. HOVLAND, in their official capacities as Commissioners of the U.S. Election Assistance Commission; PETE HEGSETH, in his official capacity as Secretary of Defense,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER AND CONSOLIDATE OR, IN THE ALTERNATIVE, MOTION TO STAY**

On March 25, 2025, President Donald J. Trump issued an Executive Order entitled "Preserving and Protecting the Integrity of American Elections." *See* Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Plaintiffs in this action are nineteen States ("Plaintiff States") who claim that certain provisions of the Executive Order are unconstitutional, ultra vires, and violative of separation-of-powers principles. *See* Compl. ¶¶ 1-37. Three cases that challenge the same provisions of the Executive Order for the same reasons are already pending in the U.S. District Court for the District of Columbia (the "DDC cases"). In the order in which they were filed, the DDC cases include: *League of United Latin American Citizens et al. v. Executive Office of the President et al.*, Case No. 25-cv-00946 (filed on March 31, 2025), attached as **Exhibit 1**; *Democratic National Committee et al. v. Donald J. Trump et al.*, Case No. 25-cv-00952 (filed on March 31, 2025), attached as **Exhibit 2**; and *League of Women Voters Education Fund et al. v. Donald J. Trump et al.*, Case No. 25-cv-00955 (filed on April 1, 2025), attached as **Exhibit 3**.

Because of their commonalities, on April 3, 2025, the DDC cases were consolidated before Judge Colleen Kollar-Kotelly to "promote the interests of judicial economy, consistency, timeliness, and convenience for the parties by reducing the need for duplicative briefing, argument, and analysis regarding overlapping issues." *See* Memorandum Opinion & Order (Kollar-Kotelly, J.), attached as **Exhibit 4**. For the same reasons, this case filed by the Plaintiff States should be transferred to the District of Columbia and consolidated with the DDC cases.

Alternatively, should this Court decline to transfer this case to the District of Columbia, this Court should exercise its discretion to stay this case pending resolution of the DDC cases.

I.   BACKGROUND

In their Complaint filed on April 3, 2025, the Plaintiff States challenge the legal force of the Executive Order. They allege the Executive Order "usurps" the constitutional power of the States and Congress to regulate elections. Compl., ¶¶ 4, 46, 50-58. They also allege the Executive Order directs the U.S. Election Assistance Commission to take action that is, in their view, contrary to the National Voter Registration Act ("NVRA").[1] Compl., ¶¶ 59-78. The Plaintiff States take specific issue with the provisions of the Executive Order that require documentary proof of United States citizenship in registering to vote:

a.   <u>Section 2(a)</u>, which requires the Election Assistance Commission "to require, in its national mail voter registration form issued under 52 U.S.C. § 20508…documentary proof of United States citizenship";

b.   <u>Section 2(d)</u>, which orders the "head of each Federal voter registration executive department or agency" to "assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs";

c.   <u>Section 3(d)</u>, which orders the Secretary of Defense to "update the Federal Post Card Application, pursuant to the Uniformed and Overseas Citizens Absentee Voting Act…to require documentary proof of United States citizenship" and "proof of eligibility to vote in elections in the State in which the voter is attempting to vote";

d.   <u>Section 4(a)</u>, which orders the Election Assistance Commission to "cease providing Federal funds to States that do not comply with the Federal laws set forth in 52 § U.S.C. 21145, including the requirement…that States accept and use the national

---

[1] 52 U.S.C. §§ 20506, 20508.

        mail voter registration form…including any requirement for documentary proof of United States citizenship adopted pursuant to Section 2(a)(ii) of this order";

  e.  <u>Section 7(a)</u>, which directs the Attorney General to take all necessary action to enforce 2 U.S.C. § 7 and 3 U.S.C. § 1 against States that violate these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes for the appointment of Presidential electors and the election of members of the United States Senate and House of Representatives; and

  f.  <u>Section 7(b)</u>, which orders the Election Assistance Commission to "condition any available funding to a State on that State's compliance with the requirement…that each State adopt uniform and nondiscriminatory standards within that State that define what constitutes a vote and what will be counted as a vote, including that…there be a uniform and nondiscriminatory ballot receipt deadline of Election Day for all methods of voting, excluding ballots cast in accordance with 52 U.S.C. §§ 20301 et seq."

