# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LEAGUE OF UNITED LATIN
AMERICAN CITIZENS; SECURE
FAMILIES INITIATIVE; and ARIZONA
STUDENTS' ASSOCIATION,

     *Plaintiffs*,

        v.

EXECUTIVE OFFICE OF THE
PRESIDENT
1600 Pennsylvania Avenue NW
Washington, DC 20500;

UNITED STATES ELECTION
ASSISTANCE COMMISSION
633 3rd Street NW, Suite 200,
Washington, DC 20001;

BRIANNA SCHLETZ, *in her official
capacity as Executive Director of the United
States Election Assistance Commission*,
633 3rd Street NW, Suite 200,
Washington, DC 20001;

DONALD L. PALMER, *in his official
capacity as Commissioner and Chairman of
the United States Election Assistance
Commission*,
633 3rd Street NW, Suite 200,
Washington, DC 20001;

THOMAS HICKS, *in his official capacity
as Commissioner and Vice-Chair of the
United States Election Assistance
Commission,*
633 3rd Street NW, Suite 200,
Washington, DC 20001;

Case No. _____

CHRISTY MCCORMICK, *in her official
capacity as Commissioner of the United
States Election Assistance Commission,*
633 3rd Street NW, Suite 200,
Washington, DC 20001;

BENJAMIN W. HOVLAND, *in his official
capacity as Commissioner of the United
States Election Assistance Commission,*
633 3rd Street NW, Suite 200,
Washington, DC 20001;

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530;

PAMELA BONDI, *in her official capacity
as Attorney General of the United States*,
950 Pennsylvania Ave. NW
Washington, DC 20530;

U.S. DEPARTMENT OF DEFENSE
1000 Defense Pentagon,
Washington, DC 20301;

PETE HEGSETH, *in his official capacity as
United States Secretary of Defense*,
1000 Defense Pentagon,
Washington, DC 20301;

FEDERAL VOTING ASSISTANCE
PROGRAM
4800 Mark Center Drive, Suite 05E22
Alexandria, VA 22350-5000;

J. SCOTT WIEDMANN, *in his official
capacity as Director of the Federal Voting
Assistance Program*,
4000 Defense Pentagon,
Washington, DC 20301,

       *Defendants.*

# **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      Under our Constitution, the President does not dictate election rules. States and Congress do. This case concerns Executive Order 14248 (the "EO" or "Order") issued on March 25, 2025, entitled "Preserving And Protecting The Integrity Of American Elections." But this Order does no such thing. Through the Order, the President attempts to exercise powers that the Constitution withholds from him and instead assigns to the states and to Congress. The Order violates and subverts the separation of powers by lawlessly arrogating to the President authority to declare election rules by executive fiat.

2.      The Order is an attack on the constitutionally mandated checks and balances that keep American elections free and fair. Through this unconstitutional action, the President intrudes on the states' and Congress's authority to set election rules in an attempt to make it far more difficult for eligible U.S. citizens to exercise their fundamental right to vote.

3.      Plaintiffs League of United Latin American Citizens, Secure Families Initiative, and Arizona Students' Association bring this Complaint challenging certain provisions of the Order that are facially unlawful and which, if implemented, would severely burden their protected civic engagement activity and their members' right to vote.

4.      This Court should declare that the challenged provisions of the Executive Order violate the United States Constitution and enjoin Defendants from taking unlawful actions to enforce its lawless mandates. Nothing less is required to prevent further encroachments on Americans' access to the ballot and confidence in the independent and fair administration of our elections.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because the claims in this action arise under the laws of the United States, as well as under 28 U.S.C. §§ 1651, 2201, and 2202.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b) because at least one Defendant resides in this district.

## PARTIES

**Plaintiffs**

7.     Plaintiff **League of United Latin American Citizens ("LULAC")** is a nationwide, non-profit, non-partisan, membership-based organization with 525 councils (local chapters) and over 325,000 members in twenty-seven states, the District of Columbia, and Puerto Rico. LULAC was established in 1929 and has its headquarters in Washington, D.C.

8.     LULAC is the largest and oldest Latino civil rights organization in the United States. LULAC's mission is to improve the lives of Latino families throughout the United States and to protect their civil rights in all aspects.

9.     LULAC advances the economic condition, educational attainment, political influence, housing, health, and civil rights of Hispanic Americans through community-based programs operating at more than 525 LULAC councils nationwide.

10.     LULAC's members include both U.S. born citizens and naturalized citizens.

11.     LULAC's members are civically engaged. Approximately 70% are registered to vote, and nearly 80% of LULAC's registered members voted in 2020 and around 62% voted in 2022. Many LULAC members choose, state law permitting, to vote by mail.

12.    Throughout the year, LULAC's councils register prospective voters and hold voter registration drives at naturalization ceremonies, schools, churches, and other community events. At these events, LULAC councils often, at the request of registrants, collect voter registration forms and return them to local election offices in accordance with state law.

13.    LULAC holds get-out-the-vote programs before elections to encourage its members to vote. State law permitting, LULAC encourages absentee or mail-in voting, as many of their members have difficulty voting in person because they are elderly, live in rural areas, and/or do not own cars.

14.    Plaintiff **Secure Families Initiative ("SFI")** is a non-partisan 501(c)(4) non-profit organization comprised of military spouses and family members. SFI is affiliated with the 501(c)(3) organization Secure Families Foundation.

15.    SFI began under an incubation program in January 2020 and then became a standalone non-profit in January 2021. SFI is incorporated in Washington, D.C. and has five full-time staff members, two part-time staff members, and over 44,000 members. SFI represents military families serving abroad in at least eight different countries. Member families are also posted to military bases within the United States. Because SFI's membership is comprised of active-duty spouses and dependents, they face particular challenges to voter access, including the need to re-register regularly when they move and the need to vote absentee, often from overseas.

16.    SFI's mission is to mobilize diverse military partners, parents, children, and veterans to vote and advocate for their communities. Recognizing that military families make enormous sacrifices to strengthen and defend our country, SFI seeks to influence issues of foreign policy and national security that especially impact SFI's members. SFI believes that mobilizing its community to vote and advocate is the most effective way to reshape the country's conversations

3

around military intervention and ensure its members have a seat at the table over decisions that affect their own lives.

17.     Additionally, SFI advocates for federal and state policies that increase accessibility for absentee voters and registered military-affiliated voters. For example, SFI has endorsed federal legislation that would study the efficacy of the Department of Defense's Voter Assistance Officer[1] program; ensure that applicable ballot return deadlines for UOCAVA ballots across the U.S. will not disfranchise voters; and require all 50 states to provide UOCAVA voters with a ballot curing process. On the state level, SFI has consistently pushed for the expansion of electronic ballot return opportunities for UOCAVA voters.

18.     Plaintiff **Arizona Students' Association ("ASA")** is a non-partisan, non-profit membership organization based in Arizona. ASA is student-led and represents the collective interest of the over 180,000 university students and over 400,000 community college students in Arizona. The organization advocates at the local, state, and national levels for the interests of students. As a part of its mission, ASA encourages students throughout Arizona to register to vote and helps them register in various ways, including through voter registration drives and online registration. It also engages in direct advocacy to state and local legislators, the Arizona Board of Regents, and university administrators.

19.     ASA employs nine full-time staff members, as well as several part-time campus organizers and dozens of student fellows who are paid a stipend. Those staff members, as well as volunteers, spend a significant amount of their time working on ASA's voter registration efforts.

---

[1] Voting Assistance Officers provide information and assistance to military and overseas voters regarding voter registration, absentee ballot procedures, and their voting rights under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). 10 U.S.C. § 1566a; *see also Voting Assistance Officers*, Federal Voting Assistance Program, https://www.fvap.gov/vao.

They also help organize ASA's conferences and its advocacy projects across the state and in Washington, D.C.

20.     ASA's members, who are students of all backgrounds throughout Arizona, face distinct challenges when registering to vote. Many students are young adults who are just becoming eligible to vote and therefore must register for the first time. Students in Arizona living on campuses often do not have easy access to their birth certificates or other documentary proof of citizenship ("DPOC"). Many students cannot afford to pay for state IDs or drivers' licenses that could prove identity or help prove citizenship.

21.     ASA conducts dozens of in-person voter registration drives on college campuses each year, usually during the "welcome week" of the fall semester. At those drives, ASA staff and volunteers guide students through the registration process, answer questions, and ensure that forms are completed correctly. Last year, ASA registered approximately 3,500 students at those drives using paper forms. About half of those who registered at an ASA drive used the national mail voter registration form created by the National Voter Registration Act, 52 U.S.C. § 20508(a)(2), commonly referred to as the "Federal Form," because Arizona requires those who use their state voter registration form to provide DPOC. Because many students cannot provide DPOC, registration with the Federal Form is their only option.

**Defendants**

22.     The Executive Office of the President is a federal entity headquartered in Washington, D.C.

23.     The Election Assistance Commission ("EAC") is an independent agency of the federal government headquartered in Washington, D.C. 52 U.S.C. § 20921. Among other responsibilities, the Election Assistance Commission is responsible for creating and maintaining

"a mail voter registration application form for elections for Federal office," 52 U.S.C. § 20508(a)(2), sending reports to Congress regarding states' compliance with the National Voter Registration Act, 52 U.S.C. § 20508(a)(3), and awarding federal election assistance funds to states and localities, 52 U.S.C. §§ 21001–21072.

24.     Brianna Schletz is the Executive Director of the Election Assistance Commission. She is sued in her official capacity.

25.     Donald L. Palmer is a Commissioner of the Election Assistance Commission, and currently serves as the Commission's Chairman. He is sued in his official capacity.

26.     Thomas Hicks is a Commissioner of the Election Assistance Commission, and currently serves as the Commission's Vice Chair. He is sued in his official capacity.

27.     Christy McCormick is a Commissioner of the Election Assistance Commission. She is sued in her official capacity.

28.     Benjamin J. Hovland is a Commissioner of the Election Assistance Commission. He is sued in his official capacity.

