**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; STATE OF NEVADA; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN, <br><br> *Plaintiffs,* <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, in her official capacity as Attorney General of the United States; UNITED STATES ELECTION ASSISTANCE COMMISSION; DONALD L. PALMER, in his official capacity as Chairman of the U.S. Election Assistance Commission; THOMAS HICKS, in his official capacity as Vice Chair of the U.S. Election Assistance Commission; CHRISTY McCORMICK and BENJAMIN W. HOVLAND, in their official capacities as Commissioners of the U.S. Election Assistance Commission; PETE HEGSETH, in his official capacity as Secretary of Defense, <br><br> *Defendants.* | No. 1:25-cv-10810-DJC |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER AND CONSOLIDATE, OR, IN THE
ALTERNATIVE, MOTION TO STAY**

## TABLE OF CONTENTS

**Page**

Introduction..................................................................................................................... 1

Background ..................................................................................................................... 2

    I.      This Litigation...................................................................................... 2

    II.    The DDC Cases.................................................................................... 5

Argument ....................................................................................................................... 6

    I.      This Case Should Not Be Transferred ................................................ 6

          A.     Plaintiff States' Choice of the Home Forum of One of Their Members Is Entitled to Strong Deference...................................... 7

          B.     Defendants Do Not Satisfy Their Burden of Proving That Relevant Factors Outweigh Plaintiff States' Choice of This District...................................................................................... 8

    II.    This Court Cannot Consolidate This Case With the DDC Cases ........... 12

    III.   A Stay Is Not Warranted Because It Would Substantially Harm Plaintiff States and Their Citizens ........................................................ 13

Conclusion ..................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Actifio, Inc. v. Delphix Corp.*
2015 WL 1243164 (D. Mass. Mar. 17, 2015)............................................................7, 12

*Astro-Med, Inc. v. Nihon Kohden Am., Inc.*
591 F.3d 1 (1st Cir. 2009)............................................................................................7, 9

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*
571 U.S. 49 (2013)............................................................................................................9

*Austin v. Unarco Indus., Inc.*
705 F.2d 1 (1st Cir. 1983)..............................................................................................15

*Bowen v. Elanes N.H. Holdings, LLC*
166 F. Supp. 3d 104 (D. Mass. 2015)............................................................................10

*Clinton v. Jones*
520 U.S. 681 (1997)........................................................................................................13

*Codex Corp. v. Milgo Elec. Corp.*
553 F.2d 735 (1st Cir. 1977)..........................................................................................12

*Continental Grain Co. v. The FBL-585*
364 U.S. 19 (1960)....................................................................................................11, 12

*Dress v. Capital One Bank (USA), N.A.*
368 F. Supp. 3d 178 (D. Mass. 2019)............................................................................12

*EEOC v. Tex. Roadhouse, Inc.*
2012 WL 5894910 (D. Mass. Nov. 9, 2012) ...................................................................9

*In re Volkswagen AG*
371 F.3d 201 (5th Cir. 2004) ........................................................................................10

*Jackson Nat. Life Ins. Co. v. Economou*
557 F. Supp. 2d 216 (D.N.H. 2008)...............................................................................10

*Landis v. N. Am. Co.*
299 U.S. 248 (1936)..................................................................................................13, 15

*League of United Latin Am. Citizens v. Exec. Office of the President*
--- F. Supp. 3d ---, 2025 WL 1187730 (D.D.C. Apr. 24, 2025)............................. *passim*

*MacNaughton v. Paul Revere Life Ins. Co.*
405 F. Supp. 3d 203 (D. Mass. 2019).............................................................................8

## TABLE OF AUTHORITIES
### (continued)

Page

*Mercier v. Sheraton Int'l, Inc.*
  935 F.2d 419 (1st Cir. 1991) ........................................................................................7

*Morphotrust USA, LLC v. Identrix, LLC*
  2016 WL 3512131 (D. Mass. June 21, 2016) ................................................................10

*New Life Homecare, Inc. v. Blue Cross of Ne. Pa.*
  2010 WL 2331031 (M.D. Pa. June 10, 2010) ................................................................12

*Optos, Inc. v. Topcon Med. Sys., Inc.*
  777 F. Supp. 2d 217 (D. Mass. 2011) ...........................................................................9

*Or. Egg Producers v. Andrew*
  458 F.2d 382 (9th Cir. 1972) .......................................................................................12

*SCVNGR, Inc. v. eCharge Licensing, LLC*
  2014 WL 4804738 (D. Mass. Sept. 25, 2014) ..............................................................10

*Silveus v. City of Brockton*
  2014 WL 6747088 (D. Mass. Nov. 26, 2014) ...............................................................13

*Stanley v. Am. Econ. Ins. Co.*
  2025 WL 509498 (D. Mass. Feb. 14, 2025) ...................................................................8

*United States ex rel. Ondis v. City of Woonsocket*
  480 F. Supp. 2d 434 (D. Mass. 2007) ..........................................................................10

*Upromise, Inc. v. Angus*
  2014 WL 212598 (D. Mass. Jan. 21, 2014) ...................................................................8

*Williams v. City of New York*
  2006 WL 399456 (S.D.N.Y. Feb. 21, 2006) ..................................................................12

*Zhu v. Countrywide Realty Co., Inc.*
  160 F. Supp. 2d 1210 (D. Kan. 2001) ..........................................................................13

**CONSTITUTIONAL PROVISIONS**

Mich. Const. Article 2
  § 4(1)(b) .....................................................................................................................4

**FEDERAL STATUTES**

2 U.S.C.
  § 7.............................................................................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page

3 U.S.C.
§ 1 .......................................................................................................................4

