# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

STATE OF CALIFORNIA, *et al.*,

                Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

                Defendants.

Case No. 1:25-cv-10810-DJC

---

## [PROPOSED] BRIEF OF *AMICUS CURIAE* REPUBLICAN PARTY OF ARIZONA

Thomas Basile (BBO #675427)
Kory Langhofer (*pro hac vice* application pending)
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
(602) 382-4078
tom@statecraftlaw.com
kory@statecraftlaw.com

*Attorneys for Amicus Curiae Republican Party of Arizona*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................... v

INTRODUCTION .............................................................................................................. 1

INTEREST OF THE *AMICUS CURIAE* ......................................................................... 2

ARGUMENT ...................................................................................................................... 3

    I.   The NVRA Empowers the EAC to Modify the Federal Form to Add a Documentary Proof of Citizenship Requirement ..................................................................... 3

        A.   Overview of the NVRA's Mail Registration Form Provisions....................................... 4

        B.   Courts Have Affirmed That NVRA Section 9(b) Permits the EAC and States to Incorporate Proof-of-Citizenship Mandates into Voter Registration Forms................ 5

            1.   The Supreme Court Expressly Recognized Arizona's (and the EAC's) Authority to Adopt Proof of Citizenship Requirements ................................................. 5

            2.   The Tenth and D.C. Circuits Have Reaffirmed EAC's Statutory Authority to Require Documentary Proof of Citizenship.......................................................... 7

            3.   The Supreme Court Has Again Signaled Its Agreement That NVRA Section 9(b) Authorizes Proof of Citizenship Requirements............................................ 8

        C.   The Court Need Not and Should Not Preemptively Ban the EAC From Considering and Adopting a Documentary Proof of Citizenship Requirement ............................. 10

    II.   Executive Order Section 2(d) Implements and Is Consistent with Congress' Express Objective of Limiting Voter Registration to Only U.S. Citizens..................................... 11

CONCLUSION.................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Am. Ass'n. of People with Disabilities v. Herrera*,
   580 F. Supp. 2d 1195 (D.N.M. 2008) ..................................................................... 10

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
   570 U.S. 1 (2013) .................................................................................................. passim

*Ass'n. of Cmty. Orgs. for Reform Now v. Miller*,
   129 F.3d 833 (6th Cir. 1997) .................................................................................. 13

*Bell v. Marinko*,
   367 F.3d 588 (6th Cir. 2004) .................................................................................. 13

*CASA de Maryland, Inc. v. Trump*,
   971 F.3d 220 (4th Cir. 2020) .................................................................................. 11

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
   172 F.3d 104 (1st Cir. 1999) .................................................................................... 2

*Gonzales v. Arizona*,
   485 F.3d 1041 (9th Cir. 2007) ............................................................................ 6, 10

*Kobach v. United States Election Assistance Commission*,
   772 F.3d 1183 (10th Cir. 2014) ........................................................................... 7, 10

*League of Women Voters of Fla. v. Browning*,
   863 F. Supp. 2d 1155 (N.D. Fla. 2012) .................................................................. 10

*League of Women Voters of the United States v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ............................................................................ 7, 8, 10

*McCoy v. Mass. Institute of Tech.*,
   950 F.3d 13 (1st Cir. 1991) ..................................................................................... 7

*Mi Familia Vota v. Fontes*,
   111 F.4th 976 (9th Cir. Aug. 1, 2024) ..................................................................... 9

*Mi Familia Vota v. Fontes*
   129 F.4th at 691 (9th Cir. 2025) .......................................................................... 9, 11

*Mi Familia Vota v. Fontes*,
   2024 WL 3629418 (9th Cir. Jul. 18, 2024) .............................................................. 9

*Mi Familia Vota v. Fontes*,
   691 F. Supp. 3d 1077 (D. Ariz. 2023) ............................................................... 9

*N.C. Green Party v. N.C. State Bd. of Elections*,
   619 F. Supp. 3d 547 (E.D.N.C. 2022) ............................................................... 3

*Nat'l. Pharmacies, Inc. v. Feliciano-de-Melecio*,
   221 F.3d 235 (1st Cir. 2000) ........................................................................... 12

*Nken v. Holder*,
   556 U.S. 418 (2009) .......................................................................................... 9

*Pub. Interest Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024) ............................................................................... 3

*Republican Nat'l Comm. v. Mi Familia Vota*,
   145 S. Ct. 108 (Mem.) (2024) ...................................................................... 9, 11

