## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STATE OF CALIFORNIA; STATE OF
NEVADA; COMMONWEALTH OF
MASSACHUSETTS; STATE OF
ARIZONA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; STATE OF HAWAII;
STATE OF ILLINOIS; STATE OF
MAINE; STATE OF MARYLAND;
PEOPLE OF THE STATE OF
MICHIGAN; STATE OF MINNESOTA;
STATE OF NEW JERSEY; STATE OF
NEW MEXICO; STATE OF NEW YORK;
STATE OF RHODE ISLAND; STATE OF
VERMONT; STATE OF WISCONSIN,

                                    *Plaintiffs,*

v.                                                          No. 1:25-cv-10810-DJC

DONALD J. TRUMP, in his official
capacity as President of the United States;
PAMELA BONDI, in her official capacity
as Attorney General of the United States;
UNITED STATES ELECTION
ASSISTANCE COMMISSION; DONALD
L. PALMER, in his official capacity as
Chairman of the U.S. Election Assistance
Commission; THOMAS HICKS, in his
official capacity as Vice Chair of the U.S.
Election Assistance Commission;
CHRISTY McCORMICK and BENJAMIN
W. HOVLAND, in their official capacities
as Commissioners of the U.S. Election
Assistance Commission; PETE HEGSETH,
in his official capacity as Secretary of
Defense,

                                    *Defendants.*

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................1

Background ................................................................................................................1

Legal Standard ..........................................................................................................1

Argument ...................................................................................................................2

    I.      Plaintiff States' Claims are Justiciable ...........................................................2

          A.    Plaintiffs Have Plausibly Alleged Justiciable Challenges to Sections 2(a) and 3(d) ...............................................................................................2

          B.    Plaintiffs Have Plausibly Alleged a Justiciable Challenge to Section 7(a) .......................................................................................................4

          C.    Plaintiffs Have Plausibly Alleged a Justiciable Challenge to Section 2(d) .......................................................................................................6

    II.     Plaintiff States Have Alleged Cognizable Ultra Vires Claims .......................6

    III.    Plaintiff States Have Plausibly Alleged Challenges to the EO....................8

          A.    The President Cannot Unilaterally Revise the Federal Form ............8

              1.    The President's order violates the separation of powers. .......8

              2.    Documentary proof of citizenship requirements violate the NVRA. ..................................................................................10

          B.    Section 3(d) is Contrary to UOCAVA............................................11

          C.    Section 4(a) Unlawfully Conditions Statutory Funding ..................14

          D.    Section 7(a) Improperly Attempts to Override State Ballot Receipt Laws...............................................................................................14

          E.    Section 7(b) Also Unlawfully Conditions Statutory Funding..........18

          F.    The Challenged Provisions Violate the Vertical Separation of Powers...........................................................................................19

Conclusion ..............................................................................................................20

## TABLE OF AUTHORITIES

**Page**

CASES

*Arizona v. Inter Tribal Council of Arizona, Inc.*
  570 U.S. 1 (2013)....................................................................................15, 20

*Armstrong v. Exceptional Child Ctr., Inc.*
  575 U.S. 320 (2015)............................................................................................7

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*
  295 F.3d 28 (D.C. Cir. 2002)...........................................................................10

*Bognet v. Sec'y Commonwealth of Pa.*
  980 F.3d 336 (3d Cir. 2020)......................................................................15, 17

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
  489 U.S. 141 (1989).........................................................................................16

*Bost v. Ill. State Bd. of Elections*
  684 F. Supp. 3d 720 (N.D. Ill. 2023) ...............................................15, 16, 17

*Chamber of Com. of U.S. v. Reich*
  74 F.3d 1322 (D.C. Cir. 1996) ...................................................................6, 7, 8

*City & Cnty. of S.F. v. Trump*
  897 F.3d 1225 (9th Cir. 2018) ........................................................................18

*City of Arlington v. F.C.C.*
  569 U.S. 290 (2013).........................................................................................14

*City of Providence v. Barr*
  954 F.3d 23 (1st Cir. 2020)........................................................................13, 18

*Clapper v. Amnesty Int'l, USA*
  568 U.S. 398 (2013)............................................................................................2

*Clinton v. City of New York*
  524 U.S. 417 (1998).........................................................................................14

*Commonwealth of Puerto Rico v. United States*
  490 F.3d 50 (1st Cir. 2007)...........................................................................6, 8

*Democratic Nat'l Comm. v. Wisconsin State Legislature*
  141 S. Ct. 28 (2020)...........................................................................................4

*Department of Commerce v. New York*
  588 U.S. 752, 766-67 (2019) .............................................................................3

# TABLE OF AUTHORITIES
## (continued)

Page

*Donald J. Trump for President, Inc. v. Way*
   492 F. Supp. 3d 354 (D.N.J. 2020) .......................................................................15, 17

*Foster v. Love*
   522 U.S. 67 (1997).................................................................................................15, 16

*Fothergill v. United States*
   566 F.3d 248 (1st Cir. 2009) ........................................................................................1

*Gonzalez v. Arizona*
   677 F.3d 383 (9th Cir. 2012) ......................................................................................15

*Jama v. Immigr. & Customs Enf't*
   543 U.S. 335 (2005).....................................................................................................13

*Katz v. Pershing, LLC*
   672 F.3d 64 (1st Cir. 2012)........................................................................................2, 6

*League of United Latin American Citizens v. Executive Office of the
   President*
   2025 WL 1187730 (D.D.C. Apr. 24, 2025) ......................................................... *passim*

*League of Women Voters of U.S. v. Newby*
   838 F.3d 1 (D.C. Cir. 2016) .......................................................................................10

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992).......................................................................................................2

*Massachusetts v. United States Dep't of Health & Hum. Servs.*
   923 F.3d 209 (1st Cir. 2019).....................................................................................2, 3

*McInnis-Misenor v. Maine Med. Ctr.*
   319 F.3d 63 (1st Cir. 2003) ..........................................................................................3

*Mi Familia Vota v. Fontes*
   129 F.4th 691 (9th Cir. 2025) ...............................................................................10, 11

*Morrison v. Olson*
   487 U.S. 654, 691 (1988)............................................................................................10

*Murphy Co. v. Biden*
   65 F.4th 1122 (9th Cir. 2023) .......................................................................................7

*Myers v. United States*
   272 U.S. 52 (1926)......................................................................................................10

## TABLE OF AUTHORITIES
### (continued)

Page

*New Hampshire Right to Life Political Action Comm. v. Gardner*
  99 F.3d 8 (1st Cir. 1996)........................................................................4

*New Hampshire v. Maine*
  532 U.S. 742 (2001)...............................................................................9

*Newberry v. United States*
  256 U.S. 232 (1921).............................................................................15

*Pa. Democratic Party v. Boockvar*
  662 Pa. 39 (2020)................................................................................17

*PFLAG, Inc. v. Trump*
  769 F. Supp. 3d 405 (D. Md. 2025).....................................................7

*Reddy v. Foster*
  845 F.3d 493 (1st Cir. 2017)............................................................3, 4

*Republican Nat'l Comm. v. Wetzel*
  120 F.4th 200 (5th Cir. 2024)...........................................................17

*Republican Nat'l Comm. v. Wetzel*
  132 F.4th 775 (5th Cir. 2025)  .........................................................17

