IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF CALIFORNIA; STATE OF NEVADA; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN,<br><br>*Plaintiffs,*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, in her official capacity as Attorney General of the United States; UNITED STATES ELECTION ASSISTANCE COMMISSION; DONALD L. PALMER, in his official capacity as Chairman of the U.S. Election Assistance Commission; THOMAS HICKS, in his official capacity as Vice Chair of the U.S. Election Assistance Commission; CHRISTY McCORMICK and BENJAMIN W. HOVLAND, in their official capacities as Commissioners of the U.S. Election Assistance Commission; PETE HEGSETH, in his official capacity as Secretary of Defense,<br><br>*Defendants.* | Case No. 1:25-cv-10810-DJC |

## SECOND DECLARATION OF PAUL LINNELL

I, Paul Linnell, declare as follows:

1. I am a resident of the State of Minnesota. I am over the age of 18 and have personal knowledge of all the facts stated herein, except those matters stated upon information

1

and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Elections Director for the State of Minnesota. I work for Secretary of State Steve Simon and support him in his official capacity as the Chief Officer of Elections for the State of Minnesota. In my role, I assist him in the administration of all state and federal laws relating to elections.

3. I have served as the Elections Director since June 2024. I also have extensive prior experience in election administration, having served as an Elections Administrator and Elections Manager for Anoka County, Minnesota from 2015 to 2022 and as the Deputy Elections Director for Secretary Simon from 2022 to 2024, before assuming my current position. My current duties include supervising all election administration duties of the Office of the Secretary of State.

4. Elections in Minnesota are managed by local officials with support from the Secretary of State's Office. Under Minnesota law, counties are responsible for processing voter registration applications, applying or removing challenges to voter records, training municipal election officials and election judges, and conducting absentee balloting. Cities, townships, and (where appropriate) school districts are responsible for determining precinct boundaries and setting polling locations, hiring election judges, and administering health care facility absentee voting. Some counties delegate additional tasks to cities and townships, such as the training and certification of election judges and the administration of absentee balloting. The Secretary of State administers the statewide voter registration system, provides technical assistance and training to county election officials, and monitors compliance of state election laws. The Secretary of State also maintains online voter registration tools and compiles elections results

and maintains them on the Office's website. Finally, the Secretary of State chairs the state canvassing board, which is responsible for certifying the results of federal election.

5. In the November 2024 general election, 3,272,414 ballots containing votes for federal office were cast in Minnesota.

6. The Secretary of State is Minnesota's Chief Officer of Elections, responsible for the administration of state and federal law relating to elections within the state. The Elections Division is responsible for implementing the Secretary of State's responsibilities with regard to elections.

7. In my role as Elections Director, I am responsible for ensuring the correct and legal administration of election processes and developing election guidance. I am quite familiar with the systems necessary to oversee the administration of elections in Minnesota, including the requirements necessary to register to vote and the statewide voter registration system.

8. I am familiar with the Executive Order published on March 25, 2025, entitled "Preserving and Protecting the Integrity of American Elections" (the "EO"). If implemented, Sections 2(a), 2(d), 3(d), 7(a), and 7(b) of the EO will cause substantial harm, confusion, and disruption in Minnesota election administration and impose unrecoverable costs on Minnesota.

9. It is my understanding that Section 2(a) of the EO directs the Election Assistance Commission ("EAC") to amend the national mail voter registration form ("Federal Form"), as provided by the National Voter Registration Act ("NVRA"), to require applicants to provide "documentary proof of United States citizenship" ("DPOC"). *See* EO, § 2(a)(i)(A). It outlines a

3

limited number of specific documents that constitute acceptable DPOC, including REAL ID, which is actually available to citizens and non-citizens in Minnesota.[1]

10.     The EO also requires state and local officials to "record . . . the type" of DPOC presented at the time of voter registration, including recording specific information about the document. *Id.* § 2(a)(i)(B). The EO directs the EAC to "take appropriate action" within 30 days (i.e., by April 24, 2025) to impose these changes. *Id.* § 2(a)(i).

