IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STATE OF CALIFORNIA; STATE OF NEVADA; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN,

*Plaintiffs,*

v.

DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, in her official capacity as Attorney General of the United States; UNITED STATES ELECTION ASSISTANCE COMMISSION; DONALD L. PALMER, in his official capacity as Chairman of the U.S. Election Assistance Commission; THOMAS HICKS, in his official capacity as Vice Chair of the U.S. Election Assistance Commission; CHRISTY McCORMICK and BENJAMIN W. HOVLAND, in their official capacities as Commissioners of the U.S. Election Assistance Commission; PETE HEGSETH, in his official capacity as Secretary of Defense,

*Defendants.*

Case No. 1:25-cv-10810-DJC

## DECLARATION OF EDMUND MICHALOWSKI

I, Edmund Michalowski, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am a resident of the State of Illinois. I am over the age of 18 and have personal knowledge of all the facts stated herein, except those matters stated upon

1

information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2.  I am the Deputy Clerk for Elections for the Office of the Cook County Clerk. I work for the Cook County Clerk Monica Gordon and support her work as chief election authority in Cook County, Illinois. In my role, I assist in the execution of the election process at the local level. I have served in this role since 2019.

3.  The Cook County Clerk is the election authority responsible for administering elections in suburban Cook County, Illinois. As the local election authority, the Cook County Clerk handles local voter registration, trains election judges and deputy voter registrars, selects polling places, prints ballots, oversees Election Day activities, and supervises the vote count. The Cook County Clerk is the largest election authority in the State of Illinois with approximately 1.6 million registered voters in suburban Cook County. Specifically, for the November 5, 2024 Presidential Election, there were a total of 1,640,040 registered voters in suburban Cook County. A total of 1,089,942 voters cast ballots in that election.

4.  In my role as Deputy Clerk for Elections, I am responsible for preparing and conducting all primary, general, and special elections held in Cook County; developing, implementing, and directing the activities of the Election Division, including registration, candidate filings, all forms of voting, ballot programming and testing, and voter outreach efforts; drafting the Election Division's long-term and short-term strategic goals; working with voters, political parties, candidates, political jurisdictions, media, county departments, and other entities; and developing and presenting a proposed budget.

2

5.   I am familiar with the Executive Order published on March 25, 2025, entitled "Preserving and Protecting the Integrity of American Elections" (the "EO"). If implemented, the EO—specifically Sections 2(a), 7(a), and 7(b)—would cause substantial and adverse impacts on voting in Cook County, as well as the Cook County Clerk's ability to adequately administer elections and would impose unrecoverable costs on the Cook County Clerk.

6.   It is my understanding that Section 2(a) of the EO directs the Election Assistance Commission ("EAC") to amend the national mail voter registration form ("Federal Form"), as provided by the National Voter Registration Act, to require applicants to provide "documentary proof of United States citizenship" ("DPOC"). *See* EO, § 2(a)(i)(A). The EO requires state and local officials to "record . . . the type" of DPOC presented at the time of voter registration, including recording specific information about the document. *Id.* § 2(a)(i)(B).

7.   The Cook County Clerk currently uses and accepts the Federal Form when registering new voters. If implemented, the EO's directive to include a new DPOC requirement on the Federal Form, as well as the requirement that state and local election officials record the type of DPOC presented, would require an overhaul of the Cook County Clerk's voter registration process, which would include (1) phasing out use of the old forms; (2) training those involved in the registration process on these new requirements and updating related training materials; and (3) modifying the registration database to account for these changes as well as ensure data security of the DPOC to protect the sensitive personal information contained in the documents submitted. Specifically, the Cook County Clerk would require an increased terminal-based computer system to scan,

collect, and store the requisite documentation, costing an estimated $900,000. Further, our efforts to address these directed changes would divert time and attention from other critical election preparation.

8. Apart from the time and monetary costs its implementation would impose on the Cook County Clerk, Section 2(a) also risks voter disenfranchisement. Many eligible voters may not be able to easily obtain DPOC or may not be aware of this new requirement before the next election, resulting in them being unable to register to vote. Further, otherwise eligible voters may be deterred or confused by these requirements. Some citizens will misunderstand what documents do or do not qualify as DPOC under Section 2(a). And some citizens will determine that the added requirement makes registering too confusing to be worthwhile. This risk is not justified given that in the more than five years that I have served as Deputy Clerk for Elections for the Cook County Clerk, I have not learned of any issues related to widespread fraud in the registration of voters who were not citizens of the United States.

9. It is my understanding that Section 7(a) of the EO requires the Attorney General to "take all necessary action" to enforce the federal Election Day statutes "against States that violate these provisions," including States that count absentee or mail-in ballots received after Election Day in the final tabulation of the vote for federal offices. *See* EO, § 7(a).