Compl., ¶ 49.

    The DDC cases challenge the same provisions for the same reasons using the same language.[2] To start, each set of DDC plaintiffs argue the Executive Order violates constitutional

---

[2] As just one example, the opening sentence of each DDC case is nearly identical to that of the Plaintiff States' Complaint and conveys the same sentiment. *Compare* Compl., ¶ 1 ("The President's constitutional role in elections is limited to competing in them and enforcing election laws enacted by Congress") *with* <u>Exhibit 1</u>, ¶ 1 ("Under our Constitution, the President does not dictate election rules"); <u>Exhibit 2</u>, ¶ 1 ("In the United States of America, the President does not get to dictate the rules of our election); <u>Exhibit 3</u>, ¶ 1 ("In the President's Executive Order of March 25, 2025—"Preserving and Protecting the Integrity of American Elections" (the "Executive Order")—the President attempts to usurp the power to regulate federal elections from Congress, the States, and an independent agency to which Congress delegated certain limited responsibilities").

separation-of-powers principles by intruding on the prerogatives of Congress and the States. *See* **Exhibit 1**, ¶ 35-36; **Exhibit 2**, ¶¶ 126-163; **Exhibit 3**, ¶¶ 107-13. Next, like the Plaintiff States, the DDC plaintiffs allege the Executive Order requires the Election Assistance Committee to take actions that are contrary to the NVRA. *See* **Exhibit 1**, ¶ 70-102; **Exhibit 2**, ¶¶ 174-77; **Exhibit 3**, ¶¶ 119-21. Finally, like the Plaintiff States, the DDC plaintiffs have focused arguments on the provisions of the Executive Order that require documentary proof of United States citizenship in registering to vote. *See* **Exhibit 1**, ¶¶ 184-193; **Exhibit 2**, ¶¶ 78-84; **Exhibit 3**, ¶¶ 62-81.

Further adding to their commonality, the DDC plaintiffs seek relief against many of the same defendants named by the Plaintiff States: Donald J. Trump, in his official capacity as President of the United States or the Executive Office of the President; the United States Election Assistance Commission; Donald L. Palmer, in his official capacity as Chairman of the U.S. Election Assistance Commission; Thomas Hicks, in his official capacity as Vice Chair of the U.S. Election Assistance Commission; and Christy McCormick, in her official capacity as a Commissioner of the U.S. Election Assistance Commission.

**II.    ARGUMENT**

    A.    <u>The Court Should Transfer This Case To The District Of Columbia For the Convenience Of The Parties And Witnesses And The Interest Of Justice.</u>

28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding a motion to transfer venue under Section 1404(a), courts engage in a two-part inquiry. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). First, the court must determine whether the action could have properly been brought in the transferee court. *Id.* Second, after that initial determination, the court must undertake an "individualized, case-by-case consideration of convenience and fairness." *Id.*

1. Plaintiff States Could Have Filed This Action In The District Of Columbia.

There is no dispute that the Plaintiff States could have filed this action in the District of Columbia. 28 U.S.C. § 1391(e)(1) provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

*Id.* Here, not only do all the government Defendants reside in or are headquartered in the District of Columbia, but a "substantial part of the events or omissions giving rise to the claim" occurred in the District of Columbia. The Executive Order which gives rise to this action was issued in the District of Columbia. Because the Plaintiff States could have filed this action in the District of Columbia, the Court should engage in the "individualized" consideration as to whether convenience, fairness, and the interests of justice dictate that this case should be transferred to the District of Columbia. In short, they do.