29.     The U.S. Department of Justice is an agency of the federal government headquartered in Washington, D.C.

30.     Pamela J. Bondi is the Attorney General of the United States. She is sued in her official capacity.

31.     The Department of Defense is an agency of the federal government headquartered in Arlington, VA.

32.     Pete Hegseth is the United States Secretary of Defense. He is sued in his official capacity.

33.     The Federal Voting Assistance Program ("FVAP") administers the federal government's responsibilities under UOCAVA on behalf of the Secretary of Defense, who is the Presidential designee under UOCAVA. FVAP is a component of the Office of the Under Secretary of Defense, Personnel and Readiness within the Department of Defense.

34.     J. Scott Weidmann is the Director of the Federal Voting Assistance Program. He is sued in his official capacity.

## FACTUAL ALLEGATIONS AND LEGAL BACKGROUND

**I.      The Executive Order Asserts Sweeping Presidential Power Over Federal Elections**

35.     On March 25, 2025, President Trump issued Executive Order 14248, titled "Preserving and Protecting the Integrity of American Elections," which purports to "enforce Federal law and to protect the integrity of our election process."

36.     In fact, however, the Order is a gross overreach beyond the President's authority in violation of the Constitution and federal law and represents an unlawful intrusion into areas of election policymaking reserved by the Constitution to Congress and the states.

37.     In Section 2 of the Order, the President mandates that "[w]ithin 30 days of the date of this order, the Election Assistance Commission *shall* take appropriate action to require, in its national mail voter registration form" documentary proof of citizenship. Order, § 2(a)(i)(A) (the "DPOC Requirement") (emphasis added). It also instructs the EAC to require state and local election officials to record on the Federal Form the type of document provided by the applicant as DPOC, including the date of the document's issuance, its expiration date (if any), the office that issued the document, and any unique identification number associated with the document. *Id*. § 2(a)(i)(B).

38.     The Order defines DPOC to include a copy of the following documents: a United States passport; an identification document compliant with the requirements of the Real ID Act of 2005 that indicates the applicant is a citizen of the United States; an official military identification card that indicates the applicant is a citizen of the United States; or a valid federal or state government-issued photo identification that indicates the applicant is a U.S. citizen or "is otherwise accompanied by additional proof of U.S. citizenship." Order, § 2(a)(ii).

39.     The Order does not define "additional proof of U.S. citizenship."

40.     Notably absent from the list of acceptable forms of DPOC under Section 2 of the Order are U.S. birth certificates and identification documents issued by Tribal governments.

41.     Only approximately half of all Americans have a United States passport.

42.     Most Real ID compliant identification documents do not indicate that the holder is a citizen of the United States. Rather, only Enhanced Drivers Licenses (EDLs) affirmatively indicate citizenship on their face. EDLs are only available in five states: Michigan, Minnesota, New York, Vermont, and Washington.

43.     Likewise, upon information and belief, military identification cards generally do not indicate on their face whether the identified individual is a citizen of the United States.

44.     In Section 4 of the Order, the President unlawfully instructs the EAC to deny federal funds appropriated by Congress for distribution to the states for election administration purposes if states do not comply with the policies outlined in the Order, including the DPOC requirements. Order, § 4(a).

45. The President has no authority to direct the EAC to withhold funding from states or amend the contents of the Federal Form. Such commands violate the separation of powers, fundamental principles of federalism, statutes enacted by Congress, and existing federal regulations.

46. In Section 3 of the Order, the President unlawfully instructs the Secretary of Defense to update the Federal Post Card Application for voting, which is made available to military and overseas voters under UOCAVA, 52 U.S.C. § 20301 *et seq.*, to require both DPOC as well as "proof of eligibility to vote in elections in the State in which the voter is attempting to vote." Order, § 3(d). The Order does not define what such "proof of eligibility" should entail.

47. No statute allows the President or the Secretary of Defense (as his designee under UOCAVA) to require applicants to submit documents in addition to the Federal Post Card Application in order to be registered. To the contrary, Congress has specifically instructed the President's designee to design and administer a *post card* that standing alone can be sufficient to both register to vote and apply for an absentee ballot. 52 U.S.C. §§ 20301(b)(2), 20302(a)(4).

48. In Section 7 of the Order, the President unlawfully instructs the Attorney General to take "all necessary action" against states that, in accordance with state law, count validly cast absentee or mail-in ballots lawfully cast by Election Day but received after Election Day. Order, § 7(a).

49. The President has likewise unlawfully instructed the EAC to deny federal funding to any state that, consistent with state law, counts validly cast absentee or mail-in ballots received after Election Day. Order, § 7(b).

50. Section 7(b) includes an exemption from the Order's requirement that states have "a ballot receipt deadline of Election Day for all methods of voting" for ballots cast in accordance

with UOCAVA. Notably, such an exemption is not included in Section 7(a) of the Order directing the Attorney General to take "all necessary action" against states that "include absentee or mail-in ballots received after Election Day in the final tabulation of votes."

51.     In any event, such an exemption would only apply to ballots that are identifiable as cast pursuant to UOCAVA's provisions and would not include ballots cast by uniformed servicemember voters or voters overseas who utilize a state's independent absentee or mail ballot processes to cast their ballots.

52.     Section 5 of the Order also directs the Attorney General to prioritize federal enforcement actions against states that refuse to share data or cooperate with the Department of Justice's enforcement activity, and instructs her to "review for potential withholding of grants and other funds that the Department [of Justice] distributes . . . to State and local governments for law enforcement and other purposes, as consistent with applicable law." Order, § 5(b).

53.     Neither the President nor the Attorney General have any constitutional or statutory authority to require states to discard valid absentee and mail-in ballots cast by Election Day and lawfully received by the states' own ballot receipt deadlines or to instruct the EAC to withhold funds in an attempt to coerce states to do so. Nor can the President's declaration of a policy preference for a particular absentee and mail-in ballot receipt deadline override state laws.

**II.     The President Has No Constitutional Authority to Dictate Election Rules**

54.     By design, the U.S. Constitution does not grant the President authority to regulate, superintend, or otherwise meddle in voter registration or the administration of elections.

55.     The Constitution's Elections Clause grants states the power to determine "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," but provides Congress the ability to "make or alter such Regulations." U.S. Const. Art. I, § 4, Cl. 1. The Constitution also grants Congress the power to "determine the Time of ch[oo]sing the Electors" for President and Vice President. U.S. Const. Art. II, § 1, Cl. 4.

56.     Under the Elections Clause, the power and responsibility for setting rules for federal elections is shared between the states and Congress. The Elections Clause "invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices." *Foster v. Love*, 522 U. S. 67, 69 (1997) (citation omitted).

57.     The Supreme Court has long made clear that Congress's power over the "Times, Places and Manner" of congressional elections "is paramount, and may be exercised at any time, and to any extent which it deems expedient; and so far as it is exercised, and no farther, the regulations effected supersede those of the State which are inconsistent therewith." *Ex parte Siebold*, 100 U. S. 371, 392 (1879).

58.     States have plenary power to set voter eligibility requirements, subject to the requirements of the Constitution, including the Fourteenth, Fifteenth, Nineteenth, and Twenty-Sixth Amendments. The authority to prescribe voting qualifications "forms no part of the power to be conferred upon the national government" by the Elections Clause. The Federalist No. 60 (A. Hamilton).

59.     In Federalist Papers 59, 60, and 61, Alexander Hamilton explained the careful balance of power struck by the Constitution between states and Congress regarding regulation of elections. In his discussion about election administration across three separate Federalist Papers, Hamilton mentioned no role for the President. *Id.*

### III. Congress Established the Election Assistance Commission as an Independent Entity

60. The Election Assistance Commission was established as an "independent entity" by Congress in the Help America Vote Act of 2002 ("HAVA"). 52 U.S.C. § 20921.

61. The EAC is comprised of four members, also known as Commissioners, appointed by the President and confirmed by the Senate. 52 U.S.C. § 20923(a)(1). The EAC also employs an Executive Director, appointed by vote of the Commissioners. 52 U.S.C. § 20924.

62. Congress mandated that no more than two Commissioners may be affiliated with the same political party. 52 U.S.C. § 20923(b).

63. Congress expressly required that "[a]ny action which the Commission is authorized to carry out . . . may be carried out only with the approval of at least three of its members." 52 U.S.C. § 20928.

64. As such, bipartisan agreement is required for any action that requires Commission approval. HAVA's partisan balance and quorum requirements make clear that Congress considered it essential that one party—even if that party occupies the White House—cannot control the EAC's functions in carrying out Congress's prerogative to regulate federal elections.

65. Commissioners serve four-year terms and may be appointed for one additional term. 52 U.S.C. § 20923(b)(1). Commissioners serve fixed, staggered terms such that the term of one Republican seat and one Democratic seat ends every two years. 52 U.S.C. § 20923(b). In other words, Congress designed the EAC such that the entire Commission is not intended to turn over during a single presidential term.

66. Congress also mandated certain qualifications for membership on the EAC. Members of the Commission "shall have experience with or expertise in election administration or the study of elections." 52 U.S.C. § 20923(a)(3).

12

67. The overall structure of the EAC—including its qualifications for membership, its partisan balance requirement, the staggered terms of Commissioners, and the bipartisan quorum requirement for any policy action—all underscore that Congress intended for the EAC to exercise its independent authority free from executive interference. *See* 52 U.S.C. § 20921.

68. Congress assigned the EAC most of the responsibility for awarding federal election assistance funds to states and localities. 52 U.S.C. §§ 21001–21072. Among other things, the EAC also develops and disseminates voting systems guidelines, 52 U.S.C. § 20961, operates a program to accredit laboratories and test and certify voting systems, 52 U.S.C. § 20971, and provides guidance to states and localities on HAVA compliance, 52 U.S.C. §§ 20981–20987.

69. And centrally relevant here is that Congress charged the independent, bipartisan EAC with the responsibility to create and maintain "a mail voter registration application form for elections for Federal office." 52 U.S.C. § 20508(a)(2). The EAC is responsible for sending reports to Congress regarding states' compliance with the National Voter Registration Act. 52 U.S.C. § 20929.