28 U.S.C.
§ 1391(b)(2) .......................................................................................................6
§ 1391(e)(1) ........................................................................................................6
§ 1404(a) ...................................................................................................*passim*

52 U.S.C.
§ 20503(b) ..........................................................................................................3
§ 20505(a)(1) ......................................................................................................4
§ 20506(a) .......................................................................................................3, 6
§ 20506(a)(2) ......................................................................................................3
§ 20508 ................................................................................................................2
§ 20901(b)(1)(B) ................................................................................................4

**STATE STATUTES**

Ariz. Rev. Stat.
§ 16-550 ..............................................................................................................4

Cal. Elec. Code
§ 3019(d) .............................................................................................................4
§ 3020(b) .............................................................................................................4

Colo. Rev. Stat.
§ 1-7.5-107.3 ......................................................................................................4

Haw. Rev. Stat.
§ 11-106 ..............................................................................................................4

Ill. Comp. Stat.
5/19-8, 5/18A-15 ...............................................................................................4

Mass. Gen. Laws Chapter 54
§ 93 .................................................................................................................4, 7

Md. Elec. Law
§ 11-302(c) .........................................................................................................4

Mich. Comp. Laws
§ 168.759a(18) ...................................................................................................4
§ 168.766a ..........................................................................................................4

iv

**TABLE OF AUTHORITIES**
(continued)

Page

N.J. Stat. Ann.
 § 19:63-17 ....................................................................................................4
 § 19:63-22(a) ...............................................................................................4

N.Y. Elec. Law
 § 8-412(1) ....................................................................................................4
 § 8-710(1) ....................................................................................................4
 § 9-209 .........................................................................................................4

Nev. Rev. Stat.
 § 293.269921(1)(b) ......................................................................................4
 § 293.269921(2) ...........................................................................................4
 § 293.269927 ...............................................................................................4

R.I. Gen. Laws
 § 17-20-16 ...................................................................................................4

## COURT RULES

Federal Rules of Civil Procedure
 Rule 42 .......................................................................................................12
 Rule 42(a) ..............................................................................................12, 13

## REGULATORY MATERIALS

410 R.I. Code R.
 § 20-00-23.12 ..............................................................................................4

Executive Order No. 14248, *Preserving and Protecting the Integrity of*
 *American Elections* (EO).  90 F.R. 14005 (Mar. 25, 2025) ................................... *passim*

Md. Code Regs.
 § 33.11.03.08(B)(4) ......................................................................................4

N.M. Admin. Code 1.10.12.16............................................................................4

## OTHER AUTHORITIES

*Federal Role in Voter Registration: The National Voter Registration Act of*
 *1993, and Subsequent Developments* (Feb. 7, 2025),
 https://www.congress.gov/crs-product/R45030..............................................3

**INTRODUCTION**

This case concerns President Trump's March 25, 2025 Executive Order No. 14248, *Preserving and Protecting the Integrity of American Elections* (EO). 90 F.R. 14005. The EO purports to effect deeply impactful and unlawful changes to the mechanics of elections administration across the Nation. As relevant to this lawsuit, the EO purports to improperly impose several mandates upon the States. It orders that certain forms for registering to vote in federal elections require an applicant to provide documentary proof of U.S. citizenship. *See* EO §§ 2(a), 3(d). This documentary proof of citizenship requirement would not only result in voter disenfranchisement, but it would also impose substantial costs on States to implement and administer. The EO also seeks to strongarm States into adhering to the President's incorrect interpretation of the federal Election Day statutes, and force States to abandon reasonable laws that allow ballots to be counted if cast by Election Day and received shortly thereafter. *See id.* §§ 7(a), 7(b). If States do not abandon their duly enacted laws, they face the threat of enforcement by the Attorney General, thereby casting doubt over the administration of federal elections. None of the EO provisions Plaintiff States have challenged are legal. The President cannot push through his highly detrimental policy preferences by Executive decree.

Unsurprisingly, then, private parties have challenged the EO, too. Three lawsuits challenging the EO were filed and consolidated in the United States District Court for the District of Columbia (DDC Cases). *See* Mem. of Law in Supp. of Defs.' Mot. to Transfer and Consolidate or, in the Alternative, Mot. to Stay (Mot. Mem.), Exs. 1–4, ECF Nos. 63-1–63-4. Based on these cases, Defendants seek to transfer this action to the District of Columbia and consolidate it with the DDC Cases, or alternatively, to stay this action pending resolution of the DDC Cases.

Transfer is inappropriate because there is a strong presumption in favor of Plaintiff States' choice of forum, particularly since this district is home to Plaintiff the Commonwealth of Massachusetts. Notably, the District of Columbia is not a party to this action. This Court's interest in ensuring that Massachusetts, its officials, and its citizens are not subject to illegal

Executive action impacting the fundamental right to vote weighs heavily in favor of denying transfer.  And as the court in the DDC Cases recognized in its preliminary injunction ruling, Plaintiff States have distinct interests and harms from the private plaintiffs in the DDC Cases because they are charged with implementing and administering the President's EO.  Indeed, federal elections in this country are conducted at the State and local level, and the President has no proper constitutional authority over them.  Mem. of Law in Supp. of Pls.' Mot. for a Prelim. Inj. (PI Mem.) at 1–2, ECF No. 76.  Balanced against this presumption, and given these differences, Defendants' arguments for transfer do not tip the scales.