*Seila Law LLC v. Consumer Fin. Protection Bureau*,
   591 U.S. 197 (2020) ........................................................................................ 12

*Shays v. Fed. Election Comm'n.*,
   414 F.3d 76 (D.C. Cir. 2005) ........................................................................... 2

*U.S. Term Limits, Inc. v. Thornton*,
   514 U.S. 779 (1995) ........................................................................................ 12

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ........................................................................................ 11

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
   576 U.S. 1 (2015) ............................................................................................ 11

**Statutes**

18 U.S.C. § 611 .................................................................................................... 13

18 U.S.C. § 911 .................................................................................................... 14

18 U.S.C. § 1015(f) .............................................................................................. 13

2022 Ariz. Laws ch. 99, § 4 ................................................................................... 8

52 U.S.C. § 20501 .................................................................................... 1, 4, 12, 13

52 U.S.C. § 20505(a)(1) ........................................................................................... 4

52 U.S.C. § 20506(a)(6)(A) .................................................................................... 13

52 U.S.C. § 20508 ......................................................................................... passim

52 U.S.C. § 20511(a)(2) ........................................................................................ 14

Ariz. Rev. Stat. § 16-121.01(C) ......................................................................... 8, 9

Ariz. Rev. Stat. § 16-166(F) ................................................................................... 5

Pub. L. 103-31, 107 Stat. 77 .................................................................................. 4

## Other Authorities

Ariz. Atty. Gen. Op. I13-011,
   2013 WL 5676943 (Oct. 7, 2013) ........................................................................ 8

Exec. Order No. 14248, *Preserving and Protecting the Integrity of American Elections*,
   90 Fed. Reg. 14005 (Mar. 25, 2025) ............................................................ passim

S. Rep. 103-6 (1993) ............................................................................................ 13

## Rules

F.R.A.P. 29(a)(4)(E) .............................................................................................. 3

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, the Republican Party of Arizona, LLC states that it is an Arizona limited liability company, it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

The Republican Party of Arizona ("RPAZ") submits this brief as *amicus curiae* to underscore two discrete points. First, irrespective of whether or to what extent the President can prompt the Election Assistance Commission ("EAC") to act, the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.* ("NVRA"), certainly ***permits*** the EAC to require documentary proof of citizenship as a prerequisite to registering to vote in federal elections. Second, the President's directive that federal voter registration agencies "shall assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs" is consistent with and implements Congress' express objective of confining the franchise to United States citizens and prohibiting the registration of non-citizens.

### INTRODUCTION

On March 25, 2025, the President issued an executive order providing that, *inter alia*, the EAC must within 30 days "take appropriate action to require, in its national mail voter registration form issued under 52 U.S.C. 20508 . . . documentary proof of United States citizenship, consistent with 52 U.S.C. 20508(b)(3)." Exec. Order No. 14248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14005 (Mar. 25, 2025) (hereafter, the "Executive Order"). The Executive Order accordingly engendered the question—presented by the Plaintiffs here—of whether and in what manner the President may initiate or mandate EAC action.[1] The Plaintiffs (excepting Arizona), however, then take it a step further, and seek to bootstrap a ruling concerning the scope of the President's power into a preemptive judicial abrogation of the EAC's own preexisting statutory authority. *See* Doc. 76 at 10-11. The Court should resist that invitation. Even assuming *arguendo* that the President cannot order the EAC to promulgate a documentary proof

---

[1] While the RPAZ believes there are sound arguments in support of the Defendants' conception of the President's powers relative to the EAC, this brief does not address that issue.

of citizenship requirement, the NVRA empowers the EAC—and, in the case of state-specific voter registration forms used to register voters in federal elections, the individual States—to do so upon determining that it is "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1). Far from foreclosing that prerogative, the cases cited by the Plaintiffs—most notably, the U.S. Supreme Court's opinion in *Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ICTA*"), 570 U.S. 1 (2013)—recognize and preserve it.

Further, the Executive Order's directive that federal voter registration agencies attempt to screen-out known non-citizens from voter registration opportunities effectuates the congressionally ordained (and common sense) imperatives of forestalling illegal registrations by ineligible individuals.