*Republican Nat'l Comm. v. Wetzel*
  742 F. Supp. 3d 587 (S.D. Miss.)......................................................17

*Rhode Island Ass'n of Realtors v. Whitehouse*
  199 F.3d 26 (1st Cir. 1999)..................................................................4

*Rudisill v. McDonough*
  601 U.S. 294 (2024).............................................................................11

*Seila Law LLC v. Consumer Fin. Prot. Bureau*
  591 U.S. 197 (2020).........................................................................9, 10

*Smiley v. Holm*
  285 U.S. 355 (1932)...............................................................................1

*State v. Meadows*
  88 F.4th 1331 (11th Cir. 2023) .........................................................20

*Susan B. Anthony List v. Driehaus*
  573 U.S. 149 (2014)..........................................................................2, 4

## TABLE OF AUTHORITIES
### (continued)

Page

*Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Cap. LLC*
  137 F.4th 6 (1st Cir. 2025) ............................................................. 2

*Texas v. United States*
  523 U.S. 296 (1998) ....................................................................... 2

*Trump v. Wilcox*
  145 S. Ct. 1415 (2025) ................................................................... 10

*TRW Inc. v. Andrews*
  534 U.S. 19, 31 (2001) ................................................................... 12

*United States v. Alabama*
  998 F. Supp. 2d 1283 (M.D. Ala. 2014) ......................................... 12

*United States v. Classic*
  313 U.S. 299 (1941) ....................................................................... 1

*United States v. Texas*
  599 U.S. 670 (2023) ....................................................................... 5

*Voting Integrity Project, Inc. v. Bomer*
  199 F.3d 773 (5th Cir. 2000) ......................................................... 16

*Watson v. Republican Nat'l Comm.*
  (filed June 10, 2025) ...................................................................... 17

*Wise v. Circosta*
  978 F.3d 93 (4th Cir. 2020) .................................................... 17, 19

*Wright v. Marjem Recovery, LLC*
  2014 WL 4274528 (D. Mass. Aug. 27, 2014) ................................. 11

*Youngstown Sheet & Tube Co. v. Sawyer*
  343 U.S. 579 (1952) .................................................................. 9, 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article I
  § 3 ................................................................................................. 10
  § 4, cl. 1 ................................................................................ 1, 8, 19

U.S. Const. Article II
  § 1, cl. 2 ......................................................................................... 1

# TABLE OF AUTHORITIES
## (continued)

Page

§ 1, cl. 4.................................................................................................1
§ 3..........................................................................................................1

**FEDERAL STATUTES**

2 U.S.C.
§ 7...................................................................................................13, 15

3 U.S.C.
§ 1........................................................................................................15

18 U.S.C.
§ 611..................................................................................................10
§ 1015(f)...........................................................................................10

52 U.S.C.
§ 20301............................................................................................15
§ 20301(b).......................................................................................12
§ 20301(b)(1)..................................................................................13
§ 20301(b)(2)..................................................................................12
§ 20301(b)(4)..................................................................................13
§ 20301(b)(7)..................................................................................13
§ 20303(b)(3)..................................................................................16
§ 20304(b)(1)..................................................................................16
§ 20505(a)(1)....................................................................................8
§ 20506(a).........................................................................................6
§ 20508(a).........................................................................................8
§ 20508(a)(1)..................................................................................14
§ 20508(b).........................................................................................8
§ 20508(b)(1).............................................................................10, 11
§ 20508(b)(2)..................................................................................10
§ 20508(b)(3).............................................................................10, 11
§ 20901............................................................................................18
§§ 20921-20923................................................................................8
§ 20928..............................................................................................8
§§ 21001-21003..............................................................................14
§ 21081(a)(6)...............................................................................18, 19
§ 21081(b)........................................................................................18
§ 21085............................................................................................19

Pub. L.
No. 117-328, 136 Stat. 4459 (2022) ............................................16
No. 118-47, 138 Stat. 460 (2024) ................................................18
No. 119-4, 139 Stat. 9, 10-11, 26 (2025) .....................................18

## TABLE OF AUTHORITIES
### (continued)

**Page**

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(1)................................................................................................1
    Rule 12(b)(6)................................................................................................1

**OTHER AUTHORITIES**

EAC, Election Sec. Grant, https://perma.cc/8EMJ-9VA8 ....................................18

Executive Order No. 14248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14005 (Mar. 25, 2025) ..............................1

Federal Post Card Application, https://perma.cc/AWL3-SWWB ..................12, 13

H.R. Conf. Rep. No. 103-66, 1993 WL 235764 (1993) .......................................10

MIT Election Lab, "Voting by mail and absentee voting" https://perma.cc/3HU7-TGL4......................................................................16

*Postcard*, Merriam-Webster Dictionary, https://perma.cc/A955-M3WQ ...........12

## INTRODUCTION

Defendants' Motion to Dismiss primarily raises arguments identical to those rejected by this Court just last month in its Memorandum and Order granting Plaintiff States a preliminary injunction (PI Order). For many of the same reasons that Plaintiff States were able to demonstrate a likelihood of success on the merits of their claims, the States have also brought justiciable and plausible claims for relief. The Court should deny the Motion.

## BACKGROUND

States have primary authority to regulate federal elections under the U.S. Constitution. *See* U.S. Const. art. I, § 4, cl. 1; U.S. Const. art. II, § 1, cl. 2, 4; *Smiley v. Holm*, 285 U.S. 355, 366 (1932). They are "given, and in fact exercise a wide discretion" in providing for fair and efficient elections. *United States v. Classic*, 313 U.S. 299, 311 (1941). Nowhere does the Constitution grant the President *any* specific powers over elections. Yet on March 25, 2025, President Trump issued Executive Order No. 14248, *Preserving and Protecting the Integrity of American Elections* (EO), reaching far beyond the President's limited role in this area of law. 90 Fed. Reg. 14005. On April 3, 2025, Plaintiff States sought declaratory and injunctive relief as to six of the EO's unconstitutional and illegal provisions—Sections 2(a), 2(d), 3(d), 4(a), 7(a), and 7(b)—and subsequently sought preliminary injunctive relief as to all but Section 4(a). After a hearing on June 6, 2025, the Court granted Plaintiff States' preliminary injunction motion on June 13, 2025. D. 107, 108. Defendants filed their Motion to Dismiss (MTD) that same day.

## LEGAL STANDARD

Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6). Where Defendants facially challenge jurisdiction under Rule 12(b)(1), the Court must "take as true all well-pleaded facts in the plaintiffs' complaint[], scrutinize them in the light most hospitable to the plaintiffs' theory of liability, and draw all reasonable inferences therefrom in the plaintiffs' favor." *Fothergill v. United States*, 566 F.3d 248, 251 & n.1 (1st Cir. 2009). And to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint need only allege a "plausible

entitlement to relief." *Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Cap. LLC*, 137 F.4th 6, 18 (1st Cir. 2025) (citation omitted).

## ARGUMENT

### I. PLAINTIFF STATES' CLAIMS ARE JUSTICIABLE

Defendants contend that the challenges to Sections 2(a), 2(d), 3(d), and 7(a) of the EO must be dismissed for lack of jurisdiction primarily because their effects are too speculative. MTD at 6-13. They are wrong. As alleged in the Complaint, these provisions threaten grave injury to Plaintiff States, requiring adjudication and judicial redress now.