11.     Minnesota is exempt from the requirements of the NVRA because it has offered election day registration since the NVRA went into effect. 52 U.S.C. § 20503(b)(2). Minnesota does not currently require DPOC to register to vote. The Minnesota voter registration application provides spaces for the eligible voters to provide their first name, middle name, any previous names, current address, any previous address, voter's date of birth, municipality and county of residence, telephone number (if the voter chooses), date of registration, current and valid Minnesota driver's license number or Minnesota state identification number, or if the voter has no current and valid Minnesota driver's license or Minnesota state identification, the last four digits of the voter's Social Security number. Minn. Stat. § 201.071, subd. 1. The application also requires the voter to certify under penalty of perjury that the voter meets eligibility requirements, including that the voter is a United States citizen.

12.     Minnesota does, however, accept the Federal Form authorized under the NVRA as a valid form of registration. Minn. Stat. § 201.071, subd. 1. It is not clear from the EO which of its provisions (including Section 2(a)) will apply to use of the Federal Form in Minnesota. If

---

[1] Minnesota also offers an enhanced driver's license and identification card that meets the standards of REAL ID and is available only to those who provide proof citizenship. *See* Minn. Stat. § 171.01, subds. 31a and 31b.

4

these provisions apply they will require me, my team, and local election officials across the state to make significant changes to the Minnesota election processes.

13. On April 11, 2025, EAC Executive Director Brianna Schletz sent a letter to my office regarding implementation of EO Section 2(a).

14. The National Voter Registration Act requires the EAC to consult with state election officers before prescribing regulations for mail voter registrations. 52 U.S.C. § 20508(a)(1), (2). If the EAC implements Section 2(a), my office will lose an essential opportunity to provide input on why requiring DPOC on the Federal Form is a bad idea—and to have that input receive due consideration as is required.

15. If consulted by the EAC, my office would strongly oppose requiring Federal Form applicants to submit DPOC because it would make it harder to vote and more difficult and expensive to administer an election. Many people do not have access to the DPOC necessary to register to vote. For example, less than 60 percent of Minnesotans have a U.S. Passport.[2] Just under 50 percent have a REAL ID license; even fewer have the enhanced license necessary to establish citizenship. *See* REAL ID driver's license and ID card | Minnesota Department of Public Safety, https://dps.mn.gov/divisions/dvs/license-and-id/dl-and-id-card-information/real-id-dl-and-id-card (last visited April 16, 2025). It is a time consuming and expensive process to obtain the enhanced driver's license or identification card showing citizenship in Minnesota. Applicants must provide proof of their date of birth, full legal name, social security number, and U.S. Citizenship, as well as a photographic identification card. *See* Enhanced Driver's License and ID Card Identification Requirements, https://s3.us-east-

---

[2] Passport Possession by State, https://www.americanprogress.org/wp-content/uploads/sites/2/2025/01/SAVEact-tables.pdf (last visited Oct. 17, 2025).

2.amazonaws.com/assets.dps.mn.gov/s3fs-public/migrated-files/divisions/dvs/forms-documents/Documents/EDL-EID-Identification-Requirements.pdf (last visited November 21, 2025). It is my understanding that similar documentation is required to apply for a U.S. Passport. Many Minnesotans will not have easy access to this material. These individuals will struggle to provide the DPOC necessary to register using the Federal Form. As a result, this proposed change could prevent many eligible people from registering to vote. In addition to the dramatic impact on voter registration, implementation of the proposed changes will be time-consuming, costly, and make it difficult to prepare for upcoming elections.