10. The Illinois Legislature in Article 19 of the Illinois Election Code has provided for mail balloting for registered voters. Ballots duly postmarked by the United States Post Office on or before the date of the election are valid if received within 14 days after the date of the election, through delivery to the Cook County Clerk by the United

4

States Post Office. 10 ILCS 5/19-3, 19-8. The Illinois Election Code also allows voters who cast mail-in ballots on or before Election Day to cure technical errors within 14 days after Election Day, allowing their ballots to ultimately be counted. 10 ILCS 5/19-8(g-5) (providing that if a vote-by-mail ballot is rejected by the election judge or official for any reason, the voter may appear before the election authority, on or before the 14th day after the election, to show cause as to why the ballot should not be rejected).

11. The Cook County Clerk will continue administering federal elections in accordance with these provisions unless there is either a change in state law or a binding court ruling requiring such a change.

12. I understand that if Section 7(a) goes into effect, the Attorney General may bring a civil lawsuit or criminal prosecution to enforce the President's interpretation of the federal Election Day statutes. I understand that such enforcement actions would allege that Cook County election officials are violating federal law by counting ballots that are timely cast under state law but which are received or cured after Election Day

13. Should the Attorney General initiate any such enforcement actions, the Cook County Clerk would be required to divert significant resources not only to defend the lawsuit but to educate the public about the status of election rules, with the aim of minimizing voter confusion to the extent possible.

14. Any such legal proceedings would have severe and adverse consequences for the public's trust in the Cook County Clerk's administration of federal elections.

15. If the Cook County Clerk was ordered to adopt a ballot receipt deadline of Election Day, implementing such a significant change in election rules would be burdensome and resource-intensive for my office.

16. Specifically, the Cook County Clerk would need to expend a tremendous amount of time and expense to, among other things, train and retrain several hundred Cook County Clerk staff and more than 8,000 election judges and deputy voter registrars on the new policy regarding mail-in ballots. Implementation and management of the proposed change would require 100 plus more staff at a minimum of $7,500,000 in cost as well as the cost of acquiring additional rental space to accommodate increased staff. Further, the Cook County Clerk would have to institute a massive voter education program to ensure Cook County voters are familiar with the new ballot deadline rule, with the goal of minimizing the number of ballots that are disqualified. The Cook County Clerk engages in a mailing campaign prior to each election to educate eligible voters on the election process. The Cook County Clerk would have to completely revamp its mailing materials prior to the next election cycle to reflect the new policy.

17. As to voting, a significant portion of eligible voters in Cook County would be affected if the EO's directive for Attorney General enforcement against states that allow the counting of timely cast ballots received after Election Day is permitted to take effect. For example, for the November 5, 2024 Presidential Election, the Cook County Clerk received a total of 193,943 mail-in ballots. Of the total number of mail-in ballots, 66,132 mail-in ballots, postmarked on or before Election Day, were received by the Cook County Clerk through delivery by the United States Post Office after Election Day. This included ballots received from residents within the State of Illinois, registered voters temporarily outside the State of Illinois, and 2,074 overseas ballots, such as from military personnel serving outside the State of Illinois.

18. Further, like other provisions of the EO, Section 7(a) risks voter disenfranchisement. Given that Illinois law has long provided for additional time to receive and cure mail-in ballots, a significant portion of eligible voters in Cook County would be affected if Section 7(a) is permitted to take effect—potentially resulting in their votes not being counted—because they are not aware of the new requirement. This risk is not justified given that in the more than five years that I have served as Deputy Clerk for Elections for the Cook County Clerk, I have not learned of any issues related to widespread fraud in the casting and delivery of mail-in ballots that were received or cured in the 14 days after Election Day.

19. It is my understanding that Section 7(b) of the EO directs the EAC to "condition any available funding to a State on that State's compliance with" federal law that requires States to adopt "uniform and nondiscriminatory standards" for what constitutes a valid and countable vote, including that "there be a uniform and nondiscriminatory ballot receipt deadline of Election Day for all methods of voting," excluding ballots received after Election Day from tabulation. *See* EO, § 7(b).

20. The Cook County Clerk has received grant funding every year since I began in my role in 2019, including Election Security Grants during that same period. In my role as Deputy Clerk of Elections, I coordinate with the State Board of Elections to secure this funding, which totals about $2,500,000 per year.

21. The Cook County Clerk has used Election Security Grants to maintain the voter registration system, to maintain communication with all registered voters, to send pre-election mailers to all registered voters, and to support substantial cyber and physical security for all Elections operations.

22. Loss of this funding would adversely impact the Cook County Clerk's ability to safely and securely administer federal elections.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 4, 2025, at Chicago, Illinois.

_____
Edmund Michalowski
Deputy Clerk for Elections
Office of the Cook County Clerk

8