2. Convenience, Fairness, And The Interest Of Justice Support Transferring This Case To The District Of Columbia.

The decision to transfer a case pursuant to Section 1404(a) is within the discretion of the district court. *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977). In making that determination, the court must balance several factors, including plaintiff's choice of forum. *See Boateng v. General Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006). "A presumption in favor of plaintiff's choice of forum exists, and the burden of proving that transfer is warranted rests with the defendant." *Id.* "Other factors to consider include the convenience of the parties and witnesses, the availability of documents and the interests of justice." *Id.* That said, as pointed out by the First Circuit, these factors are "illustrative rather than all-inclusive." *Iragorri*

*v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000); *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n. 3 (7th Cir. 1986) (noting that "these factors are best viewed as placeholders for a broader set of considerations, the contours of which turn on the particular facts of each case").

This Circuit has broken down the statute's three enumerated grounds for relief into additional sub-factors that include: the location of the operative events in the case, the cost of obtaining witnesses, location of counsel, ability to compel attendance of witnesses, and the accessibility and location of sources of proof, among others. *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *see also Jackson Nat. Life Ins. Co. v. Economou*, 557 F. Supp. 2d 216, 220 (D.N.H. Apr. 30, 2008).

Of the factors enumerated by Section 1404(a), the convenience of expected witnesses is "probably the most important factor, and the factor most frequently mentioned." *Boateng*, 460 F. Supp. 2d at 275 (internal citation omitted). In considering this factor, the court looks at "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Id.* Here, all government witnesses are in the District of Columbia. In contrast, the Complaint does not identify *any* witnesses who reside in Massachusetts. Likewise, all government Defendants are in the District of Columbia. The Commonwealth of Massachusetts is but one of nineteen Plaintiffs, and the Complaint could have been brought in the district for any of the other eighteen Plaintiffs. The District of Massachusetts appears to have been selected at random,[3] without any meaningful ties to the District, which diminishes the weight given to the Plaintiff States' choice of forum. *See United States ex rel. Ondis v. City of Woonsocket*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007)

---

[3] The ties to the Commonwealth of Massachusetts are no greater than the ties to the State of California or the State of New Jersey, for example.

7

("[w]here the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight"). To that end, the convenience of the parties and witnesses weighs heavily in favor of transfer to the District of Columbia.

The other factors weigh in favor of transfer as well. This case arises out of an Executive Order that was issued in the District of Columbia. Lead counsel for the government Defendants is in the District of Columbia. Witnesses can be compelled in the District of Columbia. Documentary evidence and other sources of proof are in the District of Columbia.

Moreover, the interests of justice favor transfer. As recognized by the Supreme Court, construing Section 1404 to "permit[] or require[] parties to try their issues in a single 'civil action' in a court where it 'might have been brought'…merely carries out [the statute's] design to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960). And, as recognized by the Eastern District of New York, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Williams v. City of New York*, 03 Civ. 5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (citing cases). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co.*, 364 U.S. at 26.

The declaratory relief sought by the Plaintiff States in this case is already being litigated in the District of Columbia. The interests of justice would be best served by transferring this case to the District of Columbia where all of the actions giving rise to Plaintiff States' claims occurred, the vast majority of witnesses and parties are located, and where three related cases in similar

8

procedural postures before the same judge are located. For these reasons, this case should be transferred to the District of Columbia.

      B.    <u>This Court Should Consolidate This Case With The DDC Cases</u>.

A District Court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a). Consolidation is best understood "not as completely merging the constituent cases into one, but instead enabling more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them." *Hall v. Hall*, 584 U.S. 59 (2018). The First Circuit employs a two-part framework for determining consolidation. *See Seguro de Servicio de Salud de P.R. v. McAuto Sys. Grp. Inc.*, 878 F.2d 5, 8 (1st Cir. 1989). "The threshold issue is whether the two proceedings involve a common party *and* common issues of fact or law." *Id.* (emphasis in original). "Once this determination is made, the trial court has broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate." *Id.* A motion for consolidation will usually be granted unless the party opposing it can show "demonstrable prejudice." *Id.* As stated by the Supreme Court, the ultimate concerns to be balanced are "[w]ise judicial administration,…conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952).

Here, there is no question that this case and the DDC cases "involve a common question of law or fact." As described above, all cases arise out of the Executive Order issued on March 25, 2025, and all cases seek declaratory relief that the Executive Order is unconstitutional—for the same reasons. The DDC cases seek relief against many of the same defendants as those named by the Plaintiff States in this case.