## IV. Congress Requires the EAC to Exercise Discretion Subject to Statutory Requirements in Creating the Federal Mail Voter Registration Form, Which Must Be Promulgated Through Proper Rulemaking and Comply with the NVRA

70. Congress exercised its authority under the Elections Clause to enact the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.*, which "requires States to provide simplified systems for registering to vote in federal elections." *Young v. Fordice*, 520 U.S. 273, 275 (1997) (emphasis omitted). Congress enacted the NVRA to "increase the number of eligible citizens who register to vote in elections for Federal office," 52 U.S.C. § 20501(b)(1), while also recognizing the need to protect the "integrity of the electoral process." 52 U.S.C. § 20501(b)(3).

71.    The NVRA provides that, "in consultation with the chief election officers of the States," the independent EAC "shall develop a mail voter registration application form for elections for Federal office." 52 U.S.C. 20508(a)(2).[2]

72.    Congress gave the EAC exclusive authority to administer the national mail voter registration form, commonly referred to as the Federal Form. 52 U.S.C. § 20508. Adoption of the Federal Form requires the approval of three commissioners. 52 U.S.C. § 20928.

73.    As mandated by Congress in the NVRA, the Federal Form must include a statement that "specifies each eligibility requirement (including citizenship)"; "contains an attestation that the applicant meets each such requirement"; and "requires the signature of the applicant, under penalty of perjury." 52 U.S.C. § 20508(b)(2). The Federal Form must also include, in printed text identical to that used in the attestation, information about the penalties provided by law for submission of a false voter registration application. 52 U.S.C. §§ 20508(b)(4)(i), 20507(a)(5)(B).

74.    The NVRA also specifies the limited information that the EAC may require applicants to furnish on the Federal Form. Congress mandated that the form "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1).

---

[2] As originally enacted in 1993, the NVRA required the Federal Election Commission (FEC) to prescribe the form. Like the EAC, the FEC is an independent agency over which the President does not exercise direct authority. *See* 52 U.S.C. § 30106 (establishing the FEC as a bipartisan commission made up of six members, no more than three of which may be of the same political party, and setting forth qualifications for appointment). The Help America Vote Act of 2002 transferred to the EAC all functions the FEC previously exercised under 52 U.S.C. § 20508(a). 52 U.S.C. § 21132.

75.     In keeping with the NVRA's intent to create a simple and easy to complete mail registration form, the NVRA specifies that the Federal Form may *not* "include any requirement for notarization or other formal authentication." 52 U.S.C. §20508(b)(3).

76.     Under HAVA, Congress mandated that the Federal Form additionally include two specific questions, along with check boxes, for the applicant to indicate whether she meets the U.S. citizenship and age requirements to vote, as well as instructions not to complete the form if the answer to either question is no. *See* 52 U.S.C. § 21083(b)(4)(A).

77.     The Federal Form also contains state-specific instructions, which inform residents of the eligibility requirements to vote, of any additional information they must provide, and how to submit the form in each state. Each set of state-specific instructions must be approved by the EAC.

78.     Section 6 of the NVRA requires states to "accept and use" the Federal Form in registering voters for federal elections. 52 U.S.C. § 20505(a)(1). Under Section 6 of the NVRA, states may also create their own state-specific voter registration forms to register voters for both state and federal elections. 52 U.S.C. § 20505(a)(2).

79.     State-developed voter registration forms may require information that the Federal Form does not. But such state-developed forms must still comply with Section 9 of the NVRA and "require only such identifying information . . . and other information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration." 52 U.S.C. § 20508(b)(1). Regardless of the contents of state voter registration forms, the Supreme Court has explained that the Federal Form "provides a backstop" that "guarantees that a simple means of registering to vote in federal elections will be available." *Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"), 570 U.S. 1, 12 (2013).

80.     In passing the NVRA, Congress debated, voted on, and ultimately rejected proposals to allow States to require DPOC in connection with the Federal Form. *See* S. Rep. No. 103-6 (1993); 139 Cong. Rec. 5098 (1993); H.R. Rep. No. 103-66, at 23 (1993) (Conf. Rep.); 139 Cong. Rec. 9231-32 (1993). The Conference Committee Report concluded that requiring DPOC in connection with the Federal Form was "not necessary or consistent with the purposes of this Act" and "could be interpreted by States to permit registration requirements that could effectively eliminate, or seriously interfere with, the [Act's] mail registration program." Conf. Rep. at 23-24 (1993).

81.     Development of the contents of the Federal Form was accomplished through notice and comment rulemaking process. *See* 58 Fed. Reg. 51,132 (Sept. 30, 1993) (Advanced Notice of Proposed Rulemaking); 59 Fed. Reg. 11,211 (Mar. 10, 1994) (Notice of Proposed Rulemaking); 59 Fed. Reg. 32,311 (June 23, 1994) (Final Rules).

82.     The required contents of the Federal Form are set out in duly promulgated regulations at 11 C.F.R. § 9428.4(b)(1)-(3). The regulations mandate that the Federal Form shall "list U.S. Citizenship as a universal eligibility requirement," "[c]ontain an attestation on the application that the applicant, to the best of his or her knowledge and belief, meets each of his or her state's specific eligibility requirements," and "[p]rovide a field on the application for the signature of the applicant, under penalty of perjury, and the date of the applicant's signature." 11 C.F.R. § 9428.4(b)(1)-(3).

83.     Several states have sought to modify the state-specific instruction for the Federal Form to require documentary proof of citizenship, and the EAC has repeatedly rejected such requests. *See ITCA*, 570 U.S. at 19 (EAC did not grant Arizona's request to add DPOC requirement to state instructions for Federal Form); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183,

1189 (10th Cir. 2014) (EAC rejected requests from Arizona and Kansas to include DPOC requirement on state-specific Federal Form instructions); *see also* 78 Fed. Reg. 77666 (Dec. 24, 2013) (Notice for Public Comment) (describing EAC's history of rejecting DPOC requirements for state-specific instructions).

84.    In Section 2 of the EO, the President instructed the EAC "[w]ithin 30 days of [March 25, 2025, to] take appropriate action to require, in its national mail voter registration form" documentary proof of citizenship, as defined by the Order.

85.    The President has no authority to give the EAC, an independent agency, any such directive.

86.    Moreover, even if acting independently, the EAC is subject to both substantive and procedural restrictions on its changes to the contents and requirements of the Federal Form. The EAC must comply with the NVRA, HAVA, the Administrative Procedure Act (APA), and the Paperwork Reduction Act in its development of the Federal Form.

87.    First, the EAC's mandate to develop and promulgate the Federal Form must be "in consultation with the chief election officers of the States," 52 U.S.C. § 20508(a)(2).

88.    Second, the EAC's mandate to develop and promulgate the Federal Form falls under the EAC's limited regulatory authority. 52 U.S.C. § 20929; *see also ITCA*, 570 U.S. at 5 ("The Election Assistance Commission is invested with rulemaking authority to prescribe the contents of [the] Federal Form."). Therefore, promulgation of regulations pertaining to the Federal Form require notice and comment rulemaking pursuant to Section 553 of the APA.

89.    In compliance with HAVA and the NVRA, the EAC has exercised its rulemaking authority and promulgated regulations setting out the content of the Federal Form. 11 C.F.R. § 9428.4(b)(1)–(3). To amend the content of the Federal Form to require DPOC, the EAC would be

required to undertake new rulemaking pursuant to the APA. Among other provisions, the APA requires that agencies publish a general notice of proposed rulemaking, give interested persons the opportunity to submit written comments for a period of at least 30 days, and consider those comments in its rulemaking. 5 U.S.C. § 553.

90.     Any changes to the Federal Form not promulgated in compliance with the "statutory procedural minimum" imposed by the APA "cannot be afforded the 'force and effect of law.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979).

91.     Third, in making any changes to the Federal Form, the EAC must comply with the Paperwork Reduction Act ("PRA"). The Federal Form is considered an information collection under the PRA. Therefore, separate from the notice and comment period required under the APA, changes to the Federal Form would also require a separate 60-day public comment period published by the EAC. 44 U.S.C. § 3506(c)(2)(A). After the EAC considered those comments, it would be required to submit an information collection to the Office of Management and Budget (OMB) and publish a second notice of a 30-day comment period. 44 U.S.C. § 3507(a)–(b). OMB would then need to approve the information collection to enable the EAC to collect information for up to three years. 44 U.S.C. § 3507(c), (g).

92.     Fourth, in addition to obeying the procedural requirements of the NVRA, APA, and PRA, the EAC must promulgate rules within the NVRA's statutory grant of authority.

93.     Congress instructed that the Federal Form developed pursuant to the EAC's authority "*may require only such identifying information* (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), *as is necessary* to enable the appropriate State election official to assess the eligibility of the applicant

and to administer voter registration and other parts of the election process." 52 U.S.C.
§ 20508(b)(1) (emphasis added).

94.     Thus, Congress both delegated to the EAC explicit rulemaking authority and placed
limitations on that authority. *See League of Women Voters of United States v. Newby*, 838 F.3d 1,
5 (D.C. Cir. 2016) ("The NVRA at once requires and restricts the inclusion of certain information
on the Federal Form."); *ITCA*, 570 U.S. at 18 (NVRA "acts as both a ceiling and a floor with
respect to the contents of the Federal Form").

95.     In developing the Federal Form, the EAC must determine whether any information
required by the form is "necessary (as required by the NVRA)." *League of Women Voters of United
States*, 838 F.3d at 10 (internal quotation marks omitted).

96.     With respect to DPOC, as discussed above, Congress considered and rejected the
proposal of requiring DPOC and instead adopted an attestation of citizenship. Moreover,
"Congress has historically relied on an attestation requirement 'under penalty of perjury' as a gate-
keeping requirement for access to a wide variety of important federal benefits," *Fish v. Kobach*,
840 F.3d 710, 716–17, 737 (10th Cir. 2016), and any time a state has sought to establish that DPOC
is "necessary" to assessing eligibility, it has failed. *See, e.g.*, *Kobach v. U.S. Election Assistance
Comm'n*, 772 F.3d at 1196–97; *Mi Familia Vota v. Fontes*, 129 F.4th 691, 719 (9th Cir. 2025).