Defendants' alternative request for a stay fares no better.  Plaintiff States are well positioned to obtain preliminary injunctions of EO provisions that the private party plaintiffs in the DDC Cases have not obtained or cannot obtain (i.e., Sections 3(d), 7(a), 7(b), and 2(d), as applied to state and local agencies).  These sections, if not enjoined, will harm Plaintiff States and their citizens.  Even as to Section 2(a) of the EO, which was recently preliminarily enjoined in the DDC Cases, it is imperative to Plaintiff States' distinct interests to continue to challenge that provision on their own timeline, rather than relying on litigation conducted by third parties.  Plaintiff States and their citizens thus risk severe prejudice if this action is stayed pending resolution of the DDC Cases.  Defendants, in contrast, fail to satisfy their burden of identifying *any* hardship if this case is not stayed, let alone hardship of a similar magnitude and scope.

## BACKGROUND

### I.    THIS LITIGATION

Plaintiff States challenge six provisions of the EO.  *See generally* Compl. for Declaratory and Injunctive Relief (Compl.) ¶ 49, ECF No. 1.  The six challenged provisions have direct and profound consequences for Plaintiff States.

1.    Section 2(a) commands the Election Assistance Commission (EAC) to "take appropriate action" within 30 days of the EO to (1) "require," in the national mail voter registration form described in 52 U.S.C. § 20508 (Federal Form), "documentary proof of United States citizenship," and (2) "require . . . a State or local official to record on the [Federal Form]

the type of document the applicant presented" to prove U.S. citizenship and certain identifying information for the document. The Federal Form is a requirement of the National Voter Registration Act (NVRA).[1] Not only would this change to the Federal Form impose significant burdens on Plaintiff States' voter applicants, but it would also impose significant time and monetary burdens on Plaintiff States. *See* PI Mem. at 20–24.

2.    Section 2(d) orders "[t]he head of each Federal voter registration executive department or agency [] under the National Voter Registration Act, 52 U.S.C. 20506(a)" to "assess citizenship prior to providing [the Federal Form] to enrollees of public assistance programs." This command appears to take effect immediately. It also appears to directly implicate Plaintiff States' designated state voter registration agencies. Plaintiff States are required to designate as voter registration agencies "all offices in the State that provide public assistance" and "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." 52 U.S.C. § 20506(a)(2).

3.    Section 3(d) directs the Secretary of Defense to "update the Federal Post Card Application" required by the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) "to require (i) documentary proof of United States citizenship . . . and (ii) proof of eligibility to vote in elections in the State in which the voter is attempting to vote." This command also appears to take effect immediately. Its implementation would burden military and overseas applicants attempting to register to vote with the Federal Post Card Application, and it would impose significant time and monetary burdens on Plaintiff States to implement and administer. *See* PI Mem. at 21–22.

---

[1] The NVRA applies to 44 states; six states are exempt from its requirements because they either did not have a voter registration system or allowed voter registration on Election Day when the NVRA was enacted. *See* 52 U.S.C. § 20503(b); *see also* Cong. Research Serv., *Federal Role in Voter Registration: The National Voter Registration Act of 1993 (NVRA) and Subsequent Developments* (Feb. 7, 2025), https://www.congress.gov/crs-product/R45030. All Plaintiff States except Wisconsin and Minnesota are subject to the NVRA.

4.      Section 4(a) orders the EAC to "take all appropriate action to cease providing Federal funds to States that do not comply with . . . the requirement in 52 U.S.C. 20505(a)(1) that States accept and use the [Federal Form], . . . including any requirement for documentary proof of United States citizenship adopted pursuant to" Section 2(a) of the EO.  The EAC's federal funding to Plaintiff States includes funds to "[i]mprov[e] the administration of elections for Federal office."  52 U.S.C. § 20901(b)(1)(B).  Loss of promised federal funds would directly harm Plaintiff States.

5.      Section 7(a) directs the Attorney General to "take all necessary action to enforce 2 U.S.C. 7 and 3 U.S.C. 1 against States that violate these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes" for federal offices. This provision conflicts with some Plaintiff States' laws allowing for ballots to be counted if cast by Election Day but received by elections officials shortly thereafter.  And it might also conflict with state laws that allow voters to "cure" timely submitted ballots to correct minor technical problems, such as a missing signature, shortly after Election Day.  Thirteen of the Plaintiff States currently have laws allowing for one or both.[2]  This provision appears to take effect immediately.  Its implementation would divert state resources, impose unrecoverable compliance costs, and injure Plaintiff States' efforts to ensure the integrity of their elections.  *See* PI Mem. at 24–28.

6.      Section 7(b) orders the EAC to "condition any available funding to a State" on the States' compliance with "a uniform and nondiscriminatory ballot receipt deadline of Election Day for all methods of voting," except for voting under UOCAVA.  This loss of federal funds would directly harm Plaintiff States.  PI Mem. at 28.

---

[2] *See* Ariz. Rev. Stat. § 16-550; Cal. Elec. Code §§ 3019(d), 3020(b); Colo. Rev. Stat. § 1-7.5-107.3; Haw. Rev. Stat. § 11-106; 10 Ill. Comp. Stat. 5/19-8, 5/18A-15; Mass. Gen. Laws ch. 54, § 93; Md. Elec. Law, § 11-302(c); Md. Code Regs. § 33.11.03.08(B)(4); Mich. Const. Art. 2, § 4(1)(b); Mich. Comp. Laws §§ 168.759a(18), 168.766a; Nev. Rev. Stat. §§ 293.269921(1)(b), (2), 293.269927; N.J. Stat. Ann. §§ 19:63-17, 19:63-22(a); N.M. Admin. Code 1.10.12.16; N.Y. Elec. Law §§ 8-412(1), 8-710(1), 9-209; R.I. Gen. Laws § 17-20-16; 410 R.I. Code R. § 20-00-23.12.