## INTEREST OF THE *AMICUS CURIAE*

The RPAZ is a statewide political party committee under Arizona law, and the organizing body of Arizona electors who are registered members of the Republican Party, the largest political party in Arizona. The RPAZ sponsors and engages in large-scale voter registration efforts, and promotes the election of Republican candidates in Arizona. The Plaintiffs' claims in this litigation intersect with at least two foundational interests of the RPAZ. First, like all political party organizations, the RPAZ is intrinsically affected by the "structuring of [the] competitive environment"—*i.e.*, the legal and regulatory framework within which the electoral system operates. *See Shays v. Fed. Election Comm'n.*, 414 F.3d 76, 85 (D.C. Cir. 2005); *see also Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 116 (1st Cir. 1999) (Lynch, J., concurring) ("Legislators and candidates, whose interests are directly implicated by campaign regulation, have often acted as intervenors" in related litigation); *N.C. Green Party v.*

*N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 562 (E.D.N.C. 2022) (recognizing political parties' "interests in a competitive playing field for their candidates and conserving party resources").

Second, the RPAZ is unique among virtually all state political party organizations because Arizona has for more than twenty years maintained a documentary proof of citizenship requirement for applicants using its state voter registration form. As discussed in detail below, Plaintiffs' misconstruction of NVRA provisions addressing the promulgation and amending of registration forms used to register voters in federal elections would, if adopted, conflict with U.S. Supreme Court precedents and orders that undergird Arizona's voter registration regime.

Although no court rule appears to directly control the filing of *amicus curiae* briefs in this Court, the RPAZ, consistent with F.R.A.P. 29(a)(4)(E), discloses that no party or party's counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting the brief. A non-party, RITE PAC, which is a tax-exempt political organization organized and operated pursuant to section 527 of the Internal Revenue Code of 1986, provided funding for the preparation and submission of this brief.

## ARGUMENT

### I.     The NVRA Empowers the EAC to Modify the Federal Form to Add a Documentary Proof of Citizenship Requirement

"The NVRA 'erected a complex superstructure of federal regulation atop state voter-registration systems.'" *Pub. Interest Legal Found., Inc. v. Bellows*, 92 F.4th 36, 52 (1st Cir. 2024) (quoting *ICTA*, 570 U.S. at 5)). Plaintiffs employ that complexity to obscure key distinctions embedded in the statute that secure the EAC's flexibility to adapt and evolve voter registration procedures. To discern the infirmity in the Plaintiffs' contention that the NVRA somehow affirmatively prohibits documentary proof of citizenship as a condition of registering to vote in

federal elections, it is useful to unpack the interplay between the various provisions governing how individuals may register to vote and who determines the prerequisites for doing so. The litigation that ensued from Arizona's enactment of its own proof-of-citizenship mandate illuminated in more concrete terms the EAC's ability to supplement the Federal Form's existing affirmation of citizenship with additional safeguards.

### A.    Overview of the NVRA's Mail Registration Form Provisions

To facilitate Congress' stated objective of "enhanc[ing] the participation of eligible citizens as voters in elections for Federal office," 52 U.S.C. § 20501(b)(3), the NVRA provided for the creation of a mail registration form. There are two general species of this registration form. The first is the so-called "Federal Form" promulgated by the EAC, which the States must "accept and use" to register voters in federal elections. *See* 52 U.S.C. §§ 20505(a)(1), 20508(a)(2). Section 9 of the NVRA[2] (which corresponds to what is now 52 U.S.C. § 20508) enumerates certain basic informational fields or averments that the Federal Form "shall include"—among them, a sworn affirmation of citizenship. Above and beyond this baseline, the EAC may incorporate into the Federal Form any additional informational elements that are "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1).

The NVRA also countenances a second variant of a mail registration form—to wit, that "develop[ed] and use[d]" by a State. 52 U.S.C. § 20505(a)(2). A so-called State Form is NVRA-compliant if it "meets all of the criteria stated in [Section 9(b)]." *Id.* In other words, the same general rubric in Section 9(b) governs the permissible parameters of both the Federal Form and the State Forms, but their specific content is determined by different actors—to wit, the EAC and

---

[2] *See* Pub. L. 103-31, 107 Stat. 77.

state legislatures, respectively.  The NVRA thus tempers a nationwide voter registration regime with deference to federalism and regulatory latitude to adapt both the Federal Form and State Forms to future policy needs.  Put another way, "States retain the flexibility to design and use their own registration forms, but the Federal Form provides a backstop."  *ICTA*, 570 U.S. at 12.