#### A. Plaintiffs Have Plausibly Alleged Justiciable Challenges to Sections 2(a) and 3(d)

Defendants argue that the EO will not inflict on the Plaintiff States injuries sufficient to confer standing or establish ripeness. MTD at 6-10; *see generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Texas v. United States*, 523 U.S. 296, 300-01 (1998). An injury sufficient to confer standing (and that is ripe for redress) must be "actual or imminent." *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013). Where the alleged injury has yet to occur, the imminence requirement is met "if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (*SBA List*) (citation omitted). Imminently threatened fiscal injury—even "a relatively small economic loss"—is sufficient to confer jurisdiction in federal court. *Katz v. Pershing, LLC*, 672 F.3d 64, 76 (1st Cir. 2012) (citation omitted). The economic injury need not be direct, so long as the causal chain links that injury to the challenged federal action, and a State need not wait for an actual injury to occur before filing suit. *Massachusetts v. United States Dep't of Health & Hum. Servs.*, 923 F.3d 209, 221-27 (1st Cir. 2019) (standing satisfied by "likely chain of events" resulting in imminent fiscal injury to the Commonwealth).

Plaintiff States have plausibly alleged substantial and imminent economic harms that flow directly from Sections 2(a) and 3(d). Imposing documentary proof of citizenship on the Federal Form and Post Card Form and requiring state officials to record the documentation provided will

result in substantial implementation costs, which will divert finite time and resources away from other critical priorities. Compl. ¶¶ 13, 104-05. As this Court has recognized, the Plaintiff States' necessary reaction to Sections 2(a) and 3(d)—including updating voter registration databases, issuing guidance, conducting training, and funding public education campaigns—gives rise to imminently threatened economic injury and confers jurisdiction. PI Order at 15-16 (citing *Dep't of Commerce v. New York*, 588 U.S. 752, 766-67 (2019); *Massachusetts*, 923 F.3d at 222-27).

Defendants assert that Sections 2(a) and 3(d) are merely suggestive and only require the beginning of a process that may eventually lead to the EO's requirements, arguing that "Plaintiff States do not yet know how they will be harmed—if at all." MTD at 8-10. But there is no uncertainty about what the EO commands: Section 2(a) states that the EAC "shall take appropriate action to require" documentary proof of citizenship, and Section 3(d) states that the Secretary of Defense "shall update [the Post Card Form] to require" documentary proof of citizenship. These provisions unequivocally provide that documentary proof of citizenship *will* be imposed. PI Order at 15, 21; *see also League of United Latin American Citizens v. Executive Office of the President*, 2025 WL 1187730, at *27 (D.D.C. Apr. 24, 2025) (*LULAC*). And the Court has recognized that Defendants have conceded as much, representing to the *LULAC* court "that the administrative process prior to implementation will address only technical details." PI Order at 15; *see also id.* at 18. As alleged in the Complaint, because there is no doubt under the EO that documentary proof of citizenship will be imposed on federal voter registration forms, Plaintiff States have no choice but to take on the substantial economic burdens of planning for and implementing those requirements. Plaintiff States have therefore plausibly alleged imminent and unavoidable fiscal injuries that confer standing.

The Complaint plausibly alleges ripeness for similar reasons. Ripeness "turns on whether the challenged action creates a 'direct and immediate' dilemma for the parties.'" *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003) (citation omitted). A matter is ripe where a plaintiff is presently suffering injury, or delay in adjudication would harm the plaintiff. *Reddy v. Foster*, 845 F.3d 493, 501 (1st Cir. 2017). As explained above, Plaintiff States have

plausibly alleged significant injuries flowing from the inevitable imposition of documentary proof of citizenship.  Compl. ¶¶ 13, 104-05.  These injuries create a direct and immediate dilemma for the Plaintiff States by potentially "forc[ing] a diversion of state resources" and "cast[ing] uncertainty upon the 'massive coordinated effort' necessary to run state elections."  PI Order at 21 (quoting *Dem. Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring)).  Delay in adjudication will only exacerbate these injuries.

### B.    Plaintiffs Have Plausibly Alleged a Justiciable Challenge to Section 7(a)

Defendants also argue that the Court lacks jurisdiction to consider thirteen Plaintiff States' (Ballot Receipt Plaintiffs) challenge to Section 7(a), which commands the Attorney General to take enforcement actions against States that accept mail ballots cast before Election Day but received shortly thereafter, and possibly even States that allow voters to cure ballot errors after Election Day.  MTD at 11-13.  Defendants argue that any such enforcement action "is entirely speculative, and is not a basis for Article III standing or ripeness."  MTD at 11.  Again, however, the plain language of the EO and Defendants' in-court concessions are sufficient to allege an imminent threat of enforcement by the Attorney General.

Where enforcement is threatened, a plaintiff need not expose themselves to such enforcement before bringing a claim in federal court.  *Reddy*, 845 F.3d at 500.  "[A] credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement."  *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).  Pre-enforcement standing exists when a plaintiff intends to engage in conduct proscribed by a challenged action and faces a credible threat of enforcement for that conduct.  *Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 30-31 (1st Cir. 1999).  A credible threat of enforcement is shown where enforcement is "certainly impending" or there is a "substantial risk" that it will occur.  *Reddy*, 845 F.3d at 500 (citing *SBA List*, 573 U.S. at 158).

The Ballot Receipt Plaintiffs have plausibly alleged that they face a "substantial risk" of impending enforcement.  *See* Compl. ¶¶ 110, 161.  For these States, the EO's new deadline

4

currently conflicts with their state laws that extend ballot receipt deadlines beyond Election Day, and may also conflict with state laws permitting voters to cure ballot errors after Election Day. *Id.* ¶ 110.  Section 7(a) plainly commands the Attorney General to target such States with "all necessary" enforcement action, requiring escalating enforcement actions until the Attorney General obtains compliance.  As the Court has recognized, Defendants have openly "suggested that the Attorney General can take '[a]ny number of actions, including criminal actions' to enforce this section."  PI Order at 26 (quoting D. 76-2 at 10).

Defendants again cite *United States v. Texas*, 599 U.S. 670, 678-79 (2023) for the proposition that the Attorney General's prosecutorial discretion is not "subject to judicial review."  MTD at 11.  *Texas* is inapposite.  Unlike here, where Section 7(a) directs affirmative enforcement against States, *Texas* concerned a state challenge to *non-enforcement* decisions and purportedly harmful downstream effects.  *See Texas*, 599 U.S. at 678.  As the Supreme Court explained in holding that Texas lacked standing, "the absence of coercive power over the plaintiff makes a difference."  *Id.*

Defendants also repeat that the Attorney General can "lawfully enforce" the Election Day statutes pursuant to Section 7(a) by "sending letters to the Plaintiff States encouraging compliance with the President's interpretation."  MTD at 12.  But, as this Court has noted, "the government has not indicated that the Attorney General will cabin enforcement of § 7(a) merely to sending such letters."  PI Order at 26.  Nor could it.  The plain language of the EO does not permit the Attorney General to stop at letters if they fail to secure compliance.

Finally, Ballot Receipt Plaintiffs have plausibly alleged economic injuries associated with the potential disruption to state law posed by enforcement litigation, demonstrating hardship for ripeness purposes.  The challenged EO provisions, including Section 7(a), will require the Ballot Receipt Plaintiffs to take on the costly burdens of preparing to implement the President's new ballot receipt deadline in the next election cycle.  Compl. ¶ 13.  Indeed, this Court, in granting the preliminary injunction, explained that Section 7(a) "will require the States to undergo extensive training and voter education efforts related to ballot receipt deadlines."  PI Order at 27.