16. If implemented, Section 2(a) would require immediate action from me and my team to implement and to coordinate with other state and local agencies across Minnesota. Our efforts to address the directed changes and impacts of the EO will divert time and attention from other critical election preparation. Minnesota's statewide voter registration system is a database that the Secretary of State's election development team has created "in-house." It is maintained by Secretary of State staff who are already operating at full capacity to modernize the system and implement other necessary upgrades to maintain its security and functionality. Those staff are working currently to modernize the infrastructure of that system and to add much needed functions necessary to more effectively administer elections. In addition, members of my team are working on implementing an early voting program recently enacted into law which will allow for uniformity of pre-election day voting across the state, as well as developing new training materials and guidance for local elections officials on new chain of custody requirements recently passed into law, results collection and reporting, and ballot development. All of these programs will be delayed if Section 2(a) is implemented.

17.     Implementation of the DPOC requirement mandated by Section 2(a) would also require significant changes to Minnesota's voter registration database. *See* 52 U.S.C. § 21083(a). Currently, there is nowhere in the statewide voter registration system for an election administrator to enter information regarding proof of citizenship. Significant programming time would be needed to modify this database so that election administrators could do so. Developers would need to create a new field in which administrators could identify whether documentary proof of citizenship was provided, what type of proof was provided, and the date of expiration of that proof. Such a project would take considerable time and cost a substantial amount of money. Similar projects in the past have taken hundreds of hours of programming time and cost thousands of dollars. The Secretary of State does not have the ability to undertake such a project now and on the timelines proposed by the EO, as those resources are needed to make other preparations in advance of other upcoming elections.

18.     If Section 2(a) were implemented, my team would also need to design new procedures to administer the DPOC requirement, develop training materials and guidance documents for use by state and local elections officials, and implement the changes. This is yet another aspect of the EO's implementation that will necessarily divert substantial resources from other important election administration tasks. While the Federal Form is not widely used across the state, it is well known to election officials and available on many websites that provide voting information, including the Vote.gov website maintained by the federal government. *See How to Register to Vote in Minnesota*, https://vote.gov/register/minnesota (last visited November 21, 2025). The EO's DPOC requirement on the Federal Form, as well as the requirement that local elections officials record the type of DPOC presented, will require substantial education and coordination with local elections officials on topics like (1) the new requirements and the

documents that suffice, (2) how to implement the EO's commands regarding memorializing DPOC, and (3) ceasing use of the old federal form. This will require my team to spend substantial time and resources updating training materials for election officials, including the County Elections Administration Guide, https://www.sos.mn.gov/media/ukxlp5k0/county-election-administration-guide.pdf (last visited November 21, 2025) and the Absentee Voting Administration Manual, https://www.sos.mn.gov/media/eddemz0y/minnesota-absentee-voting-administration-manual.pdf (last visited November 21, 2025). Typically, it already takes my team several hours to update these guides to account for relatively modest changes that are made to Minnesota election laws each year. The changes proposed by the EO are much more dramatic and will take considerably more time to train local election officials on. In all likelihood, my team will need to develop additional materials and provide additional training in-person sessions on these requirements. All of these materials will take considerable time to update to account for the changes. I also anticipate our team will need to consult with local officials on these requirements repeatedly to ensure compliance with these requirements as the 2026 elections approach.

19.     A separate impact of the EO's directive concerns the need for a wide-ranging public education campaign to ensure that eligible voters are aware of the new registration requirements. Immediately after the EO was issued, my team began fielding calls from voters wondering if they need to re-register to vote, provide DPOC when they register, or what other steps they must take to be eligible to vote. My team anticipates working with our communications and voter outreach divisions to develop resources necessary to educate Minnesota voters about the EO and whether it applies to them. For example, we will need to

8

change our website and external-facing resources with updated and correct information regarding the EO and how to register to vote in Minnesota. This will take substantial time and resources.

20. I estimate that such a public education effort would likely cost thousands of dollars, funding this Office currently does not have.

21. Based on my experience administering elections, I know that changing the Federal Form to require DPOC will cause confusion. Some citizens will not realize that there is a new DPOC requirement that has been added to the Federal Form since the last time they registered. Some citizens will misunderstand what documents do or do not qualify as DPOC under Section 2(a). And some citizens will determine that the added requirement makes registering too confusing to be worthwhile. The result of this confusion will be that fewer eligible voters successfully register to vote.