Because of the commonalties between the cases, consolidation before one judge would promote the conservation of judicial resources and efficiency. That is particularly true where, as here, the cases are in similar procedural postures, and the government defendants are being represented by the same lead counsel in all cases.[4] There is no prejudice to the Plaintiff States, whose rights will not merge or change. *See Hall*, 584 U.S. at 70 ("consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit in another" (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933)). The consolidation may be fashioned in such a way to permit the Plaintiff States to maintain their ability to brief the issues separately from the other consolidated defendants; indeed, Judge Kollar-Kotelly has already fashioned such an Order. *See* Order dated April 5, 2025, attached hereto as **Exhibit 5**.

Because it "involve[s] a common question of law or fact" with the DDC cases and would promote judicial economy, this case should be consolidated with the DDC cases already pending before Judge Kollar-Kotelly in the District of Columbia. *See* Fed. R. Civ. P. 42(a),

> C. Should This Court Decline To Transfer This Action To The District Of Columbia, This Case Should Be Stayed Pending Resolution Of The DDC Cases.

Should this Court decline to transfer this case to the District of Columbia, this Court should exercise its discretion to stay this case pending resolution of the DDC cases. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154

---

[4] Michael Gates, Deputy Assistant Attorney General, is lead counsel in the DDC cases and the instant case. In each case the government defendants are in the process of responding to the complaint.

(1st Cir. 1994) ("It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention."). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. To stay proceedings, "there must be good cause" for the stay, the stay "must be reasonable in duration[,] and the court must ensure that competing equities are weighed and balanced." *Marquis*, 965 F.2d at 1155. And, "[e]specially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256.

Good cause to stay exists here. This case involves "great issues" that have "far-reaching importance to the parties and the public" in that it concerns voter registration requirements across the United States. *Id.* It presents the same legal question at issue in the DDC cases—namely, whether the Executive Order is unconstitutional. Given the overlap, waiting for the decision in the DDC cases would materially advance the outcome of this case. Indeed, courts often stay proceedings pending the resolution of another case when doing so will "narrow the issues in the pending case and assist in the determination of the questions of law involved." *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977) (quoting *Landis*, 299 U.S. at 253–54); *see also, e.g.*, *Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995) (stating that one "typical reason" for staying a case is to wait for the outcome "of a related proceeding"); *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("[A] court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 335 F. Supp. 3d

256, 262 (D.P.R. 2018) ("This Court finds that staying the instant proceeding until the District Court…[has] an opportunity to rule in [related proceedings] serves both the interests of justice and efficiency").  This Court should therefore stay this case pending resolution of the DDC cases, which will "assist in the determination of the questions of law involved" and promote efficiency. *See Taunton Gardens*, 557 F.2d at 879,

### III.   CONCLUSION

For the reasons described above, this Court should transfer this case to the District of Columbia and consolidate it with the DDC cases.  Alternatively, should this Court decline to transfer, this Court should stay this case pending resolution of the DDC cases.

Respectfully submitted:

LEAH B. FOLEY
United States Attorney


By:    */s/ Nicole M. O'Connor*
       Nicole M. O'Connor
       Assistant U.S. Attorney
       U.S. Attorney's Office
       John Joseph Moakley U.S. Courthouse
       1 Courthouse Way, Suite 9200
       Boston, MA 02210
       (617) 748-3112
       Nicole.O'Connor@usdoj.gov

## 7.1 CERTIFICATION

I, Nicole M. O'Connor, hereby certify that I conferred with counsel for Plaintiffs via virtual conference on April 23, 2025, prior to filing the instant motion. I was unable to resolve or narrow the issues for review.

Dated: April 23, 2025                              */s/ Nicole M. O'Connor*
                                                   Nicole M. O'Connor
                                                   Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Nicole M. O'Connor, hereby certify that I served a true copy of the above document upon all counsel of record via this court's electronic filing system and upon any non-registered participants via first class mail.

Dated: April 23, 2025                              */s/ Nicole M. O'Connor*
                                                   Nicole M. O'Connor
                                                   Assistant U.S. Attorney