97.     Under the APA, courts must "hold unlawful and set aside agency action . . . found
to be," among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess
of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without
observance of procedure required by law." 5 U.S.C. § 706.

98.     A failure of the EAC to make a reasoned, independent finding that DPOC is "necessary" to enable state officials to assess applicant eligibility, as required by the NVRA, would render the addition of such a requirement to the Federal Form void under the APA. *See League of Women Voters of United States*, 838 F.3d at 9–10, 12 (plaintiffs had "substantial (perhaps overwhelming) likelihood of success on the merits" that EAC Executive Director violated the APA by failing to make necessity finding); *League of Women Voters of United States v. Harrington*, 560 F. Supp. 3d 177, 185 (D.D.C. 2021) (granting summary judgment on claim that EAC action violated APA when Executive Director did not consider whether DPOC requirement was necessary).

99.     Any conclusion by the EAC that the addition of a DPOC requirement on the Federal Form is "necessary" must be "based on a consideration of relevant factors." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The "agency must examine the relevant data and articulate a satisfactory explanation for its action." *Id.* at 43. The reasoning adopted by the agency may not be pretextual, "contrived," or reflect "a significant mismatch between the decision the [agency] made and the rationale [it] provided." *Dep't of Com. v. New York*, 588 U.S. 752, 783–84 (2019).

100.    Finally, as discussed *supra* ¶ 72, any final action to add a DPOC requirement to the Federal Form would need to be approved by at least three Commissioners. 52 U.S.C. § 20928.

101.    Neither the President nor the EO can override by executive decree the statutory framework and duly promulgated regulations that govern the contents of the Federal Form.

102.    The President has no authority to direct any EAC Commissioner, much less three EAC Commissioners, to disregard the procedural and substantive restrictions on their authority to

promulgate the Federal Form or their responsibility to engage in independent analysis and decision-making in doing so.

## V.    The Executive Order Would Nullify the Federal Post Card Application for Military and Overseas Voters

103.    UOCAVA was passed in 1986 to protect the voting rights of Americans serving in the military, their families, and other U.S. citizens living abroad. The law requires states to permit those eligible citizens to register using a post card application and to vote absentee.

104.    UOCAVA requires the President to designate the head of an executive department to carry out the law's requirements. 52 U.S.C. § 20301(a). The designee, who is now the Secretary of Defense,[3] must "prescribe an official post card form, containing both an absentee voter registration application and an absentee ballot application, for use by the States." 52 U.S.C. § 20301(b)(2). The Secretary of Defense has delegated the power to create the post card, typically called the Federal Post Card Application ("FPCA"), to the Federal Voting Assistance Program, a component of the Department of Defense under the purview of the Under Secretary of Defense, Personnel, and Readiness. 32 C.F.R. § 233.6(a)(1).

105.    The states, in turn, "shall . . . use the official post card form (prescribed under section 20301 of this title) for simultaneous voter registration application and absentee ballot application." 52 U.S.C. § 20302(a)(4).

106.    In addition to "prescrib[ing]" the post card form, the designee has several other specific duties, including to "consult State and local election officials in carrying out [UOCAVA]," 52 U.S.C. § 20301(b)(1), "prescribe a suggested design for absentee ballot mailing envelopes," *id.* § 20301(b)(4), to "compile and distribute [] descriptive material on State absentee registration and

---

[3] *See* Designation of the Secretary of Defense as the Presidential Designee Under Title I of the Uniformed and Overseas Citizens Absentee Voting Act, 53 Fed. Reg. 21975 (June 8, 1988).

voting procedures" and "facts relating to specific elections, including dates, offices involved, and the text of ballot questions," *id*. § 20301(b)(5), and to "prescribe a standard oath . . . affirming that a material misstatement of fact . . . may constitute grounds for a conviction for perjury," *id.* § 20301(b)(7).

107.    In Section 3(d) of the EO, the President directs the Secretary of Defense to "update the Federal Post Card Application" to require (i) documentary proof of citizenship as defined in Section 2(a)(ii) of the Order; and (ii) "proof of eligibility to vote in elections in the State in which the voter is attempting to vote." It does not explain what constitutes "proof of eligibility to vote," nor does it explain how DPOC must be submitted.

108.    In passing UOCAVA, Congress mandated the continued availability of a single post card application for both registration and absentee voting for military and overseas voters. 52 §§ U.S.C. 20301, 20302(a)(4). While Congress did not specify the exact contents of the post card, appending additional DPOC or proof of residence is impossible given the format required by Congress.

109.    UOCAVA requires that the President's designee "prescribe [the] official post card form" and "consult State and local election officials" when carrying out that and other duties. Neither the President nor the Secretary of Defense has any legal authority to disregard UOCAVA's statutory requirement to make such a post card available to military and overseas voters.  But that is the effect of the Order, in that it renders the statutorily mandated post card unusable to the extent that it requires multiple additional documents to somehow be appended.

110.    As with changes to the Federal Form, changes to the FPCA must comply with the PRA. Thus, they must undergo a public comment period published by the President's designee,

among other PRA requirements. *See*, *e.g.*, 89 Fed. Reg. 65608-01; 44 U.S.C. § 3506(c)(2)(A); 44 U.S.C. § 3507(a)–(c).

## VI.    The President Does Not Have the Power to Dictate State Mail Ballot Receipt Deadlines

111.    States have wide discretion and flexibility under the Elections and Electors Clauses to establish the "times, places, and manner" of holding federal elections. U.S. Const. art. I, § 4, cl. 1; art. II, § 1, cl. 2. Under these clauses, "states are given, and in fact exercise a wide discretion in the formulation of a system for the choice by the people" of their federal representatives. *United States v. Classic*, 313 U.S. 299, 311 (1941).

112.    Congress can enact election laws if it chooses, but absent a conflict with federal law, states have the power to establish and follow their own election laws.

113.    Congress has long established under 2 U.S.C. § 7 that the federal Election Day is the first Tuesday after the first Monday in November in even-numbered years, and under 3 U.S.C. § 1, that presidential electors shall be appointed on Election Day in accordance with the laws of each state enacted prior to Election Day. Congress has left further regulation in this area largely up to states.

114.    Casting a ballot and tabulating votes are separate activities. A voter usually casts a ballot either by voting in person at a polling place or by placing a completed ballot in the mail. After the voter has cast their ballot, election officials process and tabulate the votes pursuant to relevant state law.

115.    The U.S. Supreme Court has said that while votes must be *cast* by Election Day, some aspects of the election process, such as tabulating all votes, will naturally take place after Election Day. *Foster v. Love*, 522 U.S. 67, 72 & n.4 (1997). Congress has also recognized the difference between "collecting" absentee ballots and "delivering" them to election officials for

tabulation. 52 U.S.C. § 20304(a). And the EO itself also differentiates between votes being "cast" and being "received." Order, § 1.

116.    All states have some form of absentee or mail voting, but the precise requirements and procedures differ by state. Seventeen states plus Washington, D.C., Puerto Rico, and the U.S. Virgin Islands have laws that allow for the receipt of ballots that are cast and mailed on or before Election Day and received before a deadline after Election Day set by state law. Many of these states have had such receipt deadlines for many years, and Congress has declined to pass any laws dictating ballot receipt deadlines.

117.    In fact, Congress has acknowledged that states have varying ballot receipt deadlines. As described above, UOCAVA establishes procedures for military and oversees voters to vote and return their ballots. UOCAVA requires that the Presidential designee responsible for UOCAVA ballots "facilitate the delivery" of marked ballots from overseas voters to the relevant election official "not later than the date by which an absentee ballot must be received in order to be counted in the election." 52 U.S.C. § 20304(b)(1). This provision demonstrates Congress's knowledge (and acceptance) of different deadlines in different states by which an absentee ballot must be received, including those which may extend past Election Day.

118.    No state laws permit ballots to be counted that were mailed after Election Day.

119.    There is thus no conflict between the federal Election Day statutes that establish the deadline for when a vote must be *cast*, and the state laws that permit validly cast ballots mailed before or on Election Day to be *received and counted* in the days following.

120.    Section 7(a) of the EO directs the Attorney General to "take all necessary action to enforce" 2 U.S.C. § 7 and 3 U.S.C. § 1 against states that permit receipt of mail ballots after

Election Day. But no provisions of those statutes authorize their "enforcement" by the Attorney General.

121.   The Attorney General does not have the authority to "enforce" the federal Election Day statutes, and the President cannot order her to do so. Nor does a state "violate" those statutes when it counts validly cast ballots mailed by Election Day that are received after Election Day if state law so allows.

122.   52 U.S.C. § 21081(a)(6) requires that states "adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the State." It does not prescribe *what* uniform and nondiscriminatory definition must be used, nor does it authorize the President or the EAC to provide that definition. Instead, it instructs "[e]ach State" to adopt such standards. The mail ballot deadlines established in each state represent the uniform and nondiscriminatory standards that each state has adopted.

123.   Actions by the President, the Attorney General, or the EAC to prevent states from counting ballots received after Election Day pursuant to state law or punish them for doing so would violate states' authority under the Elections and Electors Clauses to establish their own voting procedures. It would also violate the rights of voters in those states who rely on their own state's laws.

124.   The EO provides an "absurd" hypothetical, likening post-Election Day receipt of validly cast ballots to allowing voters to cast a vote in person three days after Election Day at a "former voting precinct." But in this EO the President attempts to prevent something quite different—the counting of votes cast by eligible voters on or before Election Day pursuant to state law. The President does not have that power.

25

125.    Indeed, what would be "absurd" would be for the President to usurp the constitutional power of States to establish their own voting procedures, direct the Attorney General on no authority to "enforce" laws that are not being violated, order the EAC to withhold funding from states that are following the law, and to throw out voters' validly cast ballots.

**VII.    The President Does Not Have the Authority to Condition the States' Receipt of Federal Funding from the EAC on the States' Compliance with the Unlawful Provisions of the EO**

126.    Section 4(a) of the EO orders that the EAC "shall . . . take all appropriate action to cease providing Federal funds to States that do not comply with the Federal laws set forth in 52 U.S.C. 21145," including "any requirement for documentary proof of United States citizenship adopted pursuant to section 2(a)(ii) of this order." Order, § 4(a).