Plaintiff States challenge these provisions as ultra vires and/or in violation of the separation of powers. *See* Compl. ¶¶ 113–83. And on May 5, 2025, Plaintiff States filed their motion to preliminarily enjoin enforcement of Sections 2(a), 2(d), 3(d), 7(a), and 7(b) because those provisions threaten irreparable harm to Plaintiff States. *See* Pls.' Mot. for a Prelim. Inj. (PI Mot.), ECF No. 75; PI Mem. at 20–28.

## II.     THE DDC CASES

No Plaintiff State, or indeed any State or local government or administrator of elections, is a party to the DDC Cases. Those cases also name 20 defendants not named in this litigation. *Compare* Compl. ¶¶ 38–44 *with* Mot. Mem. Exs. 1–3.[3] And the DDC Cases challenge five provisions of the EO not challenged in this action: Sections 2(b), 3(a), 4(b), 4(c), and 4(d). *Compare* Compl. ¶ 49 *with* Mot. Mem. Ex. 2 at 68–69. As to the provisions that are challenged both here and in the DDC Cases, the parties have advanced different theories for why the provisions are illegal.[4]

The Plaintiff States and private party plaintiffs in the DDC Cases are differently situated. In particular, because no plaintiff in the DDC Cases is a State, those private party plaintiffs may

---

[3] The additional defendants are the Executive Office of the President, Brianna Schletz, in her official capacity as Executive Director of the EAC, the U.S. Department of Justice, the U.S. Department of Defense, the Federal Voting Assistance Program, J. Scott Wiedmann, in his official capacity as Director of the Federal Voting Assistance Program, U.S. DOGE Service, U.S. Department of State, U.S. Department of Homeland Security, U.S. Department of Veterans Affairs, U.S. Small Business Administration, U.S. Department of the Interior, Social Security Administration, Amy Gleason, in her official capacity as Acting DOGE Administrator, Marco Rubio, in his official capacity as Secretary of State, Kristi Noem, in her official capacity as Secretary of Homeland Security, Douglas A. Collins, in his official capacity as Secretary of Veterans Affairs, Kelly Loeffler, in her official capacity as Administrator of the U.S. Small Business Administration, Doug Burgum, in his official capacity as Secretary of the Interior, and Leland Dudek, in his official capacity as Acting Commissioner of Social Security Administration. Mot. Mem. Exs. 1–3.

[4] For instance, Plaintiff States claim that Section 2(d) unlawfully commandeers State election administrative personnel and processes. Compl. ¶¶ 92, 176–83. The DDC Cases plaintiffs have not advanced that claim.

face unique standing arguments that do not apply to Plaintiff States and that make it unlikely that the DDC Cases will timely address all of Plaintiff States' urgent concerns.

This has already become apparent. The plaintiffs in the DDC Cases filed motions to preliminarily enjoin EO Sections 2(a), 2(b), 2(d), 7(a), and 7(b), which the court granted in part and denied in part. *See League of United Latin Am. Citizens v. Exec. Office of the President*, --- F. Supp. 3d ---, 2025 WL 1187730, at *1 (D.D.C. Apr. 24, 2025) ("*LULAC*"). The *LULAC* court engaged in a lengthy analysis of the plaintiffs' standing, ultimately denying injunctive relief for Sections 2(b), 7(a), and 7(b). *See id.*, at *31–35, *46–48, *62. In denying relief for Section 7(a), the court found the moving plaintiffs failed to establish a likelihood of success on the merits because the States, and not the moving parties, would be "the most natural parties to seek an injunction." *Id.* at *52. The court also denied relief on Section 7(b) because the moving plaintiffs failed to establish standing and indicated that the States are the proper parties to bring the challenge. *See id.* at *1, *56. Further, in enjoining implementation of Section 2(d), the court only enjoined specific federal defendant agencies. *Id.* at *63. But Section 2(d)'s ambiguous wording could have much broader application than just federal agencies. It could be read to apply to all state offices providing either public assistance or state-funded programs providing services to persons with disabilities. EO § 2(d); 52 U.S.C. § 20506(a).

## ARGUMENT

### I.    THIS CASE SHOULD NOT BE TRANSFERRED

There is no dispute that venue is proper in the District of Massachusetts: this is a "civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity"; the Commonwealth of Massachusetts is a plaintiff; a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in the District of Massachusetts; and no real property is involved in this action. *See* 28 U.S.C. §§ 1391(b)(2), (e)(1). Nevertheless, Defendants seek to transfer this case to the District of Columbia pursuant to 28 U.S.C. § 1404(a).

Under that statute, a district court may only transfer a civil action to another district "[f]or the convenience of parties and witnesses, in the interest of justice." *Id*. § 1404(a). But transfer is discretionary and requires an "'individualized, case-by-case consideration of convenience and fairness.'" *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (citation omitted). Defendants bear the burden of proof on their motion to transfer. *Id.* at 13. They have failed to meet their burden.

### A.    Plaintiff States' Choice of the Home Forum of One of Their Members Is Entitled to Strong Deference

There is a "strong presumption in favor of the plaintiff's choice of forum," *Astro-Med, Inc.*, 591 F.3d at 13 (citation omitted), and a "plaintiff's forum choice 'should rarely be disturbed,'" *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) (citation omitted). "This presumption is given even more weight when [the] plaintiff selects its home forum . . . ." *Actifio, Inc. v. Delphix Corp.*, 2015 WL 1243164, at *6 (D. Mass. Mar. 17, 2015) (Casper, J.). The Commonwealth of Massachusetts is a plaintiff in this litigation, and the choice of its home forum weighs strongly against transfer.