**B.    Courts Have Affirmed That NVRA Section 9(b) Permits the EAC and States to Incorporate Proof-of-Citizenship Mandates into Voter Registration Forms**

Nearly two decades of litigation precipitated by Arizona's first-in-the-nation documentary proof of citizenship law crystallized the States' and the EAC's ability to amend and enhance their voter registration forms.  And the resulting precedents bely the Plaintiffs' current effort to interpolate into the NVRA a preemptive ban on documentary proof of citizenship mandates.

*1.    The Supreme Court Expressly Recognized Arizona's (and the EAC's) Authority to Adopt Proof of Citizenship Requirements*

In 2004, the Arizona electorate approved a statutory measure that required county recorders—the local officials who are responsible under Arizona law for registering voters and maintaining the rolls—to "reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship."  Ariz. Rev. Stat. § 16-166(F).  The statute did not differentiate between Federal Form and State Form submissions—an attribute that proved central to the U.S. Supreme Court's consideration of the law nine years later.  After dissecting the controlling provisions, the Supreme Court concluded that the NVRA "precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself."  *ICTA*, 570 U.S. at 20.

Plaintiffs' inferential leap that the NVRA affirmatively prohibits ***anyone*** (including the EAC) from imposing a proof of citizenship requirement through ***any*** mechanism, however, trips on two critical qualifiers cabining *ICTA*'s holding.  First, the Court emphasized that the NVRA

allows Arizona to request that "the EAC alter the Federal Form to include information the State deems necessary to determine eligibility," *id.* at 19, and held open the possibility that the EAC may even have "a nondiscretionary duty to include Arizona's concrete evidence [of citizenship] requirement on the Federal Form." *Id.* at 20. Second, the Court explained that Arizona could incorporate a documentary proof of citizenship field into its own State Form, noting that "state-developed forms may require information the Federal Form does not." *Id.* at 12; *accord Gonzales v. Arizona*, 485 F.3d 1041, 1050-51 (9th Cir. 2007) (finding that Section 9(b) of the NVRA "plainly allow[s] states, at least to some extent, to require their citizens to present evidence of citizenship when registering to vote").

Plaintiffs' position is irreconcilable with *ICTA*. Their declaration that "Congress confirmed that [documentary proof of citizenship] is not 'necessary to enable the appropriate State election official to assess . . . eligibility'" [Doc. 76 at 10] collides with the Supreme Court's admonition that the NVRA permits—and may indeed require—the EAC to accede to States' demands for a proof of citizenship component on the Federal Form. *See ICTA*, 570 U.S. at 19-20. Further, as noted above, Section 9(b)'s 'necessity' criterion governs both the Federal Form **and** any State Form that is used to register voters in federal elections. Far from ratifying Plaintiffs' theory that Section 9(b) precludes a documentary proof of citizenship element, the Supreme Court expressly cited Arizona's mandate as an "example" of how, pursuant to Section 9(b), "state-developed forms may require information the Federal Form does not." *Id.* at 12. In other words, *ICTA* held only that States cannot unilaterally append their own bespoke mandates to the Federal Form. But it recognized the EAC's and the States' respective powers under Section 9(b) to incorporate documentary proof of citizenship requirements into the Federal Form and individual State Forms.

This Court is "bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings." *McCoy v. Mass. Institute of Tech.*, 950 F.3d 13, 19 (1st Cir. 1991). The Supreme Court in *ICTA* pointedly left open the door to documentary proof of citizenship requirements in the Federal Form and individual State Forms; the Plaintiffs cannot here peremptorily close it.

> 2. *The Tenth and D.C. Circuits Have Reaffirmed EAC's Statutory Authority to Require Documentary Proof of Citizenship*

Subsequent lower court cases, of course, could not and did not derogate *ICTA*'s recognition that proof of citizenship mandates can be consistent with the NVRA. Plaintiffs cite *Kobach v. United States Election Assistance Commission*, 772 F.3d 1183 (10th Cir. 2014), and *League of Women Voters of the United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016), to prop-up their theory that Section 9(b) forbids proof of citizenship requirements. Neither court, though, said any such thing. Heeding the Supreme Court's invitation in *ICTA*, Arizona and Kansas petitioned the EAC to incorporate proof of citizenship requirements into their state-specific instructions on the Federal Form. The EAC denied the request. *See Kobach*, 772 F.3d at 1187-88. Declining to disturb the EAC's decision, the court emphasized that the "standard of review is 'very deferential' to the agency's determination, and a presumption of validity attaches to the agency action such that the burden of proof rests with the party challenging it." *Id.* at 1197 (internal citation omitted). In other words, *Kobach* concluded only that "the NVRA does not impose a ministerial duty on the EAC to approve state requests to change the Federal Form." *Id.* at 1199. It never—and, in light of *ICTA* could not have—held that the NVRA precludes the EAC from approving a proof of citizenship requirement.