Such "associated costs, and an imminently threatened economic injury can ground a federal court's jurisdiction." *Id.* (citing *Katz*, 672 F.3d at 76).

### C.    Plaintiffs Have Plausibly Alleged a Justiciable Challenge to Section 2(d)

Defendants claim for the first time that Section 2(d) applies only to *federal* agencies, meaning Plaintiff States lack standing to bring their challenge to the provision.  MTD at 9-10.  Yet Defendants offer nothing to reconcile this position with Section 2(d)'s citation to 52 U.S.C. § 20506(a), which primarily concerns *state* voter registration agencies.  *See* PI Order at 24.  As the Court has found, Plaintiff States have plausibly alleged that Section 2(d) attempts to commandeer their agencies and resources, conferring standing for this claim.  *See* Compl. ¶¶ 49, 176-83; PI Order at 24-25.  If the Court deems this claim non-justiciable, however, it should do so conditioned on Defendants' representation that it does not apply to any Plaintiff State or state or local agency of a Plaintiff State in any circumstance, including when carrying out functions under federal law.

## II.    PLAINTIFF STATES HAVE ALLEGED COGNIZABLE ULTRA VIRES CLAIMS

Defendants argue that "[n]onstatutory review is inappropriate here" because Plaintiff States can challenge provisions of the EO under the Administrative Procedure Act (APA).  MTD at 13-14 (citing *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 59 (1st Cir. 2007)).  Defendants argue that non-statutory review is only available when "'its absence would wholly deprive the party of a meaningful and adequate means of vindicating its rights,' and Congress has not 'clearly intended to preclude review.'"  MTD at 14 (quoting *Puerto Rico*, 490 F.3d at 59).  Defendants contend that Plaintiff States cannot meet those conditions as to the agencies affected by the EO.  *Id.*

Were Defendants correct, an Executive order could not face a direct legal challenge; rather, those affected would have to wait for agencies and officials to consummate illegal and final agency action before suing.  But as the *LULAC* court found, it is well established that "courts have power to compel subordinate executive officials to disobey illegal Presidential commands." *LULAC*, 2025 WL 1187730, at *17 (quoting *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322,

1328 (D.C. Cir. 1996)). In fact, "when the President has issued an unlawful order, 'the proper course is to seek to enjoin a member of the executive branch from carrying out the executive order at issue.'" *Id.* (citation omitted); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Accordingly, the *LULAC* court concluded that the plaintiffs in that case could bring non-statutory causes of action challenging the legality of the EO. *See LULAC*, 2025 WL 1187730, at *16-17. Other courts faced with Defendants' argument have also concluded that non-statutory claims are the proper vehicle for reviewing illegal presidential directives. *See, e.g.*, *Reich*, 74 F.3d at 1328 ("We think it is now well established that '[r]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive.'" (citation omitted)); *Murphy Co. v. Biden*, 65 F.4th 1122, 1128-31 (9th Cir. 2023) (finding non-statutory claim asserting that a Presidential proclamation was unconstitutional and beyond statutory authority was not immune to judicial review); *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 427 (D. Md. 2025) (finding that the plaintiffs "sufficiently alleged equitable *ultra vires* causes of action" when seeking to enjoin federal agencies from acting on sections of Executive Orders on grounds that they were unconstitutional and violated statutes). Because Plaintiff States' claims and sought-after relief mirror those in *LULAC* (and other cases seeking review of illegal presidential action), *see* Compl. at 39, ¶¶ 1–2, this Court should reject Defendants' argument.

Finally, the only legal authority Defendants cite in support of their argument is inapposite. In *Puerto Rico*, the First Circuit held that Puerto Rico could not bring a non-statutory cause of action to obtain information from the Federal Bureau of Investigation (FBI) in connection with a criminal investigation because the APA was available to vindicate its rights. 490 F.3d at 59-60. Unlike this case, Puerto Rico and the FBI both agreed that the FBI's refusal to respond to Puerto Rico's subpoena constituted final agency action and that the APA was the ordinary means to address the FBI's refusal to respond to a subpoena. *See id.* 55, 59, 61 n.6. As Defendants admit, that is not the situation here. *See* MTD at 8 ("[T]here is no final agency action here[.]"); *see also LULAC*, 2025 WL 1187730, at *16 (explaining that "an executive order is not a final agency

action" and that "[a]s a consequence, the APA does not supply a cause of action to challenge an executive order"). In fact, *Puerto Rico* cuts against Defendants' argument because the First Circuit held that "if 'a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision, he may still be able to institute a non-statutory review action.'" 490 F.3d at 59 (quoting *Reich*, 74 F.3d at 1327). That is the case here—the APA is unavailable, so a non-statutory claim is necessary to challenge the President's unlawful EO.

## III.    PLAINTIFF STATES HAVE PLAUSIBLY ALLEGED CHALLENGES TO THE EO

This Court has already held that Plaintiff States' have shown a likelihood of success on the merits of their challenges to Sections 2(a), 2(d), 3(d), 7(a), and 7(d), PI Order at 2-4, so there is no question that Plaintiff States have alleged a plausible entitlement to relief. Plaintiff States similarly allege a plausible entitlement to relief as to Section 4(a).

### A.    The President Cannot Unilaterally Revise the Federal Form

As both this Court and the *LULAC* court have already determined, Section 2(a)'s command likely exceeds the power of the President, who has no authority to circumvent the NVRA and order the EAC to make specific changes to the Federal Form. PI Order at 16; *LULAC*, 2025 WL 1187730, at *25-44. Even if he could, the NVRA prohibits the President's changes.

#### 1.    The President's order violates the separation of powers.

"Neither the Constitution nor the NVRA grants the President the authority to direct the EAC to change the content of the Federal Form." PI Order at 16 (citing *LULAC*, 2025 WL 1187730, at *35). The Constitution assigns power to regulate elections to the States, U.S. Const. art. I, § 4, cl. 1, and "only Congress has the power to adjust state election rules." *Id.* Congress carefully set out all aspects of the Federal Form in the NVRA and HAVA, including the contents of the Federal Form and a process for amendments that delegates power solely to a bipartisan, independent commission with a duty to make changes only in consultation with the States. *See* 52 U.S.C. §§ 20505(a)(1), 20508(a)-(b), 20921-20923, 20928. The President's dictates exceed his constitutional power when they do "not direct a congressional policy be executed in a manner prescribed by Congress," but instead direct "that a presidential policy be executed in a manner

8

prescribed by the President." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 588 (1952). Section 2(a) flouts congressional policy and procedure and is thus "contrary to the manifest will of Congress, as expressed in the text, structure, and context of the NVRA and HAVA." PI Order at 17 (quoting *LULAC*, 2025 WL 1187730, at *37); *see also id.* (citing authorities explaining that statutory consultation procedures must be given effect).