22. It is my understanding that Section 3(d)(i) of the EO requires the Secretary of Defense to "update" the federal post card application (FPCA) pursuant to the Uniformed and Overseas Citizen Absentee Voting Act ("UOCAVA") to require DPOC as described in Section 2(a) of the EO. EO, § 3(d)(i).

23. The mandated changes to voting pursuant to UOCAVA will create substantial administrative burdens on state and local elections officials. As required by federal law, Minnesota accepts the FPCA as a valid voter registration form and request for an absentee ballot. *See* 52 U.S.C. § 20302(a)(4).

24. Accordingly, if a DPOC requirement is added to that form, Minnesota election officials will be required to administer that requirement. Administering the new requirement will necessarily entail additional costs for Minnesota and local election officials.

9

25. Approximately 3,722 currently registered Minnesota voters have registered using FPCAs.

26. Administering a DPOC requirement for the FPCA will require Minnesota to update its statewide voter registration database to include additional fields related to documentary proof of citizenship and integrate those fields into existing database functions. *See* 52 U.S.C. § 21083(a). As described above, all required information on a voter registration application form must be recorded in the voter registration database to ensure that the application has been correctly processed, to create a record showing that the applicant met all the requirements for registration, and to allow oversight by state officials As described above, such an update to the database and related election technology will be both time-consuming for our staff and costly in financial terms. In addition, FPCAs are often received closer to election, meaning we will have to review those forms for compliance with the new requirements under short timeframes

27. In addition, the EO's changes to UOCAVA will require Minnesota as the as the agency charged with overseeing compliance with UOCAVA—to expend substantial resources to educate state and local elections officials on the new requirements and to ensure their continued compliance with their obligations moving forward. As with Section 2(a), my team will need to carry out extensive education and coordination with state and local elections officials on topics like the new requirements and the documents that suffice, and security procedures to protect the sensitive personal information contained in the documents submitted and required by the EO, including storage and/or disposal of the physical DPOC submitted with the FPCA.

28. Each of these tasks and costs will divert scarce resources from the same important election administration tasks that I described above with regard to Section 2(a) of the EO.

29. Apart from the costs its implementation would impose on the State, Section 3(d)(i) also risks voter disenfranchisement. If the FPCA is amended to require documentary proof of citizenship, members of the military and overseas citizens who lack documentary proof of citizenship, but are otherwise eligible to vote, will not be able to register to vote through the FPCA.

30. As discussed above, in my experience administering elections, otherwise eligible voters sometimes have trouble producing documentary proof of eligibility and may be deterred by these requirements. These difficulties are magnified for overseas and military voters because they often do not have access to the technology (such as scanners) necessary to transmit proof of citizenship. In addition, most are a significant distance away from the state and local agencies that maintain custody of documentation they may need to obtain DPOC (such as birth certificates or marriage licenses).

31. I understand that Defendants in this case have argued that they should be able to partially implement DPOC on the Federal Form and FPCA by inserting it into state-specific instructions for States other than Plaintiff States.

32. This proposal is highly likely to cause confusion among voters seeking to register in Minnesota and carries a high risk of deterring eligible voters from registering or updating their registration when they move. As a result, if this proposal is implemented, Minnesota will be required to mount a public education campaign to ensure that eligible voters are not deterred from registering in Minnesota. This would also include an education campaign for state and local election officials, both to allay any confusion regarding the requirements and to allow those officials to properly answer inquiries from the public. I expect that such a campaign would cost thousands of dollars.

33. If this proposal is implemented, it is foreseeable that some voters will not register to vote because they mistakenly believe documentary proof of citizenship is required.

34. Additionally, if this proposal is implemented, it is foreseeable that some voters will mistakenly submit documentary proof of citizenship when it is not required. Accordingly, my team would need to develop procedures and guidance for election officials to ensure that such sensitive personal documents are appropriately handled in compliance with any federal or state privacy laws.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 9, 2025, at St. Paul, MN

Paul Linnell
Director of Elections
Office of the Minnesota Secretary of State