127.    Section 7(b) of the EO requires the EAC to condition funding to states on their applying the President's definition of "what constitutes a vote."

128.    The President cannot lawfully issue these commands to the EAC to do this, and the EAC may not condition funding in this way.

129.    Under HAVA, the EAC is responsible for making "a requirements payment each year in an amount determined under section 21002 [of HAVA] to each State which meets the conditions described in section 21003." 52 U.S.C. § 21001(a). These "requirements payments" to states are distributed "not less frequently than once each calendar year." 52 U.S.C. § 21001(e).

130.    States may then use "a requirements payment to carry out other activities to improve the administration of elections for Federal office." 52 U.S.C. § 21001(b)(2).

131.    The "State allocation percentage" of funds for a state is calculated as a percentage, *e.g.*, equal to the quotient of (1) the voting age population of the state as reported in the last

decennial census and (2) the total voting age population of all states as reported in the last decennial census. 52 U.S.C. § 21002(b).

132.    Section 21003(b) sets forth the conditions that states must meet for receipt of federal funds. First, states must develop a state plan that includes stakeholders from various community groups, which must be filed with the EAC. 52 U.S.C. § 21003(b)(1)(A)–(B). Second, states must certify "compliance with each of the laws described in section 21145 of this title." 52 U.S.C. § 21003(b)(3); 52 U.S.C. § 20901(c) ("In order to receive a payment under the program under this section, the State shall provide the Administrator with certifications that the State will use the funds provided . . . in a manner that is consistent with each of the laws described in section 21145.").

133.    Section 21145 in turn sets forth the list of statutes with which states must comply. In addition to the NVRA and UOCAVA, these laws include the Voting Rights Act of 1965, the Voting Accessibility for the Elderly and Handicapped Act, the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973. 52 U.S.C. § 21145.

134.    None of these laws condition funding to states on their compliance with 2 U.S.C. § 7 (Time of Election) or 3 U.S.C. § 1 (Time of Appointing Electors). Order, § 7(b).

135.    None of these laws condition funding to states based on whether they require voters to provide documentary proof of citizenship. Order, § 4(a).

136.    States with large voting age population percentages, such as California and New York, stand to lose the most federal funding from the EAC if the EAC determines that they are noncompliant with the Executive Order.

137.     In turn, the citizens of these states, including LULAC and SFI voters who reside those states, stand to suffer because they will not benefit from federal funds that would have led to improvements in their respective states' election administration and systems.

## VIII.     The Order Harms Plaintiffs

### LULAC

Harms to LULAC's Members

138.     The Order will have a significant impact on the voting rights of LULAC's members. LULAC members will be harmed by the DPOC Requirement. LULAC members have a federal right under the NVRA to use the Federal Form as a "backstop" that provides easy access to registration, and the DPOC Requirement will deny them that backstop option. LULAC members across the country, including in states whose state voter registration forms require DPOC, rely on the Federal Form to register to vote without undue burden.

139.     LULAC members who are eligible to vote often do not have the requisite citizenship documents, *i.e.*, United States passports or state, federal, or military identification documents that indicate that the applicant is a citizen of the United States. Requiring DPOC, as a prerequisite to registering to vote, will prevent these members from registering or re-registering to vote.

140.     The forms of DPOC that satisfy the Order's requirements are narrow and include a United States passport, which is costly, requires a burdensome application and possibly lengthy wait time, and is generally unnecessary for individuals who do not travel internationally. Most members of LULAC are also unlikely to have access to the other forms of qualifying DPOC, including a REAL ID Act-compliant identification that indicates citizenship (which is only available in five states, *see supra* ¶ 42) or a military identification card that indicates citizenship

(which military identification cards generally do not do, *see infra* ¶ 157). LULAC members who do not already have a qualifying form of DPOC are likely to face severe burdens or ultimately be unable to obtain one in order to register to vote.

141.    Even LULAC members who do have qualifying DPOC are likely to have difficulty submitting this documentation as part of the voter registration process. Scanning, printing, and submitting DPOC with the Federal Form is likely to be burdensome for many LULAC members who do not have easy access to the required technology. As the current Federal Form does not require the submission of additional documentation, the DPOC Requirement will inherently increase the burden on LULAC members using the Federal Form to register to vote.

142.    LULAC members will also be harmed by the Order's purported overwriting of state laws that permit post-Election Day receipt of absentee ballots. LULAC has members who rely on absentee voting in states across the country, including states that count absentee ballots received after Election Day. These members will be harmed and potentially disenfranchised by the Order's purported ban on the acceptance of absentee ballots after Election Day.

143.    LULAC's members will be harmed by the EO's threatened restrictions on funding in at least two ways. To the extent the EO's threats are successful in coercing the states to adopt the President's preferred electoral policies, those policies will directly harm LULAC members. And to the extent the EO's threats are not successful, and states lose federal funding, LULAC's members will be harmed by the loss of vital election-related services if critical funding to their state's election infrastructure is unlawfully withheld.

Harms to LULAC as Organization

144.    The Executive Order will impede LULAC's voter registration efforts and the number of voters that LULAC expects to register will plummet, thus frustrating LULAC's mission.

Many prospective voters who LULAC councils to register to vote do not have the requisite DPOC mandated by the Order. Even if they do, LULAC councils do not currently have any way of photocopying these documents. And even if that were an option, the required DPOC contain sensitive information that many prospective registrants would be unwilling to share.

145.    Because the current federal voter registration form does not require documentary proof of citizenship, LULAC is able to use the Federal Form to register prospective voters even if state forms require such documentation. If, as the Order mandates, the EAC *must* include documentary proof of citizenship on the Federal Form, LULAC will not be able to use the Federal Form to register these voters who are also unable to use their state form.

146.    Therefore, LULAC's mission of helping prospective voters fill out registration forms, collecting the forms, and timely returning the forms to election offices in accordance with state laws will be frustrated.

147.    LULAC will be forced to divert resources in order to register voters in compliance with the Order's DPOC Requirement. LULAC conducts voter registration drives on-site with the goal of completing voter registrations on-site. LULAC would be forced to incur costs and additional burdens to purchase and maintain mobile scanning and printing equipment to facilitate voter registration applications that comply with the DPOC Requirement.

148.    LULAC will also be forced to divert resources to educate and assist members and community members about changed ballot return deadlines in states that currently count absentee ballots received after Election Day. LULAC will be required to do more education work than in the past to address the confusion that the Order creates about what voter registration and ballot receipt deadline are valid.

149.     To meet the resource and staffing needs to educate and assist members, LULAC will have to divert significant resources from its other important initiatives. LULAC is currently devoting resources and staff time toward combatting immigration issues, particularly related to ongoing threats of deportation of its members. To that end, LULAC has had to spend staff resources helping its councils and members navigate the draconian immigration landscape. LULAC has also devoted resources to working with its councils and members to combat the efforts to dismantle of Diversity, Equity, and Inclusion initiatives—the loss of these programs, such as scholarships and DEI pipelines, has detrimentally impacted the communities LULAC serves. LULAC further allocates resources to its Latina economic, empowerment, health and wellness programs, the LULAC Academy, and Latino leadership programs. These programs stand to suffer if LULAC must use its limited resources to combat the effects flowing from the implementation of the Order.

150.     As a result of the DPOC Requirement, LULAC is preparing to dedicate and divert more resources and time in order to register the same number of voters; LULAC will incur costs to purchase and maintain equipment to ensure its voter registration advocacy complies with the DPOC Requirement; LULAC will divert staff time and resources to educating its members and the communities it serves about the DPOC Requirement and ballot return deadlines; and fewer LULAC members and potential voters LULAC reaches will be able to successfully register to vote.

**SFI**

Harms to SFI's Members

151.     Voting is more complicated for military and overseas voters, like SFI's members, because they move frequently, often must request an absentee ballot, and can face severe mail

delays while living abroad, impacting when they receive their absentee ballots and when their voted ballots are received by election officials. Military and overseas voters, including SFI's members, frequently use mail voter registration and absentee voting options, including the FPCA, to register to vote and request their absentee ballots.

152.    There are over 4 million U.S. citizens living overseas.[4] UOCAVA voters are U.S. citizens who are active members of the Uniformed Services, the Merchant Marines, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, diplomats and Foreign Service Officers, their eligible family members, and any other U.S. citizens residing outside the United States. When deliberating over the merits of UOCAVA, Congress found that one reason why military and overseas citizens faced difficulties voting was because states had enacted legal and administrative obstacles that "discourage[d] or confuse[d] overseas citizens." H.R. Rep. No. 99-765, at 9 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 2009, 2013.

153.    The EO's purported introduction of additional hurdles to an already complex process for military and overseas voters will make an already complicated voting process even more burdensome.

154.    SFI's membership base is transient, but the most recent records indicate that SFI has members registered to vote in all 50 states. SFI's members include registered voters planning to vote absentee and in person. These members face various barriers to access, such as frequent

---

[4] The Federal Voter Assistance Program estimates there are 4.4 million U.S. citizens living overseas while the State Department estimates there are over 9 million U.S. citizens living overseas. *Compare* 2022 Federal Voting Assistance Program Report to Congress, Federal Voting Assistance Program (Aug. 3, 2023), https://www.fvap.gov/uploads/FVAP/Reports/rtc_20231113_V10_FINAL.pdf, *with*, Consular Affairs by the Numbers, U.S. Department of State's Bureau of Consular Affairs (Jan. 2020), https://travel.state.gov/content/dam/travel/CA-By-the-Number-2020.pdf.

moves, overseas assignments, and confusion over where and how to register. SFI has worked to inform their members, including those stationed overseas and across the United States, about how to register to vote and request and cast their ballots.

155.    SFI's members will be harmed by Sections 2(a) and 3(d)(i) of the Executive Order, which would require that individuals using the Federal Form to register to vote or the FPCA to register and request an absentee ballot provide certain narrowly defined forms of DPOC. SFI has members who register to vote using the FPCA as well as other methods of registration, including, upon information and belief, using the Federal Form.