The EO at issue here, if not enjoined, would also have direct and significant effects on Massachusetts and its laws. The challenged provisions include (1) requirements that would force Massachusetts to accept voter registration forms requiring documentary proof of U.S. citizenship and compel state and local officials to record information about the documentary proof, EO § 2(a); and (2) a requirement designed to force Massachusetts to change its law permitting the counting of vote by mail ballots received shortly after Election Day, or face enforcement by the U.S. Attorney General, *id.* § 7(a); *see* Mass. Gen. Laws ch. 54, § 93. These requirements are imposed on pain of Massachusetts losing federal funding used for administering elections, EO §§ 4(a), 7(b), and would require Massachusetts to divert its personnel resources and incur substantial expense, *see* PI Mem. at 20–26. These requirements would also heighten the risk of disenfranchisement: they would directly impact both Massachusetts citizens who would have to provide documentary proof of citizenship to register to vote, as well as Massachusetts voters

whose vote by mail ballots would be rejected if received shortly after Election Day.  PI Mem. at 30.

This Court also has greater familiarity with Massachusetts law, including its law on ballot receipt deadlines.  *See Stanley v. Am. Econ. Ins. Co.*, 2025 WL 509498, at *4 (D. Mass. Feb. 14, 2025) (Casper, J.) (explaining that district court can weigh "the familiarity of the court with applicable laws").  In addition, the Court has an interest in ensuring that Massachusetts, its officials, and its citizens are not unlawfully burdened by the EO.  *See Upromise, Inc. v. Angus*, 2014 WL 212598, at *15 (D. Mass. Jan. 21, 2014) (Casper, J.) (noting that the District of Massachusetts had a "strong interest" in the action "given that two of the Plaintiffs have principal places of business here" and identifying interest in action based on "the effects of the alleged breach and tortious interference" being felt in Massachusetts); *see also MacNaughton v. Paul Revere Life Ins. Co.*, 405 F. Supp. 3d 203, 207 (D. Mass. 2019) (observing that "states have an interest in ensuring that their corporations comply with governing law" (citing *Ovist v. Unum Life Ins. Co. of Am.*, 2018 WL 3853739, at *6 (D. Mass. May 2, 2018)).

While the other Plaintiff States and their constituents are also negatively impacted by the EO and could have sued in their States, the District of Columbia is not a party to this action.  The Plaintiff States' choice of a forum that is home to one of them weighs heavily in favor of denying Defendants' motion.

**B.    Defendants Do Not Satisfy Their Burden of Proving That Relevant Factors Outweigh Plaintiff States' Choice of This District**

Defendants have not overcome the "strong presumption" in favor of Plaintiff States' choice of this district.  They have failed to carry their burden of establishing that other relevant factors tip the scales in favor of transfer, especially considering the heavy weight on the side of keeping this litigation here.  In deciding whether to exercise discretion to transfer a case pursuant to § 1404(a), factors courts consider include "(1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) cost of obtaining willing

witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively." *Optos, Inc. v. Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 237 (D. Mass. 2011) (Casper, J.); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 & n.6 (2013). Defendants present a smattering of these factors, along with legally irrelevant reasons, in their pending motion, but none are sufficient to carry their burden.

*First*, Defendants argue that "all government witnesses" and "all government Defendants are in the District of Columbia." Mot. Mem. at 7. Though the convenience of witnesses is an important factor, *Optos, Inc.*, 777 F. Supp. 2d at 237, Defendants do not satisfy their burden of proof to show that the District of Columbia is a more convenient district for this action, *see Astro-Med, Inc.*, 591 F.3d at 13. "A party seeking transfer must specify the witnesses to be called and must make a 'general statement of what their testimony will entail.'" *EEOC v. Tex. Roadhouse, Inc.*, 2012 WL 5894910, at *2 (D. Mass. Nov. 9, 2012) (Casper, J.) (citation omitted). No such showing has been made. *See id.* (denying motion to transfer where the defendant did not make "any showing that the cost of bringing its witnesses to Massachusetts will be unduly burdensome, nor that any of its witnesses are unwilling or unable to appear"). In fact, Defendants argued in the DDC Cases that "[i]n the context of *ultra vires* and constitutional separation of powers claims, ***there are no questions of fact***, because whether or not a statute or the Constitution grants [the Executive Branch] the power to act in a certain way is a pure question of law." *LULAC*, 2025 WL 1187730, at *28 (quoting Defs.' Opp'n, ECF No. 84, at 23) (emphasis added). The same is true of the claims in this action. *See* Compl. ¶¶ 113–83.

If anything, this factor weighs strongly in Plaintiff States' favor. The District of Massachusetts is not only maximally convenient for the Commonwealth of Massachusetts, but four more New England Plaintiff States: Connecticut, Maine, Rhode Island, and Vermont. Each of those States is driving distance to this Court, and some are only an hour or two drive away.

*Second*, Defendants rattle off a barebones list of either irrelevant or unpersuasive considerations. *See* Mot. Mem. at 8. The location of lead defense counsel is irrelevant.[5] *See, e.g.*, *United States ex rel. Ondis v. City of Woonsocket*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." (quoting *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004))); *Bowen v. Elanes N.H. Holdings, LLC*, 166 F. Supp. 3d 104, 108 (D. Mass. 2015) ("[C]ourts do not assess the convenience of counsel when determining whether to transfer under § 1404(a).").