*Newby* presented a different variant of the same narrow procedural point. There, the EAC's staff had approved several States' request for state-specific instructions on the Federal Form

concerning documentary proof of citizenship requirements.  *See* 838 F.3d at 4.  The court held that the EAC had acted improperly because it "never made the necessity finding required by [Section 9(b)]."  *Id.* at 12.  Crucially, however, the court emphasized that its ruling did ***not*** "forbid the Commission from including a proof-of-citizenship requirement if it determined that such a requirement was necessary" pursuant to Section 9(b).  *Id.* at 11 (citation omitted).  In short, *Kobach* and *Newby* collectively hold that the EAC (1) is not required to reflexively acquiesce to States' demands for proof of citizenship provisions, but (2) is statutorily authorized to adopt proof of citizenship requirements upon finding that such a policy comports with Section 9(b).

3.    *The Supreme Court Has Again Signaled Its Agreement That NVRA Section 9(b) Authorizes Proof of Citizenship Requirements*

The U.S. Supreme Court indicated last year that it is poised to again affirm that documentary proof of citizenship is (or at least can be) "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," 52 U.S.C. § 20508(b)(1), and hence eligible for inclusion on State Forms (and, by extension, the Federal Form).  In 2022, the Arizona Legislature strengthened Arizona's proof of citizenship requirement by (among other things) mandating that county recorders must "reject" any State Form application "that is not accompanied by satisfactory evidence of citizenship."  Ariz. Rev. Stat. § 16-121.01(C), as amended by 2022 Ariz. Laws ch. 99, § 4.  Various plaintiff groups challenged this provision, arguing that the NVRA (as well as a 2018 consent decree approved by the Arizona Secretary of State) required the county recorders to accept State Form submissions lacking proof of citizenship and to register these applicants as "federal only" voters.[3]  The district court sided with the plaintiffs and enjoined Ariz. Rev. Stat. § 16-

---

[3] Following *ICTA*, Arizona has maintained bifurcated voter registration rolls.  Registrants whose citizenship status has not been verified (other than individuals who registered to vote prior to the

121.01(C)'s implementation.  *See Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1077, 1096 & n.13 (D. Ariz. 2023).  After a motions panel of the Ninth Circuit unanimously stayed this facet of the district court's injunction, *see* 2024 WL 3629418 (9th Cir. Jul. 18, 2024), another panel intervened and, on a 2-1 vote, vacated the stay, *see* 111 F.4th 976 (9th Cir. Aug. 1, 2024).  The appellants then sought and received from the U.S. Supreme Court a stay of the district court's injunction against enforcement of Ariz. Rev. Stat. § 16-121.01(C).  *See Republican Nat'l Comm. v. Mi Familia Vota*, 145 S. Ct. 108 (Mem.) (2024).[4]

The *Mi Familia Vota* saga may be procedurally convoluted, but the Supreme Court's intimations are clear.  In staying the district court's injunction of Ariz. Rev. Stat. § 16-121.01(C), the Court implicitly but necessarily conveyed that there likely is "no basis to overrule Arizona's determination that documentary proof of citizenship is 'necessary to enable [its] election official[s] to assess the eligibility of the applicant.'"  *Mi Familia Vota II*, 129 F.4th at 749 (Bumatay, J., dissenting) (quoting NVRA Section 9(b), 52 U.S.C. § 20508(b)(1)); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (Supreme Court will grant a stay only if, *inter alia*, the "applicant has made a strong showing that he is likely to succeed on the merits").  An ineluctable corollary is that Section 9(b)—which also regulates the content of the Federal Form—likewise empowers the EAC to assimilate a documentary proof of citizenship element into the Federal Form.

---

2004 law's effective date) have a "federal only" designation and are issued ballots that contain only races for federal offices.  *See* Ariz. Atty. Gen. Op. I13-011, 2013 WL 5676943 (Oct. 7, 2013).