Defendants virtually ignore that Plaintiff States' claim is based on a separation of powers argument. Instead, Defendants argue that the EO complies with congressional intent because it commands the EAC to "take *appropriate action* to require" documentary proof of citizenship, which includes "consult[ing] with the chief election officers of the States." MTD at 17. But this argument cannot be reconciled with the mandatory language of Section 2(a), which allows only one possible outcome of this consultative process—the *requirement* of documentary proof of citizenship. Defendants have conceded that "even after consultation with the states and the notice and comment rulemaking, documentary proof of citizenship would have to be required . . . [and are] judicially estopped from suggesting otherwise here." PI Order at 18 (citing *New Hampshire v. Maine*, 532 U.S. 742, 755 (2001)). "By purporting to preordain the outcome of these required procedures, the Executive Order renders them meaningless." PI Order at 18 (citing *LULAC*, 2025 WL 1187730, at *40-41 (concluding same)).

Defendants also argue that the Article II Vesting Clause gives the President unlimited authority to direct the EAC because the EAC exercises "executive power" and is thus "subject to the President's supervisory authority." MTD at 16. This Court has rejected this argument as "untethered from precedent and unsupported by even a maximalist view of 'the executive Power' under our Constitution." PI Order at 18 (quoting *LULAC*, 2025 WL 1187730 at *39.) Though the Vesting Clause may grant the President some supervisory authority, "that authority is not absolute and restrictions upon that authority that do 'not unduly interfere with the functioning of the Executive branch' are upheld." *Id.* (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 217 (2020)). The Court's conclusion "presents no impediment to 'the President's ability to perform his constitutional duty,'" *LULAC*, 2025 WL 1187730 at *40 (quoting

*Morrison v. Olson*, 487 U.S. 654, 691 (1988)), because "the President has no constitutional duty to prescribe the content of election regulations," PI Order at 18 (citing *id.*). The President can, however, ensure the laws are "faithfully executed," U.S. Const., art. I, § 3, by enforcing existing prohibitions on non-citizen registration and voting, 18 U.S.C. §§ 611, 1015(f).

Defendants' citations do not undercut this Court's prior conclusion. In *Allbaugh*, the guidance contained in the Executive order at issue was subordinate to the statutes that governed agencies' project administration. *See Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002). Defendants' reliance on *Myers v. United States*, 272 U.S. 52 (1926), *Seila Law*, 591 U.S. 197, and *Trump v. Wilcox*, 145 S. Ct. 1415 (2025) are inapposite because, unlike those cases, this case does not address the President's removal power. Instead, the President has ordered the EAC to reach a particular, predetermined outcome, untethered from the statutory standards and processes that Congress mandated for changes to the Federal Form. Defendants still have not cited any case that supports such a power.

### 2.    Documentary proof of citizenship requirements violate the NVRA.

Plaintiffs state a claim for relief from Section 2(a) on the foregoing basis alone. But even if the President could order the EAC to alter the Federal Form, the EO's changes violate the NVRA.[1] Congress, in the text of the NVRA, required individuals to establish citizenship by checkbox and attestation, prohibiting any "other formal authentication." 52 U.S.C. § 20508(b)(1)-(3); *see* H.R. Conf. Rep. No. 103-66 at 23-24, 1993 WL 235764, at *23 (1993) (documentary proof of citizenship was "not necessary or consistent with the purposes of" the NVRA). This determination demonstrates that requiring further formal documentary proof of citizenship is "not legitimately necessary for registration." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 719 (9th Cir. 2025). Thus, the NVRA "does not permit its inclusion." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 11 (D.C. Cir. 2016).

---

[1] Due to Arizona's unique legal requirements, the State does not join the argument that the NVRA prohibits a documentary proof of citizenship requirement on the Federal Form.

Defendants first argue that 52 U.S.C. § 20508(b)(1) allows the EAC to "determine[] what identifying information 'is necessary' to assess an applicant's eligibility to vote." MTD at 18. However, since the "ordinary meaning of 'necessary' is 'essential,'" this only allows the EAC to add essential items, and documentary proof of citizenship "is not 'essential' because the checkbox requirement already gives proof of citizenship." *Mi Familia Vota*, 129 F.4th at 719.

Defendants next attempt to sidestep the NVRA's prohibition on "any requirement for notarization or other formal authentication" on the Federal Form, 52 U.S.C. § 20508(b)(3), arguing that "documentary proof of citizenship would serve to substantiate an applicant's U.S. citizenship not verify his or her identify [sic]," MTD at 19. Defendants' distinction between proving citizenship versus identity is illogical and found nowhere in the statutory text. Yet Defendants argue that notarization is solely the process of proving identity, and that the statute's prohibition on "notarization" must modify the prohibition on "other formal authentication." *Id.* This argument fails at multiple levels. Even the unpublished case Defendants cite recognizes that notarization can serve other purposes—there, "that [a person] understand the document they are signing." *Wright v. Marjem Recovery, LLC*, 2014 WL 4274528, at *1 (D. Mass. Aug. 27, 2014). Nor is there any reason to read the prohibition on notarization as limiting the prohibition on formal authentication, especially because "differences in language [in the statute] convey differences in meaning." *See Rudisill v. McDonough*, 601 U.S. 294, 308 (2024). The prohibition on formal authentication is best read to mean what it plainly says—a prohibition on "the act of proving something"—here, a claim of citizenship—"is true or genuine." *Authentication*, Black's Law Dictionary (12th ed. 2024); *see also Authenticate*, Merriam-Webster Dictionary, https://perma.cc/38ZV-34P9 ("to prove or serve to prove to be real, true, or genuine").

## B.    Section 3(d) is Contrary to UOCAVA

Defendants contend that Plaintiff States have not stated a cognizable challenge to Section 3(d), which mandates a documentary proof of citizenship requirement on the Post Card Form. MTD at 19-22. This Court already concluded that Plaintiff States are likely to prevail on this claim. *See* PI Order at 21-24. Nothing in Defendants' motion changes that conclusion.

To start, Defendants argue that the President can direct the Secretary of Defense to add a documentary proof of citizenship requirement for the same reasons that he can direct the EAC to add one.  MTD at 20.  But that argument is unavailing because, as discussed above, the President cannot order action contrary to federal law, and Section 3(d)'s documentary proof of citizenship requirement contravenes UOCAVA.  *See LULAC*, 2025 WL 1187730, at *40.

Defendants argue that Section 3(d) "is consistent with UOCAVA's text and design."  MTD at 20.  This Court has already reached the opposite conclusion.  *See* PI Order at 21-24.  First, Section 3(d) conflicts with UOCAVA's text because the statute mandates that the voter registration form be a "post card."  52 U.S.C. § 20301(b)(2).  The ordinary meaning of "post card" indicates that it must be sent without an envelope, precluding that any documentation be appended.  *Postcard*, Merriam-Webster Dictionary, https://perma.cc/A955-M3WQ ("[A] card . . . for mailing without an envelope and to which the sender must affix a stamp.").  Indeed, the Court "cannot presume that Congress ignored the meaning of 'postcard' when it employed it in the statute."  PI Order at 22 (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).  Defendants argue that the Court should ignore the plain meaning of "post card" because Arizona, Vermont, and Puerto Rico have additional state-specific requirements.  MTD at 21.  But Vermont and Puerto Rico applicants need merely provide some additional information on the form itself, and the additional documentation for Arizona only affects whether voters can obtain a ballot for *state* elections.  *See* PI Order at 22 n.7; *United States v. Alabama*, 998 F. Supp. 2d 1283, 1290-91 (M.D. Ala. 2014).  Thus, Defendants' argument contradicts the statute's text.[2]

Second, Defendants argue that "nothing in UOCAVA *limits* what kind of document requirements the Secretary of Defense may 'prescribe.'"  MTD at 20 (emphasis original).  But UOCAVA's text and structure strongly indicate that the Secretary's authority *is* limited.  UOCAVA carefully enumerates 11 different "Duties of [the] Presidential Designee" in 52 U.S.C.