156.    Many SFI members do not possess or maintain regular, easy access to qualifying forms of proof of citizenship. With respect to passports, it is likely that not all members of SFI possess or have regular access to passports. Members of SFI, including military families not stationed overseas, may not have a passport for the same reasons that civilians may not possess passports, including that they are expensive, require a cumbersome application, and are generally not necessary for those not travelling internationally.

157.    The Order also permits "an official military identification card that indicates the applicant is a citizen of the United States" to serve as proof of citizenship, but the military identification cards issued both to servicemembers ("Common Access Cards" or "CACs") and dependents ("Military Dependent IDs") *do not include* place of birth or citizenship status. This is not a viable form of proof of citizenship for SFI members.

158.    Many SFI members who do possess a document specified in Section 2(a)(ii) of the Order are still likely to have difficulty providing a copy of that document in order to register to vote and/or request an absentee ballot. SFI members move frequently because of their status as military dependents. When moving, it is not uncommon for personal items, including passports

and other sensitive documents, to be packed incorrectly and stored in a way that prevents an individual from accessing them for years at a time. And even documents packaged correctly still may not arrive for many months after a move. This means that many military service members and their families, including SFI members, are likely to lack access to the DPOC they would need to comply with the Order's requirements in time to participate in elections.

159.     Further, even if they do possess and have access to qualifying DPOC, many SFI members are based in locations that do not have reliable access to the internet, copiers, or printers, and thus would face significant hurdles providing a copy of sensitive documents when registering to vote and/or requesting an absentee ballot.

160.     SFI members, particularly those who are stationed in foreign countries, are also concerned about sending copies of sensitive documents through the mail where they may be accessible by third parties, including foreign adversaries, and traced back to the member. SFI members stationed abroad are often a heightened target for foreign adversaries, and SFI members fear that sending highly sensitive identifying information through the mail will expose them to personal security risks. SFI members are similarly concerned that the electronic transmission of these documents (e.g., through fax) would expose them to the same privacy risks.

161.     SFI members are also harmed by Section 3(d)(ii) of the Order, which requires that UOCAVA voters applying to vote and requesting a ballot with the FCPA provide "proof of eligibility to vote in elections in the State in which the voter is attempting to vote."

162.     The Order does not define or at all explain what would constitute sufficient proof of eligibility. As such, SFI members are concerned that, even if they make a good faith effort to demonstrate their eligibility, their FPCA forms will be rejected based on arbitrary criteria that are not known in advance, preventing them from registering to vote and receiving an absentee ballot.

The Order's ambiguity creates immediate uncertainty among SFI members who are unsure of what they will need to do to register to vote and request an absentee ballot, and may lead to further confusion and barriers to the franchise if implemented.

163.    The changes the Order purports to require to the FPCA under Section 3(d) are uniquely burdensome to SFI members for another reason. The FPCA allows UOCAVA voters to simultaneously register to vote and request an absentee ballot for federal elections in the calendar year. This means that UOCAVA voters, including SFI members, who live abroad and use the FPCA—whether they have moved or not—would need to provide DPOC and proof of eligibility not once, but every time they request an absentee ballot for a federal election. This would cause an ongoing burden on many SFI members, including those subject to Permanent Change of Station orders, which are long-term assignments that generally last multiple years. SFI members stationed in such long-term assignments would be required to continually provide the documentation required by this EO in order to use the FPCA. This is an unduly burdensome requirement that would harm SFI members.

164.    SFI members are already harmed by the uncertainty and confusion surrounding their ability to register to vote and request absentee ballots as a result of the Order. SFI members are likely to move frequently and are already required to begin planning to register to vote and request a ballot earlier than others in the civilian population. The uncertainty as to what will be required of them under the Order, including how they might need to demonstrate proof of citizenship, whether they will need to secure qualifying proof of eligibility, what such proof might be, and how they can ensure access to these documents as they anticipate relocating (all when they may not know where they will live before the next federal election), is already causing significant harm to SFI members.

165.    SFI members will also be harmed by Section 7(a) of the Order, which directs the Attorney General to target states that count ballots received after Election Day. SFI members are likely to move frequently and to do so over the summer, when most military moves take place in order to align with the school year. This moving period also frequently coincides with the immediate pre-election period. It is common for SFI members, particularly those stationed overseas where mail takes longer to arrive and to travel back to the United States, to rely on ballot acceptance deadlines after Election Day where permitted by state law. It is also important to SFI and its members that its members are allowed sufficient time to decide how to vote.

166.    Notably, Section 7(b) of the Order—which directs the EAC to condition funding to states on whether the state counts duly voted ballots received after Election Day—contains a carveout that would exclude "ballots cast in accordance with 52 U.S.C. 20301 *et seq.*," or UOCAVA. However, it is not clear that this UOCAVA carveout in Section 7(b) provides any protection to SFI members.

167.    First, and most importantly, Section 7(a) *contains no carveout* for UOCAVA ballots. The EO thus proclaims that the President interprets federal law to require *all* ballots, including those cast pursuant to UOCAVA, to be received by Election Day, and directs the Attorney General to enforce that requirement. Regardless of Section 7(b), this means that all SFI members are at risk of having their ballots discounted if they are received after Election Day, even where they would be counted under State law. This threatens SFI members who rely on mail-in ballots and vote in States with post-Election Day ballot return deadlines.

168.    Second, this narrow protection for UOCAVA ballots, to the extent that it does exist, would not apply to all SFI members. Many SFI members do not use UOCAVA processes to cast absentee ballots and thus would not be protected by any carveout.

Harms to SFI as Organization

169.    Because voting remains less accessible for its members and the broader military and overseas community, SFI educates, registers, and engages in non-partisan "get-out-the-vote" (GOTV) efforts for military voters in all elections. SFI engages in GOTV efforts every year, not only years in which there are significant federal elections. SFI routinely creates and distributes resources to assist its members and the broader military and overseas community. For example, SFI publishes material explaining to its voters how to vote by mail, how to find their voting assistance officer, and how to navigate state-specific election laws.

170.    When the EO was issued on March 25, SFI began planning how to explain its impact to its members. SFI plans to conduct education and outreach to explain how an Executive Order compares to legislation duly promulgated by Congress or a State legislature. SFI is also making plans to educate members about changes to established procedures that would result from the implementation of the Order, including the need to provide a copy of a narrow range of DPOC with voter registration applications and the need for members voting ballots outside of the UOCAVA process to ensure their ballots are received by Election Day, even if not required by state law. In response to the Order, SFI will have to add an entire section to its training for members on how to help military families in their networks register to vote, and conduct additional training and outreach events, consuming staff time and resources that would not otherwise have been required. These education and outreach events include events and trainings on virtual platforms, as well as written materials distributed through email, social media, and other means.

171.    Because of the Order, SFI also plans to conduct outreach events much earlier in the year than usual. Prior to the issuance of the Order, SFI planned to begin educating its members about voter registration and absentee voting opportunities in the summer months. Now, SFI plans

to begin engagement activities as early as the next few weeks to work to ensure that its members are as prepared as possible to comply with any possible new requirements contemplated by the Order, including provision of DPOC to register to vote, proof of eligibility requirements, and changed ballot return deadlines.

172.    This expanded and early member education detracts from the activities that SFI had planned to do over the next several months and beyond. During the week that the EO was issued, SFI was running its annual Washington, D.C. education and advocacy week with staff and members from across the country. Because of the EO, rather than educate members during the event as planned, SFI staff were forced to divert time to create an explainer video on the EO. In the near term, SFI had planned to make recent state voter roll purges the focus of its first round of educational materials for the year. Now, SFI is forced to divert resources to educate its members about the EO first, diverting all other planned educational activities. Additionally, staff time that would have been devoted to having one-on-one meetings with new SFI volunteers is now going into education, outreach, and response to the EO.

173.    Unless and until the provisions of the Order pertaining to documentary proof of citizenship, proof of eligibility, and absentee ballot return deadlines are declared void, SFI will need to continue to divert resources from its existing projects to educate and directly assist its members who have difficulty registering to vote or casting an absentee ballot in compliance with provisions of the Order. This will continue to divert resources from projects SFI is conducting and planned to conduct, including education on state voter roll purges, volunteer meetings, and other education and outreach.

174.    Even with the extra resources and effort SFI will devote to helping its members register due to the Order, its mission will nevertheless be frustrated, because fewer SFI members

and fewer military family members overall will be able to register, to vote, and to have their vote counted.

**Arizona Students' Association**

Harms to ASA's Members

175.    The EO's DPOC Requirement is harming and will further harm ASA's members. ASA's student members often lack DPOC, which is required when voters register using Arizona's state form, and even those who do have DPOC often have trouble accessing it. Many members cannot afford to pay for the documents necessary to meet the DPOC requirement. Thus, the EO's DPOC Requirement will prevent many ASA members from registering to vote; without the DPOC Requirement, those members would have been able to vote using the Federal Form.

176.    Even those members who are able to register face imminent harm. Some members will be able to obtain or access DPOC only by spending significant time, money, and/or effort to do so, and will face greater difficulty registering because of the DPOC Requirement.

177.    Even before it has taken effect, the EO's DPOC Requirement harms ASA members by creating confusion about what will be required for registration. ASA and its members are unsure which documents students will be allowed to use as DPOC because the EO's list of acceptable documents is vague.

178.    ASA's members will also suffer harm from the EO's threatened funding cutoffs. If the Order coerces Arizona to adopt the President's preferred electoral policies, those policies will directly harm ASA members, as described above. If Arizona does not adopt those policies, and Arizona loses federal funding, ASA members will be harmed by the loss of critical election services if funding for the State's election infrastructure is unlawfully withheld.

179.     ASA members who are registered to vote in states other than Arizona, sometimes with the assistance of ASA, will be harmed by Section 7 of the Order because their validly-cast ballots may not be counted, or because they will be forced to alter their voting behavior.