Further, that some documentary evidence and other sources of proof may be located in the District of Columbia is "not compelling" in this digital age. *See Morphotrust USA, LLC v. Identrix, LLC*, 2016 WL 3512131, at *10 (D. Mass. June 21, 2016) (Casper, J.). Nor do Defendants so much as identify any documentary evidence or sources of proof that would be relevant here, and thus fail to carry their burden of proof. *See SCVNGR, Inc. v. eCharge Licensing, LLC*, 2014 WL 4804738, at *8 (D. Mass. Sept. 25, 2014) (Casper, J.) ("eCharge has made no showing as to the remaining of these factors. As it bears the burden of persuasion on this motion, the Court concludes that eCharge has not met its burden as to any of these factors."). So, too, for Defendants' argument about whether witnesses can be compelled in the District of Columbia; Defendants do not identify any witnesses that would need to testify, let alone be compelled to do so. And Defendants fail to explain why the issuance of the EO in the District of Columbia bears on "the convenience of parties and witnesses" or "the interest of justice," particularly since the harmful effects of the EO are diffuse across Massachusetts and the other Plaintiff States. 28 U.S.C. § 1404(a).

---

[5] Defendants cite one District of New Hampshire case in support of the relevancy of the location of counsel. *See* Mot. Mem. at 7 (citing *Jackson Nat. Life Ins. Co. v. Economou*, 557 F. Supp. 2d 216, 220 (D.N.H. 2008)). That case goes against the weight of authority holding that the location of counsel is irrelevant. In any event, the district court there concluded that "[t]he location of the parties' respective counsel ha[d] little bearing on" the transfer analysis. *Jackson Nat. Life Ins. Co.*, 557 F. Supp. 2d at 222.

*Third*, Defendants argue that the pendency of the DDC Cases favors transfer.  Mot. Mem. at 8–9.  As an initial matter, Defendants cite *Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1960), in support.  But in that case, the underlying litigation involved "the same parties" and concerned damage stemming from "the same incident."  *Id.* at 21.  "[T]he substance of what had to be done to adjudicate the rights of the parties was not different at all," and "[t]he witnesses were identical."  *Id.* at 26.  That is not the case here.

This litigation and the DDC Cases do not include any overlap in the plaintiffs or with respect to 20 different defendants.  Further, the DDC Cases challenge an additional five provisions of the EO not challenged here.  As to the provisions that are challenged both here and in the DDC Cases, the parties have advanced different theories for why the provisions are illegal.  Plaintiff States also have distinct interests from the private party plaintiffs because of their unique role in administering elections.  *Compare LULAC*, 2025 WL 1187730, at *41–42, *49 *with* PI Mem. at 21–28.  These distinct interests give rise to distinct types of harm.

The EO orders *Plaintiff States* to accept and record documentary proof of citizenship.  It further orders *Plaintiff States* to stop counting ballots received after Election Day, despite state laws mandating their counting, on pain of enforcement by the Attorney General and loss of election-related funding.  These requirements invade Plaintiff States' sovereign interests, saddle them with administrative burdens and financial harm, and threaten to undermine one of Plaintiff States' most important functions—administering elections that are the underpinning of our federal democracy.

Indeed, the *LULAC* court expressed skepticism that the private party plaintiffs have standing to challenge the Section 7(a) and 7(b) provisions at this time.  The defendants in the DDC Cases also argued that the private party plaintiffs lacked standing to challenge Sections 2(a) and 2(d).  While the issue of whether the private party plaintiffs are the proper parties to bring their claims is likely to continue being litigated in the DDC Cases, the *LULAC* court has already indicated that the court's standing concerns do not apply to the States.  *See LULAC*, 2025 WL 1187730, at *1, *52, *56.  This means that "what ha[s] to be done to adjudicate the rights of

the parties" is materially different. *See Cont'l Grain Co.*, 364 U.S. at 26. It also means that the public interest weighs heavily in favor of hearing this case in the home jurisdiction of a Plaintiff State with a ballot receipt law that conflicts with Section 7(a). *See Dress v. Capital One Bank (USA), N.A.*, 368 F. Supp. 3d 178, 183 (D. Mass. 2019) ("The court must also consider public interest factors such as the interest of a state to resolve litigation related to its laws[.]").

Because there is only some overlap between the legal claims and "not mirror identity between the matters at issue," and particularly given the important differences between Plaintiff States and the private parties in the DDC Cases, the mere pendency of the DDC Cases alone "is not sufficient to warrant transfer." *Actifio, Inc.*, 2015 WL 1243164, at *9; *see also Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 739 (1st Cir. 1977) (explaining that while related litigation in another forum "is a proper factor to be considered in resolving choice of venue questions," "we have found no case where it has carried the day against factors pointing in the other direction"). As described above, there are strong factors weighing against transfer, and no other factors weighing in favor of transfer. Accordingly, the Court should deny the transfer request.

## II.    THIS COURT CANNOT CONSOLIDATE THIS CASE WITH THE DDC CASES

Defendants make the puzzling request that this Court consolidate this action with the DDC Cases pursuant to Federal Rule of Civil Procedure 42(a). Mot. Mem. at 9–10. They ignore, however, the well-established interpretation of Rule 42(a) that only allows a district court to consolidate actions if they are "before *the* court, not *any* court." *New Life Homecare, Inc. v. Blue Cross of Ne. Pa.*, 2010 WL 2331031, at *1 (M.D. Pa. June 10, 2010); *see also* Fed. R. Civ. P. 42(a) (allowing consolidation of certain actions if they are "*before the court*" (emphasis added)); *Or. Egg Producers v. Andrew*, 458 F.2d 382, 383 (9th Cir. 1972) ("Rule 42 applies to cases that are properly before the same court. Because this case is not properly before the district court in Washington, Rule 42 cannot be invoked."); *Williams v. City of New York*, 2006 WL 399456, at *1 n.1 (S.D.N.Y. Feb. 21, 2006) ("In this case, only one action is pending in the Southern District of New York-hence it is not possible for the Court to consolidate the Southern District action with any other action."); *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1227

12

(D. Kan. 2001) ("Under Rule 42(a), plaintiff may consolidate all actions pending before a single court which involve a common question of law or fact."). The DDC Cases are not before this Court, and the Court therefore cannot consolidate the actions. *See Silveus v. City of Brockton*, 2014 WL 6747088, at *1 (D. Mass. Nov. 26, 2014) (denying motion to consolidate state and federal cases because the state court action was "not properly 'before' this Court").