[4] Refusing to "take[] the hint" and "ignoring the Supreme Court's direction," *Mi Familia Vota v. Fontes*, 129 F.4th 691, 733, 745 (9th Cir. 2025) ("*Mi Familia Vota II*") (Bumatay, J., dissenting), the same panel later affirmed the district court's injunction, *see id.* at 718-20.  A petition for en banc review is pending.  *See* Intervenors' Petition for Rehearing En Banc, *Mi Familia Vota v. Fontes*, No. 24-3188 (9th Cir. Apr. 11, 2025).

**C.     The Court Need Not and Should Not Preemptively Ban the EAC From Considering and Adopting a Documentary Proof of Citizenship Requirement**

To sum up, two decades of litigation emanating out of Arizona's seminal documentary proof of citizenship law imparts five key points that should inform this Court's evaluation of the Plaintiffs' claims.

*First*, Section 9(b) authorizes the EAC and state legislatures to integrate into the Federal Form or particular State Forms, respectively, the disclosure of information "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1).

*Second*, the Supreme Court has cited Arizona's documentary proof of citizenship law as an "example" of the how Section 9(b) can be applied to permissibly augment and update voter registration forms. *See ICTA*, 570 U.S. at 12.

*Third*, while the EAC may not reflexively kowtow to States' demands for modifications to the Federal Form, it retains statutory authority to add elements to the Federal Form, including corroboration of citizenship, upon determining that they comport with Section 9(b). *See ICTA*, 570 U.S. at 19-20; *Newby*, 838 F.3d at 11-12; *Kobach*, 772 F.3d at 1197.

*Fourth*, courts historically have construed Section 9(b)'s "necessity" criterion liberally. If elections officials actually use the mandated item of information to verify applicants' eligibility and administer the voter registration process, the NVRA countenances its inclusion on the registration form. *See, e.g.*, *Gonzalez*, 485 F.3d at 1050-51; *Am. Ass'n. of People with Disabilities v. Herrera*, 580 F. Supp. 2d 1195, 1243 (D.N.M. 2008) (holding that inclusion on state registration form of mandatory field for the ID number of third-party voter registration agents satisfied Section 9 because "the state uses the numbers to prevent voter registration fraud"); *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1166 (N.D. Fla. 2012) (observing that

"identifying the organization that submits an application is sufficiently 'necessary' to the sound administration of the voter-registration process to pass muster" under Section 9).

*Fifth*, the U.S. Supreme Court's recent stay order in the *Mi Familia Vota* litigation evinces its likely agreement that Section 9(b) authorizes the inclusion of documentary proof of citizenship requirements in forms that are used to register voters in federal elections. *See Republican Nat'l. Comm.*, 145 S. Ct. 108; *Mi Familia Vota II*, 129 F.4th at 745 (Bumatay J., dissenting) (noting the significance of the stay order); *see also generally CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 230 (4th Cir. 2020) ("[E]very maxim of prudence suggests that we should decline to take the aggressive step of" issuing a ruling contrary to a Supreme Court stay order), *reh'g en banc granted* 981 F.3d 311 (4th Cir. 2020).

Accordingly, the Plaintiffs' position that the NVRA preemptively and categorically immunizes the Federal Form from the inclusion of a documentary proof of citizenship facet—regardless of who makes the policy determination or the reasons for doing so—dissipates under the collective weight of the NVRA's plain text, the Supreme Court's explication of it in *ICTA*, and circuit court precedents. At the very least, this Court should defer any adjudication of whether a new proof of citizenship element in the Federal Form complies with Section 9(b) until such time as the EAC (acting pursuant to the Executive Order or otherwise) actually reifies the concept into a final agency action.

## II.     Executive Order Section 2(d) Implements and Is Consistent with Congress' Express Objective of Limiting Voter Registration to Only U.S. Citizens

Far from being "incompatible with the expressed or implied will of Congress," *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring) (outlining when presidential power is "at its lowest ebb")), Section 2(d) of the Executive Order—which directs ***federal*** voter registration

agencies to "assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs"—effectuates the NVRA's purposes of confining voter registration opportunities only to United States citizens and "protect[ing] the integrity of the electoral process." 52 U.S.C. § 20501(b)(3).