---

[2] Defendants also argue that a "visual inspection" of the Post Card Form shows "that it is no longer actually a postcard."  MTD at 21-22.  This is false.  The digital version of the Post Card Form shows that it includes prepaid postage, a place for a return address and mailing address for "your election office," and has a dotted line to fold the paper into a post card.  *See* Federal Post Card Application, https://perma.cc/AWL3-SWWB.

§ 20301(b).  These duties include, among others, "consult[ing] State and local election officials in carrying out this chapter" and "prescrib[ing] a suggested design for absentee ballot mailing envelopes."  *Id.* § 20301(b)(1), (4).  The careful listing of such specific duties—none of which grant broad powers to the Secretary, let alone contemplate a documentary proof of citizenship requirement—excludes those responsibilities or powers left unmentioned.  *See* PI Order at 22-23 (citing *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020)).

In addition, Congress's omission of a documentary proof of citizenship requirement strongly suggests the Secretary cannot add one, because courts "do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply," particularly where it has "shown elsewhere in the same statute that it knows how to make such a requirement manifest."  *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005).  Here, UOCAVA requires the Secretary to prescribe "a standard oath for use with any document under this chapter."  52 U.S.C. § 20301(b)(7).  This "standard oath" reflects both Congress's determination that attestation constitutes the necessary proof of an applicant's eligibility to vote and shows that Congress knows how to make veracity and proof of eligibility requirements explicit.  Congress's determination that an *oath* is sufficient for such proof implies that other methods of proof on the Post Card Form—such as documentary proof—were intentionally excluded.  And contrary to Defendants' arguments, the standard oath specifically constitutes proof of eligibility because it involves swearing under penalty of perjury that the registrant is "a U.S. citizen."  Federal Post Card Application, Sec. 7, https://perma.cc/AWL3-SWWB.

Third and finally, this Court correctly found that the incompatibility between UOCAVA and Section 3(d) is also evident in the statute's purpose—making it easier for military and overseas voters to exercise their right to vote.  PI Order at 23.  Defendants' conclusory assertion that "section 3(d)'s documentary citizenship requirement [does not] render the [Post Card Form] unusable for its intended purpose," MTD at 21, does not change the simple fact that it erects a meaningful procedural roadblock to the registration of military and overseas voters.

13

### C.    Section 4(a) Unlawfully Conditions Statutory Funding

As this Court has already held, the President does not have "the authority to direct the EAC to change the content of the Federal Form." PI Order at 16 (citing *LULAC*, 2025 WL 1187730, at *35). For the same reasons, the President lacks authority to require the EAC to withhold statutorily appropriated funds for States' failure to accede to his unconstitutional directive. *See City of Arlington v. F.C.C.*, 569 U.S. 290, 297-98 (2013) (agency may only exercise that authority which is conferred by statute). Congress set out the precise formula for each State's award of funds, and the specific conditions States must meet to be eligible. 52 U.S.C. §§ 21001-21003. Congress provided no role for the President in the award of funding, nor for additional conditions on the funding, and the President cannot unilaterally impose them through the EO.

Defendants argue that Plaintiff States fail to state a claim against Section 4(a) because the EO "only parrots the NVRA's requirements," which makes acceptance and use of the Federal Form a funding condition. MTD at 22-23. But the actual language of Section 4(a) conditions funds on States' acceptance and use of the Federal Form "issued pursuant to 52 U.S.C. 20508(a)(1), *including any requirement for documentary proof of United States citizenship adopted pursuant to section 2(a)(ii) of this order*." EO, § 4(a) (emphasis added). The latter dictate violates the separation of powers and is ultra vires. *See* PI Order at 16-17; *accord LULAC*, 2025 WL 1187730, at *35-*37. "[I]t is no answer" "to say that the [EO] requires the EAC to follow the law while following the President's order" if "the President lacks statutory or constitutional authority to issue the order." *LULAC*, 2025 WL 1187730, at *29.

### D.    Section 7(a) Improperly Attempts to Override State Ballot Receipt Laws

Defendants claim that the President can lawfully exercise his authority under the Take Care Clause to "put forward his interpretation of the law" in EO Section 7(a). MTD at 24. But the President does not have unlimited authority to interpret federal law. He cannot enact or amend statutes, *Clinton v. City of New York*, 524 U.S. 417, 438 (1998), nor "interpret the Election Day statutes" to inject a requirement that simply is not there, MTD at 26. *Congress—not the President—can displace state law in this area, but then only "so far as it . . . exercise[s]"

14

its authority, "*and no farther*," *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (*ITCA*) (citation omitted and emphasis added), and only when state and federal laws cannot "operate harmoniously in a single procedural scheme," *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012), *aff'd sub nom. ITCA*, 570 U.S. 1.

Congress has not preempted States' ballot receipt deadlines.  The statutes cited in the EO merely set out the *date* for federal elections.  *See* 2 U.S.C. § 7; 3 U.S.C. § 1.  They require—at most—that voters make a "final act of selection" by Election Day.  *Foster v. Love*, 522 U.S. 67, 71 (1997); *see also Newberry v. United States*, 256 U.S. 232, 250 (1921) (since ratification, election has meant "final choice of an officer by the duly qualified electors").  Such is the case when voters cast their ballots by Election Day, making their final selection on or before the date set in federal law—which is precisely what Plaintiff States' laws require.  *See, e.g.*, *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 354 (3d Cir. 2020), *cert. granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) (post-Election Day ballot receipt deadlines and Election Day statutes "can, and indeed do, operate harmoniously").  Accordingly, this Court has correctly concluded, consistent with a chorus of other courts, that "the Election Day statutes require only that all votes are cast by Election Day, not that they are received by that date."  PI Order at 28 (citing *Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023), *aff'd on other grounds*, 114 F.4th 634 (7th Cir. 2024), *cert. granted* June 2, 2025 (No. 24-568); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020)).

Two additional points about the text of the Election Day statutes buttress this plain reading.  First, the Election Day statutes only address federal general elections, not primaries or special elections.  Yet the EO inexplicably purports to apply its new ballot receipt deadline to *all* elections.  *See* EO, § 7(b).  Second, neither the Election Day statutes nor UOCAVA carve out UOCAVA ballots from any Election Day mandates, as the EO does.  *Id.* ("excluding ballots cast in accordance with 52 U.S.C. 20301 et seq.").  The EO therefore reaches beyond what the Election Day statutes plainly say.

15

The history of the Election Day statutes and state ballot receipt deadlines similarly undermine Defendants' arguments.  While Plaintiff States have long maintained their own procedures for receiving and counting timely-cast ballots, "Congress has never stepped in and altered the rules." *Bost*, 684 F. Supp. 3d at 736.  Instead, as this Court recognized, Congress has acknowledged and incorporated varying state ballot receipt deadlines into federal law.  PI Order at 28-29; *see, e.g.*, 52 U.S.C. §§ 20303(b)(3), 20304(b)(1).  Congress has not changed course on this front, even as it recently amended other aspects of federal election administration and as voters cast mail ballots at record levels.[3]  *See, e.g.*, Electoral Court Reform and Presidential Transition Improvement Act, Pub. L. No. 117-328, 136 Stat. 4459 (2022); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-67 (1989) (case for federal preemption is "particularly weak" where Congress has "indicated its awareness of the operation of state law" and "has nonetheless decided . . . to tolerate whatever tension there [is] between them." (quotations omitted)).  Moreover, Congress meant the Election Day statutes to safeguard citizens' ability to exercise their right to vote, not "imped[e]" citizens attempting to do so, as the EO would.  *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 777 (5th Cir. 2000) (citing Cong. Globe, 42d Cong., 2d Sess. 3407-08 (1872)).