Harms to ASA as Organization

180.     ASA is and will be acutely harmed by the EO. The DPOC Requirement will make it significantly more difficult for ASA to help students register at its drives. As explained, ASA's student members often lack DPOC or lack easy access to DPOC. For that reason, ASA often helps students register using the federal form, which does not currently require DPOC, rather than the state form, which does require DPOC.

181.     Because of the EO's DPOC Requirement, ASA will need to divert more resources toward ensuring that students who want to register can provide a copy of their DPOC. Among other things, that will mean purchasing or renting equipment such as copiers, hiring and training extra part-time staff, and assisting students with obtaining DPOC. It will also mean spending more time at voter registration drives to explain the DPOC requirement to students and to make copies of the students' DPOC. Those resources will be diverted from ASA's other activities, such as its annual Student Voting Summit, voter registration quality control, and educational and advocacy efforts related to higher education funding.

182.     Even if ASA diverts more resources toward voter registration, its mission will be frustrated by the EO because it will register fewer students to vote—those students who could otherwise register with the federal form will be unable to do so because of the DPOC Requirement. It will also register fewer students because of the extra time and resources it will need to spend on those who do register.

183.    Like its members, ASA is harmed by the confusion the EO has created. ASA is unsure which documents will qualify as DPOC. For that reason and others, it is unable to plan how to change its voter registration process and is unable to begin to educate Arizona students about what they will need when they register.

## CLAIMS

## <u>COUNT ONE</u>

### *Ultra Vires* Presidential Action – Separation of Powers
### (Documentary Proof Of Citizenship For Federal Form)
All Plaintiffs Against Defendants The President, EAC, Executive Director Schletz, and Commissioners Palmer, Hicks, McCormick, and Hovland

184.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

185.    The President's authority to act must "stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952); *accord Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 188-89 (1999).

186.    Executive actions, including Executive Orders issued by a President, can be challenged as *ultra vires* when they are in excess of the President's constitutional and statutory authority. *See, e.g.*, *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996).

187.    Under the NVRA, as amended by HAVA, Congress assigned the creation and maintenance of the Federal Form to the independent, bipartisan EAC. 52 U.S.C. § 20508. While the President appoints EAC members, it is the Commissioners, not the President, who are charged by Congress with maintaining the Federal Form in accordance with the statutory requirements set by Congress. U.S.C. § 20508(b)(1).

188.    Through the Order, the President requires the EAC to include a DPOC requirement to register to vote using the Federal Form, including by specifying the limited forms of allowable

proof of citizenship. But the President has no legal authority to impose such requirements because the EAC is a bipartisan, independent agency and must exercise its discretion in changing the Federal Form.

189.   Article II of the Constitution contains no explicit grant of power to the President to dictate federal election rules, including rules for voter registration. Nor is there an implicit Article II power to do so as there is no "executive practice, long pursued to the knowledge of the Congress and never before questioned" of Presidents dictating the necessary procedures for voters to register to vote. *See Youngstown*, 343 U.S. at 610 (Frankfurter, J., concurring). Up until now, no other President has tried to encroach so deeply into the States' and Congress's sphere of constitutional authority by trying to seize such powers.

190.   Under the Elections and Electors Clauses, the States have the responsibility to set the times, places and manner of federal elections, and only Congress can supplant state election laws and procedures. The Constitution grants no such power to the President. In attempting to impose a documentary proof of citizenship requirement, the President unlawfully attempts to usurp power that the Constitution assigns to the States and Congress.

191.   The President has no legal authority to circumvent federal statutes passed by Congress that commit the maintenance of the Federal Form to the independent, bipartisan EAC.

192.   Under fundamental separation of powers principles, the President's mandate to the EAC to require certain forms of documentary proof of citizenship in Section 2 of the Order is unlawful.

193.   All plaintiffs are and will continue to be irreparably harmed by this *ultra vires* action.

## COUNT TWO

***Ultra Vires* Presidential Action – Separation Of Powers**
**(Directive To Unlawfully Withhold Funds From States)**
All Plaintiffs Against Defendants The President, EAC, Executive Director Schletz, and
Commissioners Palmer, Hicks, McCormick, and Hovland

194.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

195.    The United States Constitution exclusively grants the power of the purse to Congress, not the President. U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause).

196.    "Incident to [the spending] power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206–07 (1987) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474, (1980)). But nothing in the Constitution allows the President "to enact, to amend, or to repeal statutes," including funding statutes. *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). Instead, the President's duty is simply to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

197.    In Section 4(a) of the Order, the President unlawfully directs the EAC to "cease providing Federal funds to States that do not comply" with "any requirement for documentary proof of United States citizenship adopted pursuant to section 2(a)(ii) of this order." But Congress has created no such funding condition, nor has Congress directed the EAC to adopt such a funding condition.

198.    In Section 7 of the Order, the President further unlawfully directs the EAC to condition funding to states on imposition of a "ballot receipt deadline of Election Day for all

43

methods of voting" except for those ballots cast in accordance with UOCAVA. Here again, Congress has passed no such funding condition, nor has Congress directed the EAC to do so.

199.    The President has no legal authority to condition the receipt of funds that Congress has appropriated for distribution to States by the EAC on compliance with the unlawfully-imposed documentary proof of citizenship requirement or the unlawfully-imposed Election Day ballot receipt deadline.

200.    All plaintiffs are and will continue to be irreparably harmed by this *ultra vires* action.

## COUNT THREE

### *Ultra Vires* Presidential Action – Electors And Elections Clauses
### (Mail Ballot Receipt Deadline)
All Plaintiffs Against Defendants The President, U.S. Department of Justice, and Attorney General Bondi

201.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

202.    States have wide discretion to establish the "times, places, and manner" of holding federal elections under the Constitution's Elections and Electors Clauses. U.S. Const. art. I, § 4, cl. 1; art. II, § 1, cl. 2.

203.    Under the Constitution, State election laws may be pre-empted only by Congress, not presidential directive.

204.    There is no conflict between the federal Election Day statutes, 2 U.S.C. § 7 and 3 U.S.C. § 1, and state laws allowing for votes validly cast by Election Day but received after that date to be counted.

205.    Section 7(a) of the Order unlawfully directs the Attorney General to "enforce" the federal Election Day statutes against states. But neither of the federal Election Day statutes, 2 U.S.C. § 7 and 3 U.S.C. § 1, provide for "enforcement" by the United States, nor does a state "violate" federal law by counting ballots validly cast under State law by Election Day but received thereafter as permitted by State law.

206.    The President has no legal authority to forbid the counting of ballots validly cast under State law, nor to direct the Attorney General to take any action with respect to such validly cast votes.

207.    The President's *ultra vires* commands would disfranchise numerous voters in every federal election in numerous states. All plaintiffs are and will continue to be irreparably harmed by this *ultra vires* action.

## COUNT FOUR

### *Ultra Vires* Presidential Action – UOCAVA
### (Documentary Proof Of Citizenship and Residential Eligibility for Federal Post Card Application)
Plaintiff SFI Against Defendants The President, Department of Defense, and Secretary Hegseth

208.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

209.    The President has no legal authority to gut a core and longstanding requirement of the Uniformed and Overseas Citizens Absentee Voting Act that is relied on by military and overseas voters *via* Executive Order. But that is what the President has done in Section 3(d) of the Order, in purporting to require the Secretary of Defense to update UOCAVA's Federal Post Card Application to require both DPOC as defined by the Order as well as "proof of eligibility to vote in elections in the State in which the voter is attempting to vote." Order, § 3(d).

210.     In passing UOCAVA, Congress mandated the continued availability of a single post card application for both registration and absentee ballot applications for military and overseas voters. While Congress did not specify the exact contents of the post card, appending additional documentary proof of either citizenship or state of residence is impossible given the format required by Congress.

211.     Neither the President nor the Secretary of Defense, his designee in the maintenance of the post card, has any legal authority to disregard UOCAVA's statutory requirement to make such a post card available to military and overseas voters.

212.     Plaintiff SFI has been and will continue to be injured by this *ultra vires* action.

## COUNT FIVE

### Administrative Procedure Act, 5 U.S.C. § 706(2)
### (Documentary Proof Of Citizenship For Federal Form)
All Plaintiffs Against Defendants EAC, Executive Director Schletz, and Commissioners Palmer, Hicks, McCormick, and Hovland

213.     Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

214.     The Administrative Procedure Act, 5 U.S.C. § 706(2), provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

215.     When an agency administers a federal statute, the agency's power to act is "authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). Any action that an agency takes outside the bounds of its statutory authority is ultra vires, *ibid.*, and violates the Administrative Procedure Act, *see* 5 U.S.C. § 706(2)(C).

46

216.    The EAC's longstanding policy and legal determination has been that documentary proof of citizenship is not "necessary" within the meaning of the NVRA, based on evidentiary findings by Congress and the EAC's own sound consideration.

217.    Any action taken to change that determination based upon the Order would be arbitrary, capricious, an abuse of discretion, and not in accordance with law under the APA.

218.    In accordance with the APA, agencies are required to explain the bases for their decisions, especially when they change longstanding rules, regulations and policies, and statutory interpretations.

219.    Before implementing any changes to the Federal Form, the EAC would have to make a reasoned determination, supported by a vote of at least three commissioners, that the change is "necessary" to assess voter eligibility. The Commission could not, consistent with the NVRA, make such a determination that the listed forms of proof of citizenship are "*necessary* to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1) (emphasis added).

220.    Further, implementing the changes to the Federal Form without adhering to the notice and comment process required by the APA or the process required by the Paperwork Reduction Act would not be in accordance with law.

221.    Thus, imposing the proof of citizenship requirements as set forth in the Order on use of the Federal Form would be unlawful under the APA.

## COUNT SIX

**Administrative Procedure Act, 5 U.S.C. § 706(2)**
**(Documentary Proof Of Citizenship and Residential Eligibility for Federal Post Card Application)**
Plaintiff SFI Against Defendants Department Of Defense and Secretary Hegseth

222.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

223.    Consistent with the requirements of UOCAVA, longstanding policy and practice of the Department of Defense has been not to require DPOC or proof of residency as part of the Federal Post Card Application to register to vote and receive an absentee ballot for overseas and military voters. UOCAVA also requires the Secretary to consult state and local officials in carrying out UOCAVA's responsibilities, such as in creating the FPCA.