Defendants' motion supports this commonsense conclusion. As they explain, an opposing party must be afforded the opportunity to object to consolidation based on "demonstrable prejudice." Mot. Mem. at 9 (quoting *Seguro de Servicio de Salud de P.R. v. McAuto Sys. Grp. Inc.*, 878 F.2d 5, 8 (1st Cir. 1989)). But the private party plaintiffs in the DDC Cases are afforded no opportunity to make this showing here. Thus, this request should be denied.

## III.    A STAY IS NOT WARRANTED BECAUSE IT WOULD SUBSTANTIALLY HARM PLAINTIFF STATES AND THEIR CITIZENS

Defendants alternatively request a stay of this litigation "pending resolution of the DDC cases."[6] Mot. Mem. at 10–12. As the proponents of the stay, they "bear[] the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). And to meet their burden, they "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [they] pray[] will work damage to some one else." *Landis*, 299 U.S. at 255. Defendants have failed to satisfy their burden. The only purported basis for Defendants' request for a stay is that the DDC Cases might narrow the issues in this litigation. *See* Mot. Mem. at 10–12. Not only does this ignore the independent claims and harm alleged by the Plaintiff States, but it also says nothing about hardship or inequity. By contrast, Plaintiff States and their citizens will face significant damage if this litigation is stayed.

To start, the court in the DDC Cases has already indicated that the States are the proper parties to challenge EO Sections 7(a) and 7(b) and denied the private parties' request for

---

[6] It is unclear what "resolution of the DDC cases" means. If it includes appeals, such a stay would exceed "the limits of a fair discretion" and that would be an independent reason to deny Defendants' request. *See Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936).

preliminary injunctive relief on those provisions. *LULAC*, 2025 WL 1187730, at *1, *52, *56. Plaintiff States have moved to preliminarily enjoin enforcement of those provisions because implementation would divert state resources, impose unrecoverable compliance costs, potentially result in loss of federal funding, and injure Plaintiff States' efforts to ensure the integrity of their elections by avoiding confusing and disenfranchising voters. *See* PI Mem. at 24–28. If this action is stayed, those provisions would remain in force, causing immediate harm to Plaintiff States, and to Plaintiff States' voters who may be disenfranchised if their ballots are rejected despite being timely cast under state law.

Next, Plaintiff States have sought to preliminarily enjoin Section 3(d), concerning the UOCAVA Federal Post Card Application. PI Mem. at 12–13. The private plaintiffs in the DDC Cases have not, however. *LULAC*, 2025 WL 1187730, at *1. As Plaintiff States have explained, changes to voter registration forms that the EO would force Plaintiff States to accept will impose significant costs on them, PI Mem. at 20–24, and will burden military and overseas applicants attempting to register to vote with the Federal Post Card Application. Because the private plaintiffs in the DDC Cases have not sought to preliminarily enjoin this provision, there is a real threat that it will be implemented before the DDC Cases are resolved, to Plaintiff States' and their military and overseas citizens' detriment.

Further, Plaintiff States seek to enjoin Section 2(d) because it may apply to State agencies, not just federal agencies. PI Mem. at 13–14. While the court in the DDC Cases has preliminarily enjoined implementation of Section 2(d), it has only done so with respect to specified federal agencies. *See LULAC*, 2025 WL 1187730, at *63. Section 2(d) may direct State agencies to "assess citizenship" prior to providing the Federal Form to all recipients of "public assistance" and appears to take effect immediately. To implement this edict, Plaintiff States will be required to divert resources to guide implementation in State agencies administering public assistance before the DDC Cases are resolved. PI Mem. at 23. This implementation may also disenfranchise would-be voter applicants who are unable to adequately

14

demonstrate citizenship prior to receiving a Federal Form from these State voter registration agencies.

Finally, although the District of Columbia has preliminarily enjoined Section 2(a), *LULAC*, 2025 WL 1187730, at *63, it remains possible that the injunction could be dissolved, stayed, or reversed before the DDC Cases are resolved, particularly as standing is hotly contested in the DDC Cases, *see id.* at *31–35. Implementation of Section 2(a) would impose significant costs on Plaintiff States while also risking disenfranchisement. PI Mem. at 23. Additionally, because their interests are distinct from the private party plaintiffs in DDC, Plaintiff States have a vital interest in continuing to challenge that provision in their own right, rather than relying on litigation conducted by third parties who are not similarly situated. Plaintiff States and their citizens would be injured if Plaintiff States are not able to independently obtain an injunction of Section 2(a).

A stay is improper when a delay would impose hardships, even if a defendant argues there are "interests of judicial economy in avoiding relitigation of the issues." *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983). Not only would Plaintiff States face significant hardships if this action were stayed, but "the public welfare" would also be harmed. *Cf. Landis*, 299 U.S. at 256 (An "individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences *if the public welfare or convenience will thereby be promoted*." (emphasis added)). The challenged provisions of the EO impose immense administrative burdens and risk significant disenfranchisement of Plaintiff States' citizens, and thus harm the public welfare. At bottom, this case does not present the "rare circumstances" where "a litigant in one cause [must] be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion.

Dated: May 7, 2025                                   Respectfully Submitted,


**ROB BONTA**
Attorney General of California

By: */s/ Malcolm A. Brudigam*
 *Malcolm A. Brudigam
      Deputy Attorney General
 *Thomas S. Patterson
      Senior Assistant Attorney General
 *John D. Echeverria
      Supervising Deputy Attorney General
 *Anne P. Bellows
 *Michael S. Cohen
 *Kevin L. Quade
 *Lisa C. Ehrlich
 Nicholas R. Green (BBO No. 698510)
      Deputy Attorneys General
Office of the California Attorney General
1300 I Street, 16th Floor
Sacramento, CA 95814
(916) 210-7873
Malcolm.Brudigam@doj.ca.gov
 *Counsel for the State of California*
 **Admitted pro hac vice*


(*additional counsel on following pages*)

**AARON D. FORD**
Attorney General of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
    Solicitor General
Craig Newby*
    First Assistant Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-9246
hstern@ag.nv.gov
*Counsel for the State of Nevada*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ M. Patrick Moore*
M. Patrick Moore (BBO No. 670323)
    First Assistant Attorney General
Anne Sterman (BBO No. 650426)
    Chief, Government Bureau
Phoebe Fischer-Groban (BBO No. 687068)
    Deputy Chief, Constitutional & Administrative Law Division
Chris Pappavaselio (BBO No. 713519)
    Assistant Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2495
Pat.Moore@mass.gov
*Counsel for the Commonwealth of Massachusetts*

**KRISTIN K. MAYES**
Attorney General of the State of Arizona

By: */s/ Joshua M. Whitaker*
Joshua M. Whitaker*
Karen J. Hartman-Tellez*
Kara Karlson*
    Assistant Attorneys General
2005 North Central Ave.
Phoenix, AZ 85004
(602) 542-7738
Joshua.Whitaker@azag.gov
*Counsel for the State of Arizona*

17

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
    Solicitor General
Peter Baumann*
    Senior Assistant Attorney General
1300 Broadway
Denver, Colorado 80203
(720) 508-6400
shannon.stevenson@coag.gov
*Counsel for the State of Colorado*

**WILLIAM TONG**
Attorney General for the State of Connecticut

*/s/  Maura Murphy*
Maura Murphy*
    Deputy Associate Attorney General
Hartford, CT 06106
(860) 808-5020
Maura.Murphy@ct.gov
*Counsel for the State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: */s/ Maryanne T. Donaghy*
Maryanne T. Donaghy*
    Deputy Attorney General
Vanessa L. Kassab
    Deputy Attorney General
Ian R. Liston
    Director of Impact Litigation
820 N. French Street
Wilmington, DE 19801
(302) 683-8843
maryanne.donaghy@delaware.gov
*Counsel for the State of Delaware*

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ David D. Day*
David D. Day*
    Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
    Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
 david.d.day@hawaii.gov
*Counsel for the State of Hawaiʻi*


**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
    Deputy Solicitor General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
*Counsel for the State of Illinois*


**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jonathan R. Bolton*
Jonathan R. Bolton*
    Assistant Attorney General
6 State House Station
Augusta, ME  04333-0006
(207) 626-8800
Jonathan.Bolton@maine.gov
*Counsel for the State of Maine*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
    Senior Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-6424
akirschner@oag.state.md.us
*Counsel for the State of Maryland*


**DANA NESSEL**
Attorney General of Michigan

By: */s/ Erik Grill*
Erik Grill*
Danny Haidar*
Heather S. Meingast*
    Assistant Attorneys General
525 W. Ottawa, 5th Floor
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
grille@michigan.gov
*Counsel for the People of the State of Michigan*


**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Peter J. Farrell*
Peter J. Farrell*
    Deputy Solicitor General
Angela Behrens*
    Assistant Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 757-1424
Peter.Farrell@ag.state.mn.us
*Counsel for the State of Minnesota*

**MATTHEW J. PLATKIN**
Attorney General Of New Jersey

By: */s/ Meghan K. Musso*
Meghan K. Musso*
Jonathan Mangel*
    Deputy Attorneys General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5276
meghan.musso@law.njoag.gov
*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ James W. Grayson*
James W. Grayson*
    Chief Deputy Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
jgrayson@nmdoj.gov
*Counsel for the State of New Mexico*

**LETITIA JAMES**
Attorney General of New York

By: */s/ Colleen K. Faherty*
Colleen K. Faherty*
    Special Trial Counsel
28 Liberty Street
New York, NY 10005
(212) 416-6046
Colleen.Faherty@ag.ny.gov
*Counsel for the State of New York*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ James J. Arguin*
James J. Arguin (BBO No. 557350)
    Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400, Ext. 2078
jarguin@riag.ri.gov
*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
    Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov
*Counsel for the State of Vermont*

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s/ Charlotte Gibson*
Charlotte Gibson*
    Assistant Attorney General
P.O. Box 7857
Madison, WI  53707-7857
(608) 287-4713
GibsonCJ@DOJ.STATE.WI.US
*Counsel for the State of Wisconsin*

*\*Admitted pro hac vice or pro hac vice applications forthcoming*

## CERTIFICATE OF SERVICE

      I, Malcolm A. Brudigam, hereby certify that I served a true copy of the above document upon all counsel of record via this Court's electronic filing system.

Dated:  May 7, 2025                                    */s/ Malcolm A. Brudigam*
                                                       Malcolm A. Brudigam
                                                       Deputy Attorney General
                                                       *Counsel for the State of California*