Preliminarily, Section 2(d) of the Executive Order necessarily cannot "infringe upon [the States'] inherent sovereignty."  Doc. 76 at 14.  This provision is directed to "***Federal*** voter registration executive department[s] or agenc[ies]" (emphasis added).  Plaintiffs' supposition that the directive extends to state and local agencies finds no warrant in the Executive Order's text.  And the semantically sensible interpretation of Section 2(d) as limited only to agencies of the federal government is buttressed by the Court's duty to, when possible, construe laws "in a way that would avoid constitutional difficulties."  *Nat'l. Pharmacies, Inc. v. Feliciano-de-Melecio*, 221 F.3d 235, 241 (1st Cir. 2000).  Most if not all the federal departments affected by the Executive Order are situated entirely in the Executive Branch, and thus subject to the President's oversight.  *See generally Seila Law LLC v. Consumer Fin. Protection Bureau*, 591 U.S. 197, 224 (2020) (explaining that "individual executive officials will still wield significant authority, but that authority remains subject to the ongoing supervision and control of the elected President").

More broadly, federal elections are solely and entirely a creature of the U.S. Constitution; the States never possessed any antecedent "inherent sovereignty" in this domain that the Constitution could or did preserve.  *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 802 (1995) ("[T]he power to add qualifications [for federal offices] is not part of the original powers of sovereignty that the Tenth Amendment reserved to the States").  Directing federal voter registration agencies to vindicate the NVRA's express prohibition against the registration of non-

citizens does not unconstitutionally abridge any attribute of state sovereignty. *See Ass'n. of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 836 (6th Cir. 1997) (rejecting claim that the NVRA "is unconstitutional because it conscripts state agencies, personnel, and funds to further a federal purpose").

On the merits, Section 2(d) is fully consonant with the NVRA. Federal agencies that provide public assistance and other offices designated by the state must "distribute" to public assistance applicants the Federal Form or its State Form equivalent. *See* 52 U.S.C. § 20506(a)(6)(A). Nothing in the Executive Order abrogates or contradicts that policy command. In adding only that voter registration agencies must attempt to screen out non-citizens from this registration solicitation, the Executive Order aligns and synthesizes this provision with the NVRA's self-declared goals of registering only "eligible citizens" and "protect[ing] the integrity of the electoral process." 52 U.S.C. § 20501(b)(2), (3);[5] *see also* S. Rep. 103-6 (1993) (explaining that the NVRA's agency registration provision was intended to "enable[] more low income and minority *citizens* to become registered" (emphasis added)). Because individuals who are not U.S. citizens are ineligible to "register[] to vote in the first place," they necessarily are outside the ambit of the NVRA's intended beneficiaries. *See Bell v. Marinko*, 367 F.3d 588, 591-92 (6th Cir. 2004) (explaining that NVRA's voter list maintenance restrictions "protect[] only 'eligible' voters from unauthorized removal").

Finally, it bears noting that federal law prohibits non-citizens from voting in federal elections, *see* 18 U.S.C. § 611, and there are numerous other federal statutes that aim to prevent non-citizens from registering to vote. *See* 18 U.S.C. § 1015(f) (a crime to make a false claim of

---

[5] In delineating the NVRA's purposes, Congress employed the word "citizens" three times to denote the law's scope. *See* 52 U.S.C. § 20501.

citizenship to register or vote in any election); 52 U.S.C. § 20511(a)(2) (a crime to knowingly and willfully procure a materially false or fraudulent voter registration application); and 18 U.S.C. § 911 (illegal to knowingly and willfully make a false assertion of U.S. citizenship). A rigid reading of the NVRA that requires registration agencies to blindly offer registration applications to non-citizens, especially when agency officials will frequently have information at their disposal that indicate a would-be applicant's non-citizenship status, is at odds with numerous federal laws that prohibit non-citizen registration, protect non-citizens from being solicited to register to vote, and place those who offer registration applications to known non-citizens in potential legal jeopardy. It would also be inconsistent with Congress' stated purpose of registering only "citizens" to vote and protecting election integrity.

## CONCLUSION

For the foregoing reasons, the Court should find that (1) the NVRA permits the EAC to include a documentary proof of citizenship field on the Federal Form, and (2) Section 2(d) of the Executive Order validly interprets and implements the NVRA, and hence does not violate the separation of powers.

14

Dated: May 19, 2025                     Respectfully submitted,

STATECRAFT PLLC

By: _/s/Thomas Basile_
      Thomas Basile (BBO 675427)
      Kory Langhofer (*pro hac vice* application pending)
      649 North Fourth Avenue, First Floor
      Phoenix, Arizona 85003
      (602) 382-4066
      tom@statecraftlaw.com
      kory@statecraftlaw.com

      *Counsel for Amicus Curiae Republican Party of Arizona*