Defendants nevertheless assert that a ballot receipt deadline is consistent with Congress's intent in passing the Election Day statutes.  Of course, legislative intent alone cannot give the President authority found nowhere in the statutes' text.  Still, Defendants fail to show that Section 7(a) is supported by congressional intent.  A uniform ballot receipt deadline has nothing to do with Congress's goals in passing the Election Day statutes—curbing the problem of some States setting their elections earlier than others, influencing results in other States, and removing the burden on voters to turn out on multiple election days.  *Foster*, 522 U.S. at 73-74.

Ignoring this history, Defendants argue that Ballot Receipt Plaintiffs' laws are "discriminatory" and "arbitrarily treat some people's votes differently," which Congress could

---

[3] This period saw an unprecedented spike in mail voting.  *See* MIT Election Lab, "Voting by mail and absentee voting," https://perma.cc/3HU7-TGL4.

not have condoned.  MTD at 27-28.  This Court has already rejected this dubious assertion.  PI Order at 29.  Important public policy goals underlie Ballot Receipt Plaintiffs' laws, including avoiding voter disenfranchisement simply because of mailing delays "outside the voters' control," *Wise v. Circosta*, 978 F.3d 93, 101 (4th Cir. 2020), and easing the burdens of election administration by giving States more time to send out ballots and count lawful votes.  And rather than discriminate against or privilege one voter over another, these laws require *all* voters to cast ballots by the *same day*; that standard "could not be clearer or more uniform."  *Id.* at 100.[4]

Defendants also cite *Republican Nat'l Comm. v. Wetzel*, 120 F.4th 200 (5th Cir. 2024), *petition for cert. filed* (U.S. June 10, 2025) (No. 24-1260).  *Wetzel* contradicts every other court to reach the issue, and the decision is wrong at every level of its analysis.[5]  The comprehensive dissent from denial of rehearing en banc in that case, the pending petition for writ of certiorari, and Plaintiff States' preliminary injunction papers detail why *Wetzel* is wrong.  It suffices to say that *Wetzel* disregards the plain meaning of the term "election" in favor of a fabricated three-part definition unsupported by case law, applies that definition in illogical ways that ignore the realities of election administration, and misconstrues both the history and law of ballot receipt rules.  *See also Republican Nat'l Comm. v. Wetzel*, 132 F.4th 775, 781-87 (5th Cir. 2025) (Graves, J., dissenting from denial of rehearing en banc); Petition for Writ of Certiorari, *Watson v. Republican Nat'l Comm.* (filed June 10, 2025) (No. 24-1260); D. 96 at 15-17.

Finally, Section 7(a) is additionally unsupported by the Election Day statutes because it calls for enforcement actions that appear nowhere in the statutes.  The Election Day statutes do

---

[4] Defendants cite hypothetical concerns with recalling mail and an Illinois statute but have "offered no evidence suggesting that this statute, or others, result in the counting of votes cast after Election Day."  PI Order at 29.  Any recalled mail should receive a fresh postmark by which to assess timeliness, and such unfounded concerns about one State's laws are a red herring where the EO prohibits counting *any* mail ballots received after Election Day.  *Id.* at 29-30.

[5] *Pa. Democratic Party v. Boockvar*, 662 Pa. 39, 77 & n.23 (2020); *Bognet*, 980 F.3d 336 at 354 (3d Cir. 2020), *cert. granted*, *vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *Bost*, 684 F. Supp. 3d at 736-37, *aff'd on other grounds*, 114 F.4th 634 (7th Cir. 2024); *Way*, 492 F. Supp. 3d at 371-72 (D.N.J. 2020); *Republican Nat'l Comm. v. Wetzel*, 742 F. Supp. 3d 587, 597-601 (S.D. Miss.), *rev'd* 120 F.4th 200 (5th Cir. 2024).

not provide for civil or criminal enforcement actions, "unlike other election-related statutes."  PI Order at 30.  There is no authority for the enforcement that Section 7(a) contemplates.

### E.    Section 7(b) Also Unlawfully Conditions Statutory Funding

Section 7(b) is ultra vires because it imposes an extra-statutory condition—compliance with the President's preferred ballot receipt deadline—on funding that the EAC is required by statute to distribute to States according to fixed criteria.  *See City of Providence*, 954 F.3d at 45; *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018) ("[U]nder the principle of Separation of Powers, . . . the Executive Branch may not refuse to disperse" funds "without congressional authorization."); *accord* PI Order at 31-32.

Defendants do not claim that the formula grants at issue directly require compliance with the Election Day Statutes—nor could they.  *See* MTD at 29-30.  Rather, Defendants cite a statutory condition applicable to "requirements payments" (one of three streams of formula funding the EAC administers)[6] requiring that States file a "plan" addressing, among other items, "'[h]ow the State will use requirements payment to meet the requirements of subchapter III'"— the part of HAVA containing Section 21081(a)(6), on which Defendants principally rely.  *Id.* at 30 (quoting 52 U.S.C. § 21004(a)(1)).

Section 21081(a)(6) requires that "[e]ach State shall adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the State." 52 U.S.C. § 21081(a)(6).  This provision does not support Section 7(b)'s uniform federal ballot receipt deadline requirement for at least three reasons.  First, the provision has nothing to do with ballot receipt deadlines.  Instead, it requires States to set rules applicable to "voting system[s]," a statutorily defined term focused on the technology used for voting and tabulation.  *See id.* § 21081(a)(6), (b).  Second, it expressly vests *States* with power to set standards defining valid votes, which is incompatible with a uniform federal

---

[6] The other formula grants include "election improvement" funds, 52 U.S.C. § 20901, and "election security" matching grants, which are administered under the same section, *see, e.g.*, Pub. L. 118-47, 138 Stat. 460, 549 (2024); Pub. L. No. 119-4, 139 Stat. 9, 10-11, 26 (2025); *see also* EAC, Election Sec. Grant, https://perma.cc/8EMJ-9VA8.  Neither of these programs include statutory authorization for Section 7(b) of the EO.

standard.  *See id*. § 21081(a)(6); *see also id*. § 21085 (giving States discretion over "the methods of complying" with this requirement); *LULAC*, 2025 WL 1187730, at *52 ("'uniform and nondiscriminatory standards' appears to refer to uniformity *within* each State, not among the several States" (emphasis original)), *cited in* PI Order at 32.  Third, Ballot Receipt Plaintiffs' laws *are* "uniform and nondiscriminatory" because they require all voters to cast a ballot by Election Day.  *See* 52 U.S.C. § 21081(a)(6); *see also Wise*, 978 F.3d at 100.  No statute allows the EAC to condition funding to States on their adoption of the EO's ballot receipt deadline.

### F.    The Challenged Provisions Violate the Vertical Separation of Powers

Defendants attack Plaintiff States' challenges based on the vertical separation of powers by claiming that the Constitution gives the "federal government" oversight of States' administration of federal elections.  MTD at 31.  This generalization obscures more than it reveals.  The Constitution gives *States* the power to set the rules for federal elections, and it gives *Congress* power to supplement or supplant those laws, subject to other constitutional constraints.  *See* U.S. Const. art., I, § 4, cl. 1.  The Executive has no independent authority to set election rules.  "In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker."  *Youngstown*, 343 U.S. at 587.

The challenged provisions of the EO are the President's attempt to dictate his own preferred election rules, and to require the States to carry them out.  Sections 2(a), 4(a), and 3(d) require the States to implement the President's policy of requiring documentary proof of citizenship for voter registration, which would necessarily require States to alter election administration infrastructure and procedures.  Compl. ¶¶ 8, 55, 104-05.  Likewise, Sections 7(a) and 7(b) set out to coerce States to alter validly enacted laws governing ballot receipt and curing through enforcement and funding threats.  *Id.* ¶¶ 10, 110-11.  Finally, Section 2(d) unconstitutionally commandeers state and local voter registration agencies by requiring them to conduct citizenship assessments before providing registration forms.  *Id.* ¶¶ 9, 104-05.

Defendants argue that each of these provisions are a valid exercise of Executive authority grounded in "duly enacted laws."  MTD at 31.  But as shown above, *none* of the statutes at issue

support these mandates.  Where Congress is silent, the power to set election rules rests with the States.  *See ITCA*, 570 U.S. at 9.  There is no room in this scheme for the President's independent lawmaking.  *See State v. Meadows*, 88 F.4th 1331, 1347 (11th Cir. 2023) (rejecting position that the Executive can "interfere[] with state election procedures based solely on the federal executive's own initiative").  Because the challenged provisions of the EO require States to implement new rules and procedures that go beyond those set by Congress, Plaintiff States have plausibly alleged that they violate the vertical separation of powers.

## CONCLUSION

For the foregoing reasons, Plaintiff States request that the Court deny Defendants' motion.

Dated: July 11, 2025                                    Respectfully Submitted,


**ROB BONTA**
Attorney General of California

By: */s/          Michael S. Cohen*
\*Michael S. Cohen
    Deputy Attorney General
\*Thomas S. Patterson
    Senior Assistant Attorney General
\*Anne P. Bellows
\*Malcolm A. Brudigam
\*Kevin L. Quade
\*Lisa C. Ehrlich
Nicholas R. Green (BBO No. 698510)
    Deputy Attorneys General
Office of the California Attorney General
1300 I Street, P.O. Box 944255
Sacramento, CA 94244
(619) 210-6090
Michael.Cohen@doj.ca.gov
*Counsel for the State of California*
*\*Admitted pro hac vice*


*(additional counsel on following pages)*

**AARON D. FORD**
Attorney General of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
    Solicitor General
Craig Newby*
    First Assistant Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-9246
hstern@ag.nv.gov
*Counsel for the State of Nevada*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ M. Patrick Moore*
M. Patrick Moore (BBO No. 670323)
    First Assistant Attorney General
Anne Sterman (BBO No. 650426)
    Chief, Government Bureau
Phoebe Fischer-Groban (BBO No. 687068)
    Deputy Chief, Constitutional & Administrative Law Division
Chris Pappavaselio (BBO No. 713519)
    Assistant Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2495
Pat.Moore@mass.gov
*Counsel for the Commonwealth of Massachusetts*

**KRISTIN K. MAYES**
Attorney General of the State of Arizona

By: */s/ Joshua M. Whitaker*
Joshua M. Whitaker*
Karen J. Hartman-Tellez*
Kara Karlson*
    Assistant Attorneys General
2005 North Central Ave.
Phoenix, AZ 85004
(602) 542-7738
Joshua.Whitaker@azag.gov
*Counsel for the State of Arizona*

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
    Solicitor General
Peter Baumann*
    Senior Assistant Attorney General
1300 Broadway
Denver, Colorado 80203
(720) 508-6400
shannon.stevenson@coag.gov
*Counsel for the State of Colorado*

**WILLIAM TONG**
Attorney General for the State of Connecticut

*/s/  Maura Murphy*
Maura Murphy*
    Deputy Associate Attorney General
Hartford, CT 06106
(860) 808-5020
Maura.Murphy@ct.gov
*Counsel for the State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: */s/ Maryanne T. Donaghy*
Maryanne T. Donaghy*
    Deputy Attorney General
Vanessa L. Kassab
    Deputy Attorney General
Ian R. Liston
    Director of Impact Litigation
820 N. French Street
Wilmington, DE 19801
(302) 683-8843
maryanne.donaghy@delaware.gov
*Counsel for the State of Delaware*

**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

By: */s/ David D. Day*
David D. Day*
    Special Assistant to the Attorney General
Kaliko'onālani D. Fernandes*
    Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
 david.d.day@hawaii.gov
*Counsel for the State of Hawai'i*

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
    Deputy Solicitor General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
*Counsel for the State of Illinois*

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jonathan R. Bolton*
Jonathan R. Bolton*
    Assistant Attorney General
6 State House Station
Augusta, ME  04333-0006
(207) 626-8800
Jonathan.Bolton@maine.gov
*Counsel for the State of Maine*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
    Senior Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-6424
akirschner@oag.state.md.us
*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Erik Grill*
Erik Grill*
Danny Haidar*
Heather S. Meingast*
    Assistant Attorneys General
525 W. Ottawa, 5th Floor
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
grille@michigan.gov
*Counsel for the People of the State of Michigan*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Peter J. Farrell*
Peter J. Farrell*
    Deputy Solicitor General
Angela Behrens*
    Assistant Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 757-1424
Peter.Farrell@ag.state.mn.us
*Counsel for the State of Minnesota*

**MATTHEW J. PLATKIN**
Attorney General Of New Jersey

By: */s/ Meghan K. Musso*
Meghan K. Musso*
Jonathan Mangel*
    Deputy Attorneys General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5276
meghan.musso@law.njoag.gov
*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ James W. Grayson*
James W. Grayson*
    Chief Deputy Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
jgrayson@nmdoj.gov
*Counsel for the State of New Mexico*

**LETITIA JAMES**
Attorney General of New York

By: */s/ Colleen K. Faherty*
Colleen K. Faherty*
    Special Trial Counsel
28 Liberty Street
New York, NY 10005
(212) 416-6046
Colleen.Faherty@ag.ny.gov
*Counsel for the State of New York*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ James J. Arguin*
James J. Arguin (BBO No. 557350)
    Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400, Ext. 2078
jarguin@riag.ri.gov
*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
    Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov
*Counsel for the State of Vermont*

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s/ Charlotte Gibson*
Charlotte Gibson*
    Assistant Attorney General
P.O. Box 7857
Madison, WI  53707-7857
(608) 287-4713
GibsonCJ@DOJ.STATE.WI.US
*Counsel for the State of Wisconsin*


*Admitted pro hac vice or pro hac vice applications forthcoming*


## CERTIFICATE OF SERVICE


    I, Michael S. Cohen, hereby certify that I served a true copy of the above document upon all counsel of record via this Court's electronic filing system.


Dated:  July 11, 2025

                                 */s/ Michael S. Cohen*
                                 Michael S. Cohen
                                 Deputy Attorney General
                                 *Counsel for the State of California*