224.    The APA imposes various duties on agencies, such as explaining the bases for their decisions, especially when they change longstanding rules, regulations and policies, and statutory interpretations.

225.    Any agency action that would make it functionally impossible for military and overseas voters to use FPCA as a standalone document to register to vote or request an absentee ballot would violate UOCAVA and be arbitrary, capricious, and an abuse of discretion, especially if that action was taken without consulting state and local election officials. Changing the FPCA as directed by the Order would violate the Paperwork Reduction Act, and therefore would not be in accordance with law.

226.    For these reasons, changing the FPCA in the manner directed by the Order would be unlawful under the APA.

48

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, declare that Sections 2, 3(d), 4(a), and 7 of the Order are unconstitutional or otherwise unlawful, and further declare that nothing in 2 U.S.C. § 7 or 3 U.S.C. § 1 requires states to discard mail-in and absentee ballots validly cast and received in accordance with state law, and award any other relief that the Court deems necessary and just, including using its equitable powers to enter interim, preliminary, and permanent orders providing that:

A. Defendants are enjoined from implementing or giving effect to Sections 2, 3(d), 4(a), and 7 of the Order in any way;

B. Defendants are directed to rescind any and all guidance or direction that has already been issued that relates to implementing or enforcing Sections 2, 3(d), 4(a), and 7 of the Order;

C. Defendants U.S. Department of Justice and Pamela Bondi, in her official capacity as the U.S. Attorney General, are enjoined from taking any action that would seek to prohibit the counting of mail-in and absentee ballots validly cast under State law insofar as 2 U.S.C. § 7 and 3 U.S.C. § 1 do not preempt states' power to set ballot receipt deadlines for ballots validly cast by Election Day, and those federal statutes provide no enforcement authority to the U.S. Department of Justice or the U.S. Attorney General.

D.  Defendants are directed to take, in good faith, any other steps that are necessary to prevent the implementation or enforcement of Sections 2, 3(d), 4(a) and 7 of the Order.

E. All other appropriate relief is granted.

Dated: March 31, 2025

Respectfully submitted,

/s/ Norman L. Eisen
Norman L. Eisen (D.C. Bar No. 435051)
Tianna J. Mays (D.C. Bar No. 90005882)***
Pooja Chaudhuri (D.C. Bar No. 888314523)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
(202) 601-8678
norman@statedemocracydefenders.org
tianna@statedemocracydefenders.org
pooja@statedemocracydefenders.org

*Counsel for Plaintiffs LULAC, SFI, and ASA*

*\*D.D.C. application pending*
*\*\*Application for D.D.C. admission*
*forthcoming*
*\*\*\*Application for pro hac vice admission*
*forthcoming*

/s/ Danielle Lang
Danielle Lang (DC Bar No. 1500218)
Jonathan Diaz (DC Bar No. 1613558)
Robert Brent Ferguson (DC Bar No. 1782289)*
Anna Baldwin (DC Bar No. 998713)**
Heather Szilagyi (DC Bar No. 90006787)
Benjamin Phillips (DC Bar No. 90005450)**
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
abaldwin@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
bphillips@campaignlegalcenter.org

# CIVIL COVER SHEET

JS-44 (Rev. 11/2020 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association | Donald Trump, U.S. Election Assistance Commission, Brianna Schletz, Donald Palmer, Thomas hicks, Christy McCormick, Benjamin Hovland, U.S. Department of Justice, Pamela Bondi, U.S. Department of Defense, Pete Hegseth, Federal Voting Assistance Program, J. Scott Wiedmann |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **11001**
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Danielle Lang, Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

- ☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

***(If Antitrust, then A governs)***

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016 (DTSA)

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**Other Statutes**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 462 Naturalization Application

- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act (TCPA)
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☒ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

### V. ORIGIN

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Causes of action in equity regarding ultra vires conduct in violation of the of the U.S. Constitution, and claims under the Administrative Procedure Act, 5 U.S.C. § 706(2).

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $**<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|---|

**DATE:** 3/31/2025   **SIGNATURE OF ATTORNEY OF RECORD** _____ /s/ Danielle Lang

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI. CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

<table>
<tr><td>League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association</td><td>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td style="text-align:center"><i>Plaintiff(s)</i></td><td>)<br>)</td><td></td></tr>
<tr><td style="text-align:center">v.</td><td>)</td><td>Civil Action No.  1:25-cv-00946</td></tr>
<tr><td>Executive Office of the President, et al.</td><td>)<br>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td style="text-align:center"><i>Defendant(s)</i></td><td>)</td><td></td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  PAMELA BONDI, in her official capacity as Attorney General of the United States,
950 Pennsylvania Ave. NW
Washington, DC, 20530

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____
                                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:25-cv-00946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> Executive Office of the President, et al. <br><br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.   1:25-cv-00946

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  DEPARTMENT OF DEFENSE
1000 Defense Pentagon,
Washington, DC 20301

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:25-cv-00946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association | ) ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Executive Office of the President, et al. | ) ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.  1:25-cv-00946

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington DC 20530

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____                    _____
                                                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:25-cv-00946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                              _____
                                              *Printed name and title*


                                              _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association | ) ) ) ) |  |
|---|---|---|
| *Plaintiff(s)* | ) ) |  |
| v. | ) | Civil Action No.  1:25-cv-00946 |
| Executive Office of the President, et al. | ) ) ) |  |
| *Defendant(s)* | ) ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  UNITED STATES ELECTION ASSISTANCE COMMISSION
633 3rd Street NW, Suite 200,
Washington, DC 20001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____

_____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:25-cv-00946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                 _____
                                                                              *Server's signature*

                                                          _____
                                                                              *Printed name and title*


                                                          _____
                                                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

League of United Latin American Citizens, Secure
Families Initiative, Arizona Students' Association

_____
*Plaintiff(s)*

v.

Executive Office of the President, et al.

_____
*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)

Civil Action No.   1:25-cv-00946

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  FEDERAL VOTING ASSISTANCE PROGRAM
4800 Mark Center Drive, Suite 05E22
Alexandria, VA 22350-5000

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date:  _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:25-cv-00946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

<table>
<tr><td>League of United Latin American Citizens, Secure<br>Families Initiative, Arizona Students' Association</td><td>)<br>)<br>)<br>)</td></tr>
<tr><td><i>Plaintiff(s)</i></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td>Executive Office of the President, et al.</td><td>)<br>)<br>)</td></tr>
<tr><td><i>Defendant(s)</i></td><td>)<br>)</td></tr>
</table>

Civil Action No.   1:25-cv-00946

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   PETE HEGSETH, in his official capacity as United States Secretary of Defense,
1000 Defense Pentagon,
Washington, DC 20301

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____                    _____
                                                                                        *Signature of Clerk or Deputy Clerk*

Civil Action No.   1:25-cv-00946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*




My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ *Plaintiff(s)* v. Executive Office of the President, et al. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) Civil Action No.   1:25-cv-00946 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   THOMAS HICKS, in his official capacity as Commissioner and Vice-Chair of the United States Election Assistance Commission,
633 3rd Street NW, Suite 200,
Washington, DC 20001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date:  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:25-cv-00946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*


                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association | ) ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 25-946 |
| Executive Office of the President, et al. | ) ) |
| _____ | ) ) |
| *Defendant(s)* | ) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* BENJAMIN W. HOVLAND, in his official capacity as Commissioner of the United States Election Assistance Commission,
633 3rd Street NW, Suite 200,
Washington, DC 20001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____     _____
                                                              *Signature of Clerk or Deputy Clerk*

Civil Action No.  25-946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____        _____
                                                           *Server's signature*

                                      _____
                                                           *Printed name and title*


                                      _____
                                                           *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association<br><br>_____<br>*Plaintiff(s)*<br>v.<br>Executive Office of the President, et al.<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.  25-946

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  CHRISTY MCCORMICK, in her official capacity as Commissioner of the United States
Election Assistance Commission,
633 3rd Street NW, Suite 200,
Washington, DC 20001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date:  _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  25-946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association | ) ) ) ) | |
| _____ *Plaintiff(s)* | ) ) | |
| v. | ) ) | Civil Action No.  25-946 |
| Executive Office of the President, et al. | ) ) ) | |
| _____ *Defendant(s)* | ) ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  DONALD L. PALMER, in his official capacity as Commissioner and Chairman of the
United States Election Assistance Commission,
633 3rd Street NW, Suite 200,
Washington, DC 20001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____                    _____
                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  25-946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association | ) ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 25-946 |
| Executive Office of the President, et al. | ) ) ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   BRIANNA SCHLETZ, in her official capacity as Executive Director of the United States
Election Assistance Commission,
633 3rd Street NW, Suite 200,
Washington, DC 20001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date:  _____          _____

*Signature of Clerk or Deputy Clerk*

Civil Action No.  25-946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association | ) ) ) ) |
| _____<br>*Plaintiff(s)* | ) ) |
| v. | ) |
| Executive Office of the President, et al. | ) ) |
| _____<br>*Defendant(s)* | ) ) ) |

Civil Action No.  25-946

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  EXECUTIVE OFFICE OF THE PRESIDENT,
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

Civil Action No.  25-946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association | ) ) ) ) | |
| _____ Plaintiff(s) | ) ) | Civil Action No.  25-946 |
| v. | ) ) | |
| Executive Office of the President, et al. | ) ) ) | |
| _____ Defendant(s) | ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  U.S. Attorney
c/o Civil Process Clerk
U.S. Attorney's Office for the District of Columbia
555 4th St NW
Washington, DC 20530

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  25-946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| League of United Latin American Citizens, Secure Families Initiative, Arizona Students' Association _____ *Plaintiff(s)* v. Executive Office of the President, et al. _____ *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.  25-946

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  J. SCOTT WIEDMANN, in his official capacity as Director of the Federal Voting Assistance Program,
4000 Defense Pentagon,
Washington, DC 20301

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Danielle M. Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____        _____
                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  